UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

Eastern District of Kentucky
FILED

FEB 1 7 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

REPUBLIC SERVICES, INC.,

PLAINTIFF

v.

LIBERTY MUTUAL INSURANCE
COMPANY, LIBERTY INSURANCE
ACQUISITION CORPORATION f/k/a
LIBERTY MUTUAL FIRE INSURANCE
COMPANY, LIBERTY INSURANCE
CORPORATION, LM INSURANCE
CORPORATION, THE FIRST LIBERTY
INSURANCE CORPORATION and
HELMSMAN MANAGEMENT SERVICES,
INC.,

DEFENDANTS.

CIVIL ACTION NO. 03-494 KSF

## THE LIBERTY COMPANIES' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The Liberty Companies submit the following Memorandum in Opposition to Plaintiff,

Republic Services, Inc.'s ("Plaintiff" or "RSI") Motion for Partial Summary Judgment.

## INTRODUCTION

RSI's Motion for Partial Summary Judgment requires the adjudication of multiple

disputed facts.  RSI has willfully failed to comply with conditions precedent to its recovery under

the Partnership Agreement, and has further failed prove its entitlement to relief under the

Partnership Agreement.  Even if RSI's Motion did not highlight multiple factual disputes, it is

premature in light of the Liberty Companies' established right to conduct adequate discovery.

The need for additional discovery is highlighted by RSI's attachment of several exhibits to its

Motion which RSI had not previously exchanged in response to Fed. R. Civ. P. 26 or otherwise.

Additionally, applying the laws of the Commonwealth of Massachusetts, this Court should hold as a matter of law that the Partnership Agreement is a liquidated damages agreement and the Liberty Companies never assumed a fiduciary duty to RSI.  Instead, the responsibilities of the parties are governed by the terms of the contracts between them.

## COUNTERSTATEMENT OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247(1986)................................................. 10, 11

*A-Z Servicenter,* 138 N.E. 2d at 268-269.......................................................................... 22

*Barfield v. Brierton,* 883 F.2d 923, 931 (11th Cir. 1989)................................................. 28

*Breeding v. Massachusetts Indemnity and Life Ins. Co.,* 633 S.W.2d 717, 719 (Ky. 1982) ................................................................................................................................... 15

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-324 (1986)............................................. 9, 27, 28

*Circle B Enterprises, Inc. v. Steinke,* 584 N.W.2d 97, 101 (N.D. 1998) ....................... 23

*Davidson v. General Motors Corp.,* 786 N.E.2d 845, at 850 (Mass. App. 2003) ...................... 25

*Gahafer v. Ford Motor Co.,* 328 F.3d 859, 861 (6th Cir. 2003) ..................................... 15

*Hellstrom v. US. Dept. of Veterans Affairs,* 201 F.3d 94, 97 (2nd Cir. 2000) ............................. 28

*In re Graham Square,* 126 F.3d 823, 829 (6th Cir. 1997) ............................................... 22

*In re: Greenberg,* 212 B.R. 422, at 428-429 (Bankr. D. Mass. 1997)................................ 25, 26

*Industrial General Corp., v. Sequoia Pacific Systems Corp.,* 44 F.3d 40, at 44 (1st Cir 1995) ................................................................................................................................. 25

*Kelly v. Marx,* 705 N.E.2d 1114, 1116 (Mass. 1999) .................................................. 19, 20, 23

*Maki v. Laakko,* 88 F.3d 361, 367 (6th Cir. *1996*) ......................................................... 27

*Matsushita Electrical Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) ............. 9, 10

*Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292 (2nd Cir. 2003) ............................................ 28

*National Life Ins. Co. v. Soloman,* 529 F.2d 59, 61 (2nd Cir. 1975).......................................... 28

*Petrell v. Rakoczy,* No. CA01-2849-F, 2005 Mass. Super. LEXIS 265, at *10 (Mass. Super. Apr. 11, 2005)............................................................................................ 25

*Reflectone, Inc. v. Farrand Optical Co., Inc.,* 862 F.2d 841, 843 (11th Cir. 1989) ................... 28

*Servicenter, Inc. v. Segall,* 138 N.E.2d 266, 268 (Mass. 1956).................................................. 19

*Wallace Hardware Co., Inc. v. Abrams,* 223 F.3d 382, 391 (6th Cir. 2000)........................ 15

### STATUTES

17A Am Jur 2d, *Contracts* §834 ......................................................................................

18 Am. Jur. 2d *Estoppel and Waiver* §60 .......................................................................... 8

Fed. R. Civ. P. 56(c) ....................................................................................................... 10

Fed. R. Civ. P. 56(f) ................................................................................................ 28

Restatement (Second) of Contracts, § 356) ............................................................. 23

Restatement of the Law (Second) Conflict of Laws § 188 ...................................... 16

RESTATEMENT OF THE LAW, SECOND, CONFLICT OF LAWS, § 188
   (1971) ................................................................................................................... 16

RESTATEMENT OF THE LAW, SECOND, CONFLICT OF LAWS, § 6
   (1971) ................................................................................................................... 16

# COUNTERSTATEMENT OF THE CASE

RSI and the Liberty Companies have a complex business relationship that began in 1998 and continues through the present. The terms of this business relationship are governed by the contents of several contracts which the Liberty Companies identify in their Counterclaim.[1] The multiple contract documents governing the relationship between Liberty Mutual Insurance Company and RSI include a 2000 Workers Compensation Partnership Agreement (hereinafter "the Partnership Agreement"),[2] which is a liquidated damages agreement providing an incentive for both parties to engage in a mutual effort to reduce RSI's workers compensation claims costs.[3]

The Liberty Companies handled claims for RSI in a total of 33 offices in 23 states and processed approximately 7,750 workers compensation claims brought by various RSI employees. The parties recognized the need for a benchmark for evaluating the Liberty Companies' handling of this massive number of claims files and therefore, entered into the Partnership Agreement.

The Partnership Agreement includes an agreed upon target loss range or "neutral range" which serves as a benchmark when compared to actual workers compensation losses in a given year or series of years. The target loss range was negotiated by the parties and reflects the projected range of RSI's workers compensation costs in relation to payroll costs and the mix of

---

[1] DKT #28.
[2] The Partnership Agreement is attached as Exhibit 1
[3] Interestingly, within its Counterclaim, the Liberty Companies list the contracts which govern the relationship between the parties. In response, RSI urges that the Liberty Companies' list is incomplete.

business operations.[4] Comparison of the target loss range to the actual paid loss rate allows the parties to easily and fairly evaluate whether total workers compensation costs, in a specific year or range of years, are reasonable and expected. For example, while the Liberty Companies were handling claims for RSI, if the actual paid loss rate was lower than the target loss range (resulting in claims cost savings to RSI), then the Liberty Companies received a bonus. In contrast, if actual paid loss rate was higher than the target loss range (resulting in increased claims costs to the RSI), then the Liberty Companies either paid a penalty or refunded a portion of previously collected bonuses. Because injured workers can continue to incur medical costs and expenses for an indefinite future period, the periodic actual paid loss rate fluctuated over time as workers continued to incur claims costs. Thus, the Partnership Agreement includes three dates on which to compare the actual paid loss rate to the target loss range. Specifically, the actual paid loss rate was valued at 18, 30 and 42 months, which correspond with January 2002, January 2003, and January 2004.

Recognizing that total workers compensation costs are largely contingent upon reducing accidents as well as RSI's mix of operations, the Partnership Agreement required RSI to affirmatively undertake several activities. These activities include timely accident reporting, aggressively implementing a return to work program, providing employee training, directing a percentage of cases to PPO providers, implementing loss prevention actions plans as well as developing, designing and implementing a cost allocation program.[5] Further, in the event that RSI's mix of operations materially changed, the Partnership Agreement could be modified to

Nonetheless, RSI now seeks summary judgment with regard to the Liberty Companies' contract compliance.

[4] At the time the parties executed the Partnership Agreement, RSI represented its mix of operations as garbage or refuse collecting and related operations. Related operations include parking garages, repair garages, truck washing, sanitary landfills (non-hazardous), fuel and fuel pumps. (Partnership Agreement, p.3).

reflect the change in operations.[6]

The Partnership Agreement requires all parties to make cost review valuations at 18, 30, and 42 months and thereafter exchange a corresponding bonus/penalty invoice, if applicable. Specifically, "[t]he bonus/penalty will be paid after each valuation (18, 30, and 42 months) **within 30 days of receipt of Republic Services'/Liberty's invoice, which ever is applicable."[7]** The party claiming entitlement to a bonus/penalty must send an invoice, thereafter payable within 30 days.[8]  **Forwarding an invoice is a condition precedent to collection of a bonus or penalty.**

Each periodic valuation can be completed with relative ease after retrieving information from RISKTRAC, a claims program provided by the Liberty Companies to RSI at the onset of the parties' relationship.[9]  RISKTRAC actively monitors claims and contains comprehensive data which can be used to evaluate claims and losses.  All data necessary to complete the 42 month valuation was available to RSI within RISKTRAC.  RSI cannot credibly maintain that it did not have the necessary information to make the 42 month bonus/penalty valuation and thereafter send an invoice to the Liberty Companies.

RSI's workers compensation costs during the first twelve months of the Partnership Agreement were materially lower than expected, and therefore, the Liberty Companies earned a bonus of $890,588, later paid by RSI in four equal installments.[10]  At the 30 month valuation, costs rose slightly, and the Liberty Companies refunded $162,140 of its previous $890,588

---

[5] Exhibit 1 to the Partnership Agreement.
[6] Partnership Agreement, p.3
[7] Partnership Agreement, p. 2
[8] Partnership Agreement, p. 2
[9] Affidavit of Greg Brisee filed in support of Defendants' memorandum in Response to Plaintiff's Motion for Restraining Order [DKT #3]; RSI's Motion for Partial Summary Judgment, p. 7.
[10] Attached Exhibit 2

bonus.[11]  RSI's costs rose again at the 42 month interval.  The precise reason for this rise in costs is presently unknown, but a variety of factors could have caused it, including a change in RSI's mix of operations.

Regardless of the reason for the rise in costs, RSI never sent an invoice to the Liberty Companies for a 42 month bonus refund.  Not until RSI filed its First Amended Complaint did it even claim entitlement to any such refund.  Now, without presenting any evidence that it complied with the terms of the Partnership Agreement, RSI asks this Court to rule as a matter of law that it is owed  $362,162.[12]

This Court should deny RSI's Motion because it cannot establish as a matter of law that Liberty Companies owe RSI a refund pursuant to the terms of the Partnership Agreement.  Additionally, RSI has introduced documents in support of its Motion that should have been, but were not, previously produced in the course of RSI's Fed. R. Civ. P. 26 disclosures at the outset of this litigation.[13]  The Liberty Companies have not had adequate time to conduct discovery regarding the issues raised by these documents.  RSI has also indicated that it plans to depose hundreds of claim handlers around the country.  Likewise, the Liberty Companies will need to depose several representatives of RSI.  Many of these depositions will squarely address the factual disputes presented in RSI's Motion for Partial Summary Judgment.

---

[11] Attached Exhibit 3
[12] RSI's Original Complaint makes no mention of a bonus refund. Thereafter, RSI's First Amended Complaint [DKT #34] seeks a refund of all previous bonus balances ($728,448) as well as the imposition of the maximum penalty. Now, RSI seeks a bonus refund of $362,612 with no imposition of the contractual penalty. RSI's inconsistency alone warrants denial of its Motion for Partial Summary Judgment.
[13] Exhibits C, D, G and H to RSI's Motion for Partial Summary had not been previously produced by RSI pursuant to Fed. R. Civ. P. 26 or otherwise.  In fact, prior to filing a dispositive motion, RSI had only produced  237 documents while the Liberty Companies produced 272,513.

## ARGUMENT

I.   **BECAUSE RSI HAS NOT COMPLIED WITH CONDITIONS PRECEDENT SET FORTH WITHIN THE PARTNERSHIP AGREEMENT, ITS MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE DENIED.**

The Partnership Agreement requires bonus/penalty valuations at 18, 30 and 42 months and thereafter requires the party seeking recovery to send a bonus or penalty invoice. Specifically, "[t]he bonus/penalty will be paid after each valuation (18, 30, and 42 months) within 30 days of receipt of Republic Services'/Liberty's invoice, which ever is applicable."[14] The party claiming entitlement to a bonus/penalty must send an invoice, thereafter payable within 30 days. Here, RSI has not tendered the required invoice requesting a partial bonus refund in the amount of $362,162.[15] The Liberty Companies have thirty (30) days after receipt of an invoice to make the partial bonus refund payment. Because RSI has not submitted an invoice, the Liberty Companies are under no obligation to make a partial bonus refund. "If the condition [precedent] is not fulfilled, the parties are excused from performing." 17A Am Jur 2d, *Contracts* §834 (Conditions precedent in general). Further, by failing to send an invoice for more than two years, RSI should be estopped from seeking enforcement of a partial bonus refund. The principle underlying estoppel by inaction is "embodied in the maxim one who is silent when he ought to speak will not be heard to speak when ought to be silent." 18 Am. Jur. 2d *Estoppel and Waiver* §60 (Silence or Inaction) (internal quotations omitted). Thus, RSI's Motion for Partial Summary Judgment should be denied.

RSI's First Amended Complaint alleges that the Liberty Companies did not make either a 30 or 42 month valuation and that the Liberty Companies' entire 18 month bonus (with a current

---

[14] Partnership Agreement, p. 2.
[15] The Liberty Companies have no record of receiving a 42 month valuation invoice from RSI. Further, RSI has not produced a 42 month invoice.

balance of $728, 448) should be refunded along with the imposition of maximum penalty.[16] However, as evidenced by exhibits D and H attached to RSI's Motion, the Liberty Companies indeed provided a partial bonus refund after the 30 month valuation by way of a check dated January 29, 2003. Incidentally, a copy of the 30 month partial bonus refund check was bates stamped and produced by RSI.[17] At a minimum, the patent inconsistency between the allegations contained within RSI's First Amended Complaint and the documents it later produced establish a material factual dispute warranting denial of RSI's Motion for Partial Summary Judgment.

RSI's workers compensation costs during the first twelve months of the Partnership Agreement were materially lower than expected, with the Liberty Companies earning a bonus of $890,588 paid by the Plaintiff in four equal installments.[18] These cost saving were presumably due in part to the Liberty Companies efficient claims handling practices. With regard to the 30 month valuation, costs rose slightly with the Liberty Companies refunding $162,140 of its previous $890,588 bonus. With regard to the 42 month interval, RSI claims that costs again rose and that the Liberty Companies should refund $362,162 of the previously collected bonus for a net bonus to the Liberty Companies of $366,014. In assessing a summary judgment motion, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Electrical Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). It is possible that at the 42 month valuation, RSI's increased claims costs are due in whole or in part to a change in its mix of operations. If RSI's mix of operations changed, then the Liberty Companies have the option of modifying the Partnership Agreement.[19] Before the Liberty Companies can

---

[16] RSI's First Amended Complaint, ¶¶115-117 [DKT #34].
[17] Exhibit H to RSI's Motion for Partial Summary Judgment; Attached Exhibit 3.
[18] Attached Exhibit 2
[19] Partnership Agreement, p.3.

be liable to RSI, it must first show that its mix of operations did not materially change.  RSI has the burden of proving all necessary elements of its claim.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-324 (1986).

Fed. R. Civ. P. 26  required RSI to initially disclose all documents supporting its claims. Now, more than two years after instituting this litigation, RSI for the first time discloses several documents by way of a dispositive motion (Exhibits C, D. G and H), which RSI urges entitle it to judgment as a matter of law.[20]  As discussed in Part VI infra, the Liberty Companies should be allowed to take discovery on several issues including whether RSI's mix of operations contributed to increased costs.

## II.  RSI'S MOTION FOR SUMMARY JUDGMENT SHOULD BE OVERRULED BECAUSE MULTIPLE FACTS ARE IN DISPUTE.

Summary judgment is only appropriate if the moving party establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In assessing a summary judgment motion, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Matsushita Electrical Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  Further, summary judgment is only appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247(1986).

As will be discussed below, RSI's Motion for Partial Summary Judgment presents several material disputes of fact.

---

[20] These exhibits with Bates Numbers 273-288 were produced by RSI in response to Fed. R. Civ. P. 26 on the same day it filed its Motion for Partial Summary Judgment, January 18, 2006. Attached Exhibit 6.

### A.   RSI's prayer for relief hinges on the accuracy of the 12 month valuation, a figure which RSI continues to maintain is incorrect.

At the 18 month valuation period, the Liberty Companies calculated a bonus of $890,588 paid by RSI in four equal installments.[21]  With regard to the 30 month valuation, total costs rose slightly with the Liberty Companies refunding $162,140 of its previous $890,588 bonus.  Now, RSI urges that the 42 month valuation requires the Liberty Companies to refund $362,162 of its previously collected bonus for a net bonus to the Liberty Companies of $366,014.  RSI's position hinges on the accuracy of the initial 12 month valuation, a figure which RSI maintains is inaccurate.  Specifically, RSI's Amended Complaint filed on October 11, 2005 repeatedly urges that the 18 month bonus valuation (applicable to the 2000-2001 fiscal year) is "excessive."[22]  Similarly, attached as Exhibit G to RSI's Motion is a March 12, 2002 e-mail from RSI to Dan Dunne of Liberty Mutual Insurance Company indicating that RSI "strongly disagrees" with the initial 12 month valuation.  Similarly, Exhibit B to RSI's Motion includes a February 12, 2002 e-mail from RSI to Dan Dunne indicating that RSI "question[s] the amount" of the 12 month bonus valuation.  RSI's continued "strong disagreement" presents a question of fact regarding the amount of the partial bonus refund owed, if any, by the Liberty Companies.  Thus, RSI's Motion for Partial Summary Judgment should be overruled.

### B.   The Liberty Companies did not actively conceal facts and data because they were already possessed by RSI.

When ruling on a summary judgment motion, a court shall not resolve factual disputes or make credibility determinations. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986).  RSI is indeed seeking resolution of multiple factual disputes. For example, RSI seeks an affirmative factual "finding" that the Liberty Companies (presumably all seven of them) timely made a 42

---

[21] Attached Exhibit 2.
[22] RSI's First Amended Complaint, ¶¶83, 96, 103 [DKT #34]

month determination and that they "affirmatively acted to conceal this determination" from RSI.[23] This Court should deny RSI's invitation to make such a finding for two reasons. First, the Partnership Agreement requires that <u>RSI</u> valuate the bonus refund amount and send an invoice to the Liberty Companies.[24] In contrast, if an additional bonus is in order, then the Liberty Companies must valuate the bonus and send an invoice to RSI. Even if one or more of the Liberty Companies internally calculated a partial bonus refund, they were never under an contractual obligation to provide such information to RSI. Further, RSI has not produced any document suggesting that it needed or requested the Liberty Companies' assistance with the bonus/penalty valuation.

Secondly, there is no evidence in the record that the Liberty Companies "affirmatively acted to conceal" any valuation or that RSI was otherwise prevented from making the 42 month valuation. RSI argues that an internal Liberty Companies' e-mail dated February 3, 2004 and marked as "confidential," "please do not forward" is evidence of concealment. Such an argument is disingenuous, as the subject e-mail included confidential and proprietary information about the performance of eighteen (18) separate national accounts, including 3M, Goodyear, Motorola, Lucent and UPS. Since all presumptions must be resolved in favor of the Liberty Companies, it is reasonable to presume that the "confidential" and "please do not forward" instructions within the February 3, 2004 e-mail referenced the dissemination of confidential and proprietary information about several national market accounts.

Each periodic valuation called for within the Partnership Agreement can be performed with relative ease after retrieving information from RISKTRAC, a claims program available to

---

[23] Plaintiff's Motion for Partial Summary Judgment, p. 18.
[24] Partnership Agreement, p. 2.

RSI by the Liberty Companies at the onset of the workers compensation insurance program.[25] Clearly, the Liberty Companies cannot actively conceal a fact which is otherwise readily available and accessible to RSI.  Further, RSI has not shown that it was not capable of making the 42 month valuation and thereafter sending an invoice to the Liberty Companies.  Any and all data necessary to complete the valuation was available to RSI through RISKTRAC.

At a minimum, questions of fact exist as to why RSI has not sent an invoice as required by the Partnership Agreement, whether RSI itself timely completed the 42 month valuation, and whether the Liberty Companies could have concealed data readily available to and/or possessed by RSI.  In light of these multiple factual disputes, RSI's Motion for Partial Summary Judgment should be denied.

### C.    The data needed to make the 42 month valuation was not "solely" in the possession of the Liberty Companies.

RSI also seeks an affirmative factual finding that the data needed to make the 42 month determination was "solely in the possession of" the Liberty Companies.[26]  Further, RSI urges that "the result of the 42 month valuation was never communicated to Republic."[27]  Noticeably absent from RSI's Motion is any proof by way of affidavit or otherwise that it did not possess or have access to the data.  In fact, the contrary is true.  The bonus/penalty valuation merely involves taking actual paid losses from RISKTRAC and applying them to a formula included within the Partnership Agreement.[28]  Since RSI had access to RISKTRAC,[29] then this Court should refuse to hold that the data necessary to make the 42 month valuation was "solely" in the possession of the Liberty Companies.

---

[25] Affidavit of Greg Brisee filed in support of Defendants' memorandum in Response to Plaintiff's Motion for Restraining Order [DKT #3]; RSI's Motion for Partial Summary Judgment, p. 7.
[26] RSI's Motion for Partial Summary Judgment, p. 18 (emphasis added).
[27] RSI's Motion for Partial Summary Judgment, p. 13.
[28] The Liberty Companies' response to Interrogatory No. 38, attached as Exhibit 4.
[29] RSI's Motion for partial Summary Judgment, p.7

Perhaps the best evidence that RSI actually possessed the data necessary to the make the 42 month calculation is RSI's First Amended Complaint filed on October 11, 2005, which alleges that the total incurred costs relevant to the Partnership Agreement exceeds the ultimate paid loss rate.[30]   In other words, RSI urges that because total costs are so high, the Liberty Companies should refund all bonuses and pay the maximum penalties.  Of course, the only way RSI can make such allegation in good faith is to first make the 42 month calculation and determine whether actual losses exceed the agreed upon target loss range. The e-mails from the Liberty Companies which purportedly contain 42 month calculations were not produced to RSI in discovery until December 6, 2005, two months after RSI filed its First Amended Complaint.[31]

RSI also seeks an affirmative factual finding that the Liberty Companies "knowingly and intentionally kept and withheld this money."[32]  Noticeably absent from RSI's Motion is any representation that it ever tendered an invoice to the Liberty Companies requesting a partial bonus refund.  In order to withhold an object, it must be sought by another.  Since RSI did not seek by invoice a partial bonus refund, then the Liberty Companies could not have "intentionally kept and withheld" it.  Thus, this Court should deny RSI's Motion for Partial Summary Judgment.

### D.   Whether RSI could have made the 42 month valuation without instituting litigation is a question of fact.

RSI seeks a factual finding that but for this litigation, the data needed to make the 42 month calculation "would have remained solely in the possession" of the Liberty Companies. What RSI fails to disclose is that it instituted this litigation before the 42 month valuation period. RSI filed its Complaint on November 11, 2003 and the 42 month valuation period was not until

---

[30] RSI's First Amended Complaint, ¶116 [DKT #34].
[31] Letter from counsel for Defendants to counsel for Plaintiffs dated December 6, 2005 including documents Bates-numbered LM-004957 through LM-058831 attached as exhibit 5.  These numbers

January 2004. Additionally, prior to instituting litigation, RSI had access by way of RISKTRAC to the data needed to complete the 42 month valuation.

**E.      The Court should discount RSI's claim that the Liberty Companies concealed the 42 month valuation.**

Within RSI's Amended Complaint, it affirmatively represents and alleges that "there has been no determination of the bonus/penalty to be paid to/by the Liberty Companies for the 30 or 42 month periods."[33] However, as evidenced by Exhibits D and H to RSI's Motion, the Liberty Companies indeed provided a partial bonus refund after the 30 month valuation by way of a check dated January 29, 2003. RSI's own documents materially contradict the allegations contained within its First Amended Complaint. Further, in light of RSI's previous failure to exchange exhibits C, D, G and H in response to Fed. R. Civ. P. 26, it is appropriate to question whether RSI possesses additional documents which may contradict the allegations contained within its First Amended Complaint.[34]

Similarly, RSI urges that the Liberty Companies have concealed the bonus refund calculation for "almost seven years,"[35] even though the 42 month valuation could not be made until January 2004, only two years ago. Given RSI's history of material mistakes regarding the scheduled valuations (RSI's erroneous denial of receiving $162,140 on January 29, 2003 qualifies as a material mistake), this Court should discount any suggestion by RSI that the 42 month valuations were concealed by the Liberty Companies or otherwise not available to RSI.

---

include the e-mails cited by RSI.
[32] RSI's Motion for Summary Judgment, p. 18.
[33] RSI's First Amended Complaint, ¶115 [DKT #34].
[34] These exhibits with Bates Numbers 273-288 were produced by RSI on the same day it filed its Motion for Partial Summary Judgment, January 18, 2006. Attached Exhibit 6.
[35] RSI's Motion for Partial Summary Judgment, p. 16.

III.   **THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS SHOULD APPLY TO ANY DISPUTE ARISING FROM THE PARTNERSHIP AGREEMENT.**

Admittedly, Federal Courts sitting in diversity generally apply the substantive law of the forum state. *Gahafer v. Ford Motor Co.,* 328 F.3d 859, 861 (6th Cir. 2003). This includes the application of the forum state's choice of law rules. *Wallace Hardware Co., Inc. v. Abrams,* 223 F.3d 382, 391 (6th Cir. 2000). Thus, this Court should apply Kentucky's choice of law rules with regard to which law governs the subject Partnership Agreement.

The Supreme Court of Kentucky held in *Breeding v. Massachusetts Indemnity and Life Ins. Co.,* 633 S.W.2d 717, 719 (Ky. 1982), that to determine which state's law governs the parties' rights and responsibilities under a contract, Kentucky follows the "most significant relationship" test set forth in the Restatement of the Law (Second) Conflict of Laws § 188. Section 188 provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determine by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
>
> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a)  the place of contracting;
> > (b)  the place of negotiation of the contract;
> > (c)  the place of performance;
> > (d)  the location of the subject matter of the contract; and
> > (e)  the domicile, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will

usually be applied, except as otherwise provided in §§ 189-199 and 203.[36]

As stated in § 188, these factors are to be analyzed in conjunction with the interests set forth in § 6 of the Restatement, which include (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (5) certainty, predictability, and uniformity of result; and (6) ease in the determination and application of the law to be applied.[37]

In the present case, weighing the Restatement factors, the interests of the Commonwealth of Massachusetts greatly outweigh the interest of any other state. Every defendant corporation maintains its principle place of business in Massachusetts.[38] The Partnership Agreement was last signed by Douglas Cauti in Boston, Massachusetts on behalf of a Massachusetts corporation. Since Liberty Mutual Insurance Company is incorporated in Massachusetts, performed the contract in Massachusetts, and reasonably assumed that its conduct would be governed and adjudged by the laws of Massachusetts, then the laws of Massachusetts should apply to any dispute arising out of or relating to the Partnership Agreement.

Even though the Partnership Agreement does not contain an express choice of law provision, other agreements by and between the parties contain a choice of law provisions. For example, the two-year contract by and between Defendant Helmsman Management Services, Inc. ("Helmsman") and RSI includes a choice of law provision requiring application of

---

[36] RESTATEMENT OF THE LAW, SECOND, CONFLICT OF LAWS, § 188 (1971).
[37] RESTATEMENT OF THE LAW, SECOND, CONFLICT OF LAWS, § 6 (1971).
[38] The Liberty Companies' response to Interrogatory No. 4, attached as Exhibit 4.

Massachusetts law.[39] Helmsman generally provided the claims management services as a third-party administrator.[40] A majority of RSI's Complaint is squarely directed toward the claims handling and management. The Liberty Companies initial proposal to RSI was made in conjunction with Helmsman, and the Liberty Companies expressly reserved their right to withdraw its proposal entirely if RSI selected a third party administrator other than Helmsman.[41] Moreover, multiple contracts by and between RSI and the Liberty Companies state that all notices must be sent to the Liberty Companies' office in Boston, Massachusetts.[42] The workers compensation and employers liability policy issued by the Liberty Companies to RSI state that the named insured is a member of the Liberty Mutual Fire Insurance Company and is entitled to vote in person or by proxy at all company meetings and that the meetings are held at the company's home office in Boston, Massachusetts.[43]

Obviously, Massachusetts maintains significant contacts with regard to any dispute arising from the Partnership Agreement since it was last signed in Massachusetts, it was performed in Massachusetts, and its subject matter (the Liberty Companies' management of claims) is located in Massachusetts. In fact, RSI personnel traveled from Florida to the Liberty Companies offices in Boston, Massachusetts to negotiate the contents of the Partnership Agreement.[44]

In contrast, the Partnership Agreement has virtually no connection to the Commonwealth of Kentucky. The Partnership Agreement was not negotiated in Kentucky, no parties to the Partnership Agreement are incorporated in Kentucky and no parties to the Partnership Agreement maintain their principle place of business in Kentucky. Kentucky is merely one of 23

---

[39] Attached Exhibit 7, page 2.
[40] As alleged by RSI within its Motion for Partial Summary Judgment, p.5.
[41] Exhibit 8, page 1.
[42] Exhibit 9, page 1.

states wherein RSI claims originated, with only 4.16% of all claims subject of this litigation originating in Kentucky.[45]  Kentucky has no connection to the negotiation of or the Liberty Companies' compliance with the Partnership Agreement. Kentucky has no more connection to this litigation than 22 other states where RSI claims were managed by the Liberty Companies. Kentucky's connection to the Partnership Agreement is virtually non-existent compared to the significant contacts to the Commonwealth of Massachusetts.

Since every Restatement § 188 factor supports a Massachusetts connection and virtually no factors support a Kentucky connection, this Court should apply the laws of the Commonwealth of Massachusetts with regard to any claims arising out of or relating to the Partnership Agreement.

## IV.  THE PARTNERSHIP AGREEMENT IS A LIQUIDATED DAMAGES AGREEMENT AND SHOULD BE ENFORCED.

The Partnership Agreement is itself a detailed liquidated damages agreement specifically designed to deal with a breach by either party.  It provides a clear benchmark in which to evaluate the performance of either party.  The liquidated damages agreement provides RSI's exclusive remedy in the event that the Liberty Companies performance guarantees are not met. Potential breach of the Partnership Agreement was considered during an arm's length negotiation between sophisticated parties.  Therefore, if the Court determines that the Liberty Companies have, in fact, breached their agreements with RSI, then its remedy is limited to the relief expressly set forth within the Partnership Agreement, including refund of previously collected bonuses and/or enforcement of penalty provisions.

---

[43] Exhibit 10. page
[44] Affidavit of Daniel J. Dunne, attached as exhibit 11.
[45] Affidavit of Daniel J. Dunne, attached as exhibit 11.

As highlighted above, the laws of the Commonwealth of Massachusetts govern all disputes related to or arising from the Partnership Agreement. Massachusetts law expressly allows parties to provide for liquidated damages in a contract. *Kelly v. Marx*, 705 N.E.2d 1114, 1116 (Mass. 1999). A provision for liquidated damages will be enforced so long as (1) "actual damages are difficult to ascertain" and (2) "the sum agreed upon by the parties at the time of the execution of the contract represents a reasonable estimate of the actual damages." Id. at 1116; *Servicenter, Inc. v. Segall*, 138 N.E.2d 266, 268 (Mass. 1956)

The Partnership Agreement established liquidated damages in that if RSI's actual paid loss rate exceeds the upper boundary of the target loss range during any valuation period, then the Liberty Companies will pay RSI a fixed sum of $110,625. In contrast, to the extent the Liberty Companies reduce total workers compensation costs below the agreed upon target loss range, then the Liberty Companies earn a bonus equal to 20% of the savings. While these provisions may not include the label "liquidated damages," their effect is a de facto liquidated damages agreement.

Both the Liberty Companies and RSI consented in the Partnership Agreement to liquidated damages in the event that actual costs did not fall within the agreed upon average range. This mutual agreement should be strictly enforced. Under Massachusetts law, the criteria for the enforceability of a liquidated damages provision is examined in light of the circumstances that existed at the time the contract was entered. *Kelly*, 705 N.E.2d at 1117 ("This approach most accurately matches the expectations of the parties, who negotiated a liquidated damage amount that was fair to each side based on their unique concerns and circumstances surrounding the agreement, and their individual estimate of damages in event of a breach. In addition, [this]...approach helps resolves disputes efficiently by making it unnecessary to wait until actual

damages from a breach are proved"). Analysis of the circumstances surrounding the Partnership Agreement leaves no question that it provides for liquidated damages.

At the time the parties executed the Partnership Agreement, potential damages for breach of the same were "difficult to ascertain." The Liberty Companies were managing thousands of claims file in multiple offices in multiple states. Each workers compensation file required individual attention with claims unique to each worker.

It has become abundantly clear as this litigation unfolds that potential damages for alleged breach of contract are difficult, if not impossible, to ascertain. The Liberty Companies have already produced 272,513 pages of documents, and RSI seeks to take depositions of hundreds of the Liberty Companies claims employees. In support of its claims, RSI has identified as witnesses with knowledge each general manager, assistant manager, operations manager, assistant operations manager, safety manager or assistant safety manager who worked at any facility with an injured employee. [46]

This is precisely the situation which the Partnership Agreement sought to avoid by way of providing for liquidated damages in the event of breach. Instead of analyzing, reviewing and judging with hindsight the contents of each of 7,750 claims files, the Partnership Agreement allows and requires a review of total workers compensation costs in relation to the negotiated target loss range. If actual costs are lower than the target loss range, then the Liberty Companies earn a bonus. If not, then the Liberty Companies pay a fix sum of $110,625. In its Motion, RSI seeks a partial bonus refund of $362,014 with a net overall bonus to the Liberty Companies of $366,014. In other words, the Liberty Companies exceeded RSI's expectations and earned a net bonus 42 months after execution of the Partnership Agreement of $366,014. RSI should not be

---

[46] Exhibit 12.

allowed to complain that the Liberty Companies improperly handled claims when they exceeded expectations and reduced total costs well below the agreed upon average range.

Additionally, at the time the Partnership Agreement was executed, the bonus/penalty provisions qualified as a "reasonable estimate of actual damages." The agreed upon valuation takes into account that when the Liberty Companies become involved with a claim, an RSI employee has already become injured. Thereafter, the Liberty Companies can only attempt to reduce claims costs while at the same time complying with applicable state law regarding the handling and adjustment of injured workers claims. The largest potential cost savings arises from RSI's mix of operations as well as its focus on safety and reducing worker accidents. Since a majority of workers compensation costs are solely within the exclusive control of RSI, the Partnership Agreement liquidated damages formula is reasonable in that it provides an incentive for the Liberty Companies to reduce claims' costs as well as an incentive for RSI to reduce accident frequency.

The formula chosen by the parties to estimate damages was the product of a bargained-for exchange and arms length negotiation. Indeed, RSI's own Motion states that the parties "engaged in a course of negotiations which [sic] ultimately resulted in the Partnership Agreement."[47] Moreover, as evidenced in the multiple "Discussion" drafts of the Partnership Agreement, referenced also by RSI and attached to its own motion as Exhibits B and C, the parties specifically contemplated the "projected workers compensation ultimate paid loss rate," "projected workers compensation ultimate paid losses," "neutral range [target loss range]," "agreed upon 18 month development factor," "audited payroll" and other numerical values used to arrive at the agreed damages formula. The values were specifically selected in view of RSI's then current "mix of operations."

Thus, at the time the parties executed the Partnership Agreement, it was clear that failure to perform certain obligations would result in damages not readily ascertainable. Because of this, the parties provided for reasonable liquidated damages in the event that either party failed to satisfy its partnership obligations. These liquidated damages comprise the sole and exclusive remedy for breach of contract.

RSI argues that the Partnership Agreement does not contain a liquidated damages provision because it lacks particular words. RSI, however, ignores the long-standing, majority rule in interpreting liquidated damages provisions that it is the *circumstances* surrounding the execution of the contract, and not labels, that are determinative. *See, A-Z Servicenter*, 138 N.E. 2d at 268-269 (whether a liquidated damages provision is enforceable depends on the circumstances of each case); *In re Graham Square*, 126 F.3d 823, 829 (6th Cir. 1997) (holding that characterization of the terms is not significant and that "when a stipulated damages provision is challenged, the court must step back and examine it in light of what the parties knew at the time the contract was formed...") (applying Ohio law and citing Restatement (Second) of Contracts, § 356); *Circle B Enterprises, Inc. v. Steinke*, 584 N.W.2d 97, 101 (N.D. 1998) (holding that the characterization of agreed damages for nonperformance is not conclusive, and where the parties' written agreement was the product of bona fide negotiations, the court found contracts valid and enforceable for liquidated damages).[48]   There are simply no magic words to make a provision for liquidated damages. Contrary to RSI's assertion, the fact that the parties did not use the words "breach" or "liquidated damages" but chose synonymous terms is not significant. The Partnership Agreement clearly delineates the damages to be paid "...if...Republic Services does not fulfill its responsibilities as set forth..." and if Liberty's

---

[47] RSI Motion for Partial Summary Judgment, p.7
[48] The multiple Partnership Agreement drafts attached as Exhibit 13 highlight the extensive "bona fide"

performance "exceeds the upper boundary of the neutral range [target loss range]." What is significant here is that the parties clearly contemplated, bargained for, and agreed upon amounts that would be paid by the parties in the event of their respective non-compliance, regardless of the terminology used to describe the failure to adhere to contract terms.

Where parties agree to a provision for liquidated damages, they should be held to their word. *Kelly*, 705 N.E.2d at 1117. The parties agreed to the extent of their damages, and RSI cannot now be allowed to avoid the parties' negotiated agreement and expressed intent. Here, the provisions for liquidated damages are clear, as are the limitations on such damages, the formulas to calculate them, and the limitation of remedies for the identified breaches to the contract. These provisions are the result of arm's length negotiations between two sophisticated, knowledgeable corporations who freely bargained for the subject provisions. RSI and the Liberty Companies entered into this Partnership Agreement because of the difficulty of ascertaining actual losses resulting from failure to meet certain performance guarantees, and they intended for them to be reasonable compensation for such losses. As such, the Partnership Agreement provides liquidated damages and the parties' contract should be enforced.

The Liberty Companies request this Court enter a judgment as a matter of law declaring that the Partnership Agreement is a fully enforceable liquidated damages clause and that RSI's claims against the Liberty Companies from the period from June 30, 2000 to the present are all subject to the damages limitations included within the Partnership Agreement.

## V. THE LIBERTY COMPANIES DID NOT ASSUME A FIDUCIARY DUTY TO RSI. INSTEAD, THE PARTIES RELATIONSHIP IS GOVERNED BY THE TERMS OF WRITTEN CONTRACTS BETWEEN THEM.

As highlighted within the Liberty Companies Counterclaim, the relationship between the Liberty Companies and RSI is governed by the terms of several contracts, including the

---

negotiations between the parties.

Partnership Agreement.[49] No language within the Partnership Agreement or other contract documents suggests that the Liberty Companies assumed a fiduciary duty to RSI. Instead, all contract documents clearly set forth the express mutual obligations of all parties to try and reduce workers compensation claims costs. RSI seeks to greatly expand the detailed, express contractual relationship of the parties by imposing a common law fiduciary duty upon the Liberty Companies. The Liberty Companies never assumed such a heightened duty.

As highlighted above, the laws of the Commonwealth of Massachusetts govern any dispute arising from or relating to the Partnership Agreement. Massachusetts law is clear that a business relationship is not transformed into a fiduciary duty relationship merely because trust was reposed by one party in the other party. *Davidson v. General Motors Corp.*, 786 N.E.2d 845, at 850 (Mass. App. 2003). A fiduciary relationship is generally found when certain indicia are present such as one party is in a position of great disparity or inequality relative to the other party, or the disparity in a relationship has been abused to the benefit of the more powerful party. *Industrial General Corp., v. Sequoia Pacific Systems Corp.*, 44 F.3d 40, at 44 (1st Cir 1995). Likewise, transforming a contractual duty is inhibited when the parties expressly agree and assume the obligation to "check things for themselves." *Id.* An example of "checking things for themselves" would include RSI's access to and reliance on RISKTRAC as well as RSI's responsibility to send a bonus/penalty invoice.

A party cannot unilaterally transform a business relationship into a fiduciary relationship. Rather, to create such a relationship, the fiduciary "would have to know of and accept the plaintiff's trust." *In re: Greenberg,* 212 B.R. 422, at 428-429 (Bankr. D. Mass. 1997). "Importantly, however, courts have repeatedly cautioned that the plaintiff alone, by reposing

---

[49] DKT #28.

trust and confidence in the defendant, cannot thereby transform a business relationship into one which is fiduciary in nature." *Industrial General Corp., v. Sequoia Pacific Systems Corp.,* 44 F.3d 40, at 44 (1st Cir 1995). A fiduciary duty can only arise when a party places utmost trust and confidence in another's advice or judgment, however, the fiduciary must be aware that the other party is relying on his services and reposes faith, confidence, and trust in his judgment or advice. *Petrell v. Rakoczy,* No. CA01-2849-F, 2005 Mass. Super. LEXIS 265, at *10 (Mass. Super. Apr. 11, 2005).

RSI is a sophisticated, publicly traded corporation with 12,700 employees currently serving 80 markets in 22 states.[50] It reported $2.7 billion in revenue in 2004 and maintains an in house legal department.[51] RSI negotiated multiple, comprehensive contracts with the Liberty Companies including the Partnership Agreement. Without dispute, there is no disparity in the bargaining powers or business capabilities of any party and RSI was not at the mercy of the Liberty Companies with regard to any aspect of the Partnership Agreement.

No evidence in the record suggests that the Liberty Companies had knowledge of or willingly accepted a fiduciary duty to RSI. With regard to the Liberty Companies' access to RSI's bank account, such relationship is akin to a banking relationship with such relationship qualifying merely as debtor and creditor. *In re: Greenberg,* 212 B.R. 422, at 428-429 (Bankr. D. Mass. 1997). Furthermore, the banking relationship between the parties has no relevance the Partnership Agreement. Specifically, RSI claims that the Liberty Companies should have disclosed the 42 month bonus/penalty valuation. Such has no relation to the Liberty Companies processing of claims utilizing RSI's bank account. Further, e-mails attached to RSI's Motion

---

[50] Information obtained from RSI's website.
[51] Information obtained from RSI's website and Martindale-Hubbell.

highlight how the Liberty Companies did not debit RSI's bank account until it first agreed to the timing and amount of the withdrawals.

The Liberty Companies request this Court enter a judgment as a matter of law declaring that the contracts between parties govern the rights and responsibilities of the parties, and that the Liberty Companies did not and do not owe a fiduciary duty to RSI.

## VI.   PURSUANT TO FED. R. CIV. P. 56(f), THE LIBERTY COMPANIES SEEK AN EXTENSION OF TIME TO COMPLETE DISCOVERY RELEVANT TO ISSUES PRESENTED WITHIN RSI'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

As has been detailed above, there exist numerous material issues of fact, any of which are alone sufficient to preclude a summary judgment in favor of RSI. For those reasons, the Liberty Companies request that RSI's Motion be denied.

In the alternative, if the Court does not deny RSI's Motion, then the Liberty Companies request an adequate opportunity to conduct discovery so that it can adequately respond to RSI's Motion for Partial Summary Judgment.  Specifically, as highlighted within the enclosed affidavit of J. Clarke Keller[52], the Liberty Companies request time to receive responses to written discovery from RSI and participate in deposition discovery relevant to (1) RSI's mix of operations from execution of the Partnership Agreement to the present, (2) RSI's failure to send a partial bonus refund invoice as required by the Partnership Agreement, (3) RSI's repeated allegations that the initial 18 month valuation is incorrect with a corresponding impact on all subsequent valuations (4) RSI's continued possession of data via RISKTRAC which can be accessed to make the 42 month valuation, (5) RSI's failure to request the Liberty Companies' assistance in making the 42 month valuation, and (6) RSI's repeated denial of a 30 month valuation even though RSI received $162,410 after the 30 month valuation.  Given the

---

[52] Exhibit 14.

complexity of the aforementioned issues, the Liberty Companies request until the discovery deadline in which to complete discovery relevant to RSI's Motion for Partial Summary Judgment.

Given that RSI has previously requested the opportunity to take hundreds of depositions of the Liberty Companies claims handlers around the country, the Liberty Companies request will not delay discovery. Further, the issues presented within RSI's Motion "pertains to a small part of RSI's claims and damages."[53]

Summary judgment is, of course, inappropriate before the passage of adequate time for discovery." *Maki v. Laakko,* 88 F.3d 361, 367 (6th Cir. *1996)* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986)). As the Supreme Court has noted, summary judgment should be entered "after adequate time for discovery." *Celotex v. Catrett,* 477 U.S. 317, 322 (1986). Only in rarest of situations should summary judgment be granted against party "who has not been afforded the opportunity to conduct discovery." *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292 (2ⁿᵈ Cir. 2003) (citing *Hellstrom v. US. Dept. of Veterans Affairs,* 201 F.3d 94, 97 (2ⁿᵈ Cir. 2000)) Since summary judgment is a "drastic device," it should not be granted when there are major factual contentions in dispute. *National Life Ins. Co. v. Soloman,* 529 F.2d 59, 61 (2ⁿᵈ Cir. 1975). "This is particularly so when, as here, one party has yet to exercise its opportunity for pretrial discovery." *Id.* (citing Fed. R. Civ. P. 56(f)). "The availability of a continuance is built into the Rules to guard against the premature entry of summary judgment." *Barfield v. Brierton,* 883 F.2d 923, 931 (11ᵗʰ Cir. 1989). "As a general rule summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery." *Reflectone, Inc. v. Farrand Optical Co., Inc.,* 862 F.2d 841, 843 (11ᵗʰ Cir. 1989). The non-

---

[53] Plaintiff's Motion for Partial Summary Judgment, p. 2.

moving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Miller*, 321 F.3d 292.

In this case, additional discovery is necessary because RSI solely possesses the relevant information. Only RSI knows whether it fully complied with the Partnership Agreement, what information it possessed, why it did not send an invoice as required by the Partnership Agreement, why allegations within RSI's First Amended Complaint are patently inconsistent with documents produced by RSI, or why RSI's Amended Complaint disputes the 18 month bonus calculation even though RSI now urges that that the same is accurate. To date, RSI has not produced documents or information which answer the aforementioned questions as a matter of law. Since RSI's entitlement to partial summary judgment hinges on its own conduct, knowledge and Partnership Agreement compliance, the Liberty Companies seek time in which to complete discovery on these issues.

## VII.   THE LIBERTY COMPANIES' REQUEST A HEARING OR ORAL ARGUMENT

The Liberty Companies request a hearing or oral argument on RSI's Motion for Partial Summary Judgment. RSI makes accusations against the Liberty Companies, many of which are not supported by RSI's own pleadings or the record as a whole, and the Liberty Companies believe it may be helpful for the Court to be able to question both sides before making a decision on the matter.

### CONCLUSION

For all of the reasons stated above, the Liberty Companies respectfully submit that RSI's Motion for Partial Summary Judgment should be denied. In the alternative, the Liberty Companies move this Court for additional time in which to complete discovery relevant to the multiple factual issues raised by RSI. Further, this Court should hold as a matter of law that the Partnership Agreement is a valid, enforceable liquidated damages provision and that the Liberty Companies never assumed a fiduciary duty to RSI.

Respectfully submitted,

J. Clarke Keller, Esq.
Gregory P. Parsons, Esq.
STITES & HARBISON, PLLC
250 West Main Street, Suite 2300
Lexington, Kentucky 40507
Telephone: (858) 226-2300
COUNSEL FOR DEFENDANTS,

This is to certify that a true and accurate
copy of the foregoing was served by
United States Mail, postage prepaid, to:

Brent L. Caldwell, Esq.
Robert E. Maclin, III, Esq.
McBrayer, McGinnis, Leslie & Kirkland, PLLC
201 East Main Street, Suite 1000
Lexington, Kentucky 40507
COUNSEL FOR PLAINTIFF,
REPUBLIC SERVICES, INC.

On this the __17th__ day of __February__, 2006.

Counsel for Defendants