

**Helmsman Management Services, Inc.**

Riverside Office Park
9 Riverside Road
Weston, Massachusetts 02493-2290
(617)243-7985

## AMENDMENT TWO HELMSMAN SERVICE AGREEMENT NUMBER: WP8-C5B-004207-058

In consideration of the mutual covenants set forth in this Agreement, and any attachments incorporated herein by reference, Helmsman Management Services, Inc. ("Helmsman") and Republic Services, Inc. ("the Customer") agree as follows :

Effective 06/30/1999 this Agreement has been Non-Renewed. The Expiration Date as set forth in the Specification of this Agreement has been amended to read 06/30/1999.

All other TERMS AND CONDITIONS remain.

In witness whereof, the parties have executed this Agreement, in duplicate, in recognition of the creation of a binding Agreement.

Republic Services, Inc.

By _____

David Barclay
Print Name

Senior Vice President, General Counsel
Title

Date: July 26, 1999

HELMSMAN MANAGEMENT SERVICES, INC.

By _____

AMY J. LEDDY
Vice President

Date: 7/2/99

AMENDMENT TWO
HMS 2093 - CTG

EXHIBIT 7

LM-001086    Page 1 of 1



**Helmsman Management Services, Inc.**

Riverside Office Park
9 Riverside Road
Weston, Massachusetts 02193-2290
(617) 243-7985

HELMSMAN SERVICE AGREEMENT NUMBER: WP8-C5B-004207-138       92.4

In consideration of the mutual covenants set forth in this Agreement, and any attachments incorporated herein by reference, Helmsman Management Services, Inc. ("Helmsman") and Republic Services, Inc. ("the Customer") agree as follows:

## SPECIFICATIONS

Customer:   Republic Services, Inc.
            Republic Plaza
            200 South Andrews Ave. Suite 1100
            Fort Lauderdale, FL 33301

            Phillip A. Troskey
            Division V.P. Risk Management

Type(s) of Service To Be Provided:

            Claims
            Risk Information Services
            Loss Prevention

Effective Date of Agreement:  06/30/1998

Expiration Date of Agreement: ~~01/01/2000~~ 6/30/1999

            12:01 AM Standard Time At The Address Of The Customer Stated Herein.

If Claim Service Is To Be Provided, Date(s) of Claims To Be Serviced: Claims for Liberty Mutual policies occurring during the Agreement period, serviced to conclusion.

State(s) In Which Service Is To Be Provided:

Current States Arizona, California, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky, Maine, Maryland, Michigan, Mississippi, Missouri, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia

Relevant Insurance Policies/Relevant Insurers:

Policy Numbers:   WA2-C5D-004207-018/Liberty Mutual Insurance Group
                  WC2-C51-004207-028/Liberty Mutual Insurance Group

CTG SERVICE
HMS 2093 R1/95 – CTG

LM-001087

Page 1 of 10

# TERMS AND CONDITIONS

## I. ACTION AGAINST HELMSMAN

o person or entity not a party to this Agreement shall be entitled to rely on, benefit from or bring action under this Agreement.

## II. ASSIGNMENT

Assignment of Customer's interest under this Agreement shall not bind Helmsman until its consent is endorsed hereon. Assignment of Helmsman's interest under this Agreement shall not bind the Customer until its consent is endorsed hereon.

## III. ASSISTANCE AND COOPERATION

The Customer shall cooperate with Helmsman and, upon Helmsman's request, shall attend hearings and trials, and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of all suits or proceedings. Any expenses incurred by the Customer in the fulfillment of this Section shall be the direct responsibility of the Customer unless coverage for such expenses is provided by a Relevant Insurance Policy.

## IV. CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of this Agreement or prevent Helmsman from asserting any right under the terms of this Agreement. The terms of this Agreement may not be waived or changed except by the mutual agreement of the parties as evidenced by a written amendment hereto which is signed by a duly authorized officer of Helmsman.

## V. GENERAL

A.  Unless otherwise provided in this Agreement or in those controverted cases where counsel has been retained by the Relevant Insurer, Helmsman shall have the authority to investigate, negotiate, adjust and settle claims subject to agreed upon Special Claims Services instructions, if any, and in accordance with applicable law and regulation.

B.  Helmsman may, with Customer approval, contract with one or more persons or entities to perform any of the service obligations to be performed by Helmsman. Contracting with any member company of the Liberty Mutual Group to perform any service obligation shall not require Customer approval. If Helmsman elects to enter into such contracts, the provision of the Indemnification Section which refers to Helmsman's directors, officers and employees shall also include persons or entities with whom Helmsman contracts.

C.  The parties agree that notices under this Agreement shall be sent postage fully prepaid, plainly addressed to the designated contact persons at the addresses shown in the Specifications of this Agreement.

D.  The parties agree that this Agreement shall be construed under and governed by the law of the Commonwealth of Massachusetts.

E.  The Customer and all of its affiliates, subsidiaries or other entities designated on the Specifications Page to receive services pursuant to this Agreement shall all be jointly and severally liable for performance of the terms of this Agreement including, but not limited to, the payment of all monies due Helmsman pursuant to the Financial Obligations and Payment Schedule. Any notice required pursuant to the terms of this Agreement shall be in writing and may be sent to the Customer, at the address indicated on the Specifications Page, on behalf of all those listed as subsidiaries or affiliates or other entities entitled to service hereunder. The Customer will make payment on behalf of all of them, unless the Customer and Helmsman agree on some other arrangement.

## VI. INDEMNIFICATION

Helmsman shall not incur any liability with respect to any of the Customer's obligations as an employer, an insured or otherwise. Except as may be otherwise provided in Section X. Loss Prevention Service Obligations, the Customer shall indemnify Helmsman for any and all claims, demands, expenses, including reasonable attorneys fees, costs, penalties, fees and/or judgments incurred by, or assessed against, Helmsman which result from or arise out of or in connection with any function of Helmsman under this Agreement, except that Customer shall have no obligation to indemnify Helmsman pursuant to this Agreement to the extent that liability for such amounts is determined by mutual agreement, a court of competent jurisdiction, or through arbitration binding upon the Customer and Helmsman, to arise directly from the willful or negligent acts or omissions of Helmsman or its servants, employees, officers, representatives, adjusters or agents in the performance or breach of Helmsman's duties under this Agreement.

Should Helmsman elect to contract or subcontract with other persons and/or entities to provide any of the services or materials required pursuant to this Agreement, then the requirement that the Customer hold Helmsman harmless and indemnify Helmsman, set forth in the preceding paragraph, shall also apply to such other persons or entities.

In the event that Helmsman provides to the Customer or any affiliate or subsidiary named in this Agreement or to a successor administrator claims files or other information collected pursuant to this Agreement and pertaining to a claim or claimant, the Customer agrees to indemnify and hold Helmsman and any person with whom Helmsman has contracted to provide service under this Agreement harmless from any claims, lawsuits, settlements, judgment, costs, penalties, and expenses which might arise from providing such material or information to the Customer, its subsidiaries, affiliates or its successor administrator. The Customer further agrees to indemnify and hold Helmsman and any person with whom Helmsman has contracted to provide service under this Agreement harmless from any claims, lawsuits, settlements, judgment, costs, penalties, and expenses arising from any subsequent use or publication of said material or information by the Customer, any affiliate, subsidiary or any other person or entity.

## VII. TERMINATION

A.  This Agreement shall terminate on the Expiration Date shown in the Specifications, or on any specified date, to be known as the "termination date," at least 30 days following written notice by one party to the other, provided, however, that only 10 days written notice need be given by Helmsman to the Customer if the Customer fails to perform any of its Financial Obligations. In the event that this Agreement is terminated by Helmsman or the Customer, Helmsman shall promptly notify the Relevant Insurer(s).

B.  Helmsman, in its sole discretion shall have the option to terminate some or all of this Agreement contemporaneously with the termination for any reason of the Relevant Insurance policy(s) listed on the Specification Page. In the event that a Relevant Insurance Policy is to be terminated, Helmsman shall promptly notify the Customer and the Relevant Insurer regarding its decision to terminate some or all of this Agreement. If there is more than one Relevant Insurance policy and less than all of the Relevant Insurance policies are to be terminated, Helmsman may elect to terminate only that portion of this Agreement pertaining to claims services pertaining to those claims for which coverage was provided.

C.  The Customer's Financial and other obligations shall survive termination of this Agreement.

D.  In the event of termination, Helmsman will continue to handle claims which occurred during this Agreement period except when termination is because of the Customer's failure to meet its Financial Obligations hereunder.

In the event that the Customer or the Relevant Insurer indicated on the Specification Page gives notice to Helmsman to cease handling such claims as of a specific date, Helmsman shall, as of the date so specified (1) cease to incur allocated expenses related to the Relevant Policy, (2) cease to make claims payments with respect to such claims for which coverage was provided by the Relevant Policy as of the effective date and hour of the cancellation, and (3) request from the Relevant Insurer shall promptly transfer to the Relevant Insurer the claim files and any other information possessed by Helmsman with respect to the claims.

## VIII. CONFIDENTIALITY

Helmsman acknowledges that in providing services pursuant to this Agreement, Helmsman may have access to or may become aware of, Trade Secret Information. Helmsman agrees to hold in confidence all Trade Secret Information disclosed to Helmsman, and designate as such, in connection with this Agreement, either in writing or verbally, except:

1) information not designated by the Customer as Trade Secret Information; or

2) information which, at the time of disclosure, is in the public domain or which, after disclosure, becomes part of the public domain by publication or otherwise through no action or fault of Helmsman; or

3) information which Helmsman can show is in its possession at the time of disclosure and was not acquired, directly or indirectly, from the Customer; or

4) information which was received by Helmsman from a third party having the legal right to transmit that information.

Helmsman shall not, without the written permission of the Customer, use the Trade Secret Information which Helmsman is obligated hereunder to maintain in confidence for any reason other than to enable Helmsman to properly and completely perform the services under this Agreement to enable the Relevant Insurer to fulfill its obligations under one or more of the insurance policies listed on the Specification Page.

Helmsman shall limit the disclosure of the Trade Secret Information to those persons in Helmsman's organization and in the Relevant Insurer who have a need to know all or part of the Trade Secret Information. Helmsman shall make such disclosure to each such person limited to that portion of the Trade Secret Information that person needs to know. Helmsman shall inform each such person of the provisions of this Agreement regarding Trade Secret Information and shall make reasonable efforts to insure that each person shall abide by those provisions.

For purposes of this Agreement, Trade Secret Information means confidential information revealed to Helmsman and designated as Trade Secret Information.

## IX. FINANCIAL OBLIGATIONS

A. The Customer will: (1) reimburse Helmsman for all amounts which Helmsman has paid or advanced under Claims Service Obligations of this Agreement; (2) pay Helmsman an Administrative Fee, Claims Costs and Other Charges, if any, in an amount and on a basis as set forth in Exhibit A, the Payment Schedule(s) which is attached hereto and which is incorporated by reference as part of this Agreement; and (3) pay Helmsman a Loss Prevention Service fee, if applicable, as set forth in Loss Prevention Service Obligations and/or Payment Schedule(s).

B. To secure its obligations under this Agreement and to effect such payments to Helmsman and the Relevant Insurer, the Customer shall make a Loss Deposit, as set forth in the Payment Schedule(s) in a sub-account at Chase Manhattan Bank NY ("Chase"). The Customer shall keep such funds on deposit at all times while Helmsman is servicing claims under this Agreement. The Customer shall maintain a corporate banking account at a bank of the Customer's choosing and shall authorize Chase to transfer funds from the corporate account into the sub-account in order to maintain the requisite Loss Deposit amount. The Customer shall also agree to allow Chase to transfer funds from the sub-account into Helmsman's pool account at Chase for the purpose of funding claims and other payments contemplated by this Agreement. If the amount of the Loss Deposit held in the sub-account becomes inadequate for the purposes described in Claims Service Obligations of this Agreement, Helmsman will adjust the deposit amount to an amount reasonably believed by Helmsman to be adequate and bill the Customer the difference. The Customer shall promptly deposit the difference into the sub-account at Chase or shall promptly authorize Chase to transfer the difference from the Customer's corporate account into the sub-account.

C.  Helmsman shall forward the invoice provided by Chase to the Customer on a monthly basis for banking fees. The Customer shall reimburse Helmsman promptly upon receipt thereof.

## X. LOSS PREVENTION SERVICE OBLIGATIONS

Helmsman Management Services will provide Loss Prevention services as defined in the Loss Prevention Service Specifications (Service Specifications) negotiated with the Customer only in the states specified, and for the effective period of this Agreement. The Service Specifications are incorporated herein and are made a part hereof by reference. This Agreement provides for the following services during the Agreement period:

> Miscellaneous Service Hours - IF REQUESTED BY CUSTOMER GMC
> Industrial Hygiene Service - IF REQUESTED BY CUSTOMER

Loss Prevention service provided in excess of the negotiated number of hours or of a nature differing in quantity, kind or quality from those negotiated with the Customer as set forth in the Service Specifications and which are requested by the Customer will be billed at the rates in effect at the time of delivery.

Any inspections, surveys, reports, recommendations and/or training sessions are rendered solely and exclusively for the financial benefit of the Customer. We do not undertake to perform the duty to any individual person, trainee or organization to provide for the health or safety of workers, trainees or the public and we do not warrant that condition.

We may visit your location(s), at your request, to gather information and consult with you regarding possible courses of action which may be undertaken by you to reduce losses. We will provide reports which may include recommended changes in methods, equipment or other areas. While your actions based on our recommendations may reduce losses, we do not undertake to perform the duty to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or in compliance with applicable laws, regulations, codes or standards.

In the event that training services are provided under this Agreement, any training of the Customer's employees, supervisory or management personnel hereunder shall be provided with the understanding by Customer that Customer shall be solely liable for any claims, demands, expenses, costs, penalties, fees and/or judgments to the extent that such amounts are incurred or arise because the employees, supervisory and/or management personnel trained by Helmsman actively or passively misunderstand, misapply, omit or miscommunicate the substance of their training or the training materials provided by Helmsman. Customer shall indemnify Helmsman for any and all claims, demands, expenses, costs, penalties, fees and/or judgments incurred by, or assessed against, Helmsman to the extent that liability for such amounts are determined by mutual agreement, a court of competent jurisdiction, or through arbitration binding upon the Customer and Helmsman, to be attributable directly or indirectly to the active or passive misunderstanding, misapplication, omission or miscommunication by Customer's employees, supervisory and/or management personnel of the substance of their training or the training materials provided to them by Helmsman.

Should Helmsman elect to contract with other persons and/or entities to provide any of the training or training materials requested by the Customer pursuant to this Agreement, then the requirement that the Customer hold Helmsman harmless and indemnify Helmsman set forth in the preceding paragraph shall also apply to such other persons or entities.

## XI. CLAIMS SERVICE OBLIGATIONS

A.  This Agreement shall apply only to those claim(s) for which the type(s) of service is clearly reflected in the Specifications of this Agreement. For purposes of this Agreement, the type(s) of claims shall be interpreted as follows:

> With respect to workers' compensation claims and unless otherwise provided, "claim" or "claims" means any claim or lawsuit which coverage is provided by a Relevant Policy.

CTG SERVICE
HMS 2093 R1/95 - CTG

LM-001091

B.  Upon execution of this Agreement, the Customer shall directly or through its Relevant Insurer promptly make available to Helmsman all papers, documents and records of any kind bearing upon each existing claim against the Customer which may be within the terms of this Agreement. The Customer or its Relevant Insurer shall, with respect to each claim which may be within the terms of this Agreement, give to Helmsman prompt notice of any claim, demand or suit brought against the Customer after the effective date of this Agreement and shall promptly forward to Helmsman every notice, summons or other process received by the Customer or its representatives.

C.  With respect to claims serviced pursuant to this Agreement, Helmsman will act as agent for the Customer and its Relevant Insurer to investigate, negotiate, adjust or settle such claims in accordance with agreed upon Special Claims Service Instructions, if any. It will be the responsibility of the Customer and Relevant Insurer to designate counsel to work with Helmsman in the handling of cases which are in litigation or may go into litigation. Payment for these legal services and expenses associated therewith will be the direct responsibility of the Relevant Insurer but Helmsman may assist the Relevant Insurer by:

   1. advancing payments and maintaining records of payments to the Customer's counsel; and

   2. advancing payments and maintaining records of costs taxed against the Customer in any such claim and all interest accruing after judgment.

D.  Helmsman shall perform its obligations under this Agreement in a manner that is reasonable and prudent for the services provided; but Helmsman does not warrant that its performance shall be error free.

E.  In addition to the claim services indicated above, Helmsman will provide the following additional claim services during the Agreement period unless noted otherwise. Additional fees for these services, if any, are shown in Exhibit A, the Payment Schedule(s) which is attached hereto and which is incorporated by reference as part of this Agreement.

> Eight Field Claim Reviews
> FAST 800 Service
> Customized Settlement Authority
> Helmsman Field Investigations & Related Activity
> Claim Audits

Additional fees for these services, if any, are shown in Exhibit A, Payment Schedule(s) which is attached hereto and which is incorporated by reference as part of this Agreement.

## XII. RISK INFORMATION SERVICE OBLIGATIONS

With respect to Risk Information Services, Helmsman will (1) create statistical reports with respect to claims investigated and adjusted under this Agreement as required and requested by the Customer; (2) provide the Customer with a monthly statement which will show closed and outstanding claims, the amount owed to Helmsman by the Customer and such other information as may be mutually agreed upon by both parties to this Agreement in writing. This Agreement provides for the following reports/services during the Agreement period:

In witness whereof, the parties have executed this Agreement, in duplicate, in recognition of the creation of a binding Agreement.

Republic Services, Inc.

By _____

Date: __July 26, 1999__

__David Barclay__
Print Name

__Senior Vice President, General Counsel__
Title

HELMSMAN MANAGEMENT SERVICES, INC.

By _____

Date: __7/30/99__

AMY J. LEDDY
Vice President



Riverside Office Park
9 Riverside Road
Weston, Massachusetts 02193-2290
(617) 243-7985

# EXHIBIT A - PAYMENT SCHEDULE

HELMSMAN SERVICE AGREEMENT NUMBER:   WP8-C5B-004207-138   92/4

## SECTION 1. PAYMENT SCHEDULE PERIOD

This Payment Schedule shall apply for the period from 06/30/1998 to ~~01/01/2000~~ 6/30/99.

## SECTION 2. AMOUNT PAYABLE

The amounts payable by the Customer to Helmsman under this Agreement shall consist of the sum of the Administrative Fee, Loss Prevention Service Fees, Claims Costs, and Other Charges, if any.

I. ADMINISTRATIVE FEE

The Administrative Fee shall be payable as follows:

**$55,000.00**
~~$82,500.00~~   Total Administrative Fee payable in the first month of the Payment Schedule Period.

II. LOSS PREVENTION SERVICE FEES

A. The Loss Prevention Service Fees shall be computed per the current fee schedule.

B. The Loss Prevention Service Fees shall be billed as incurred based on actual services delivered, at the following rates:

Miscellaneous Field Service will be billed on time and expense at an hourly rate $125.00/hr;

Industrial Hygiene Service will be billed on time and expense at an hourly rate $130.00/hr; and,

Travel Time will be billed on time and expense at an hourly rate $80.00/hr.

C. Additional Fees for services requested by the Customer; including but not limited to, seminar attendance, Technical Director travel expenses, analytical laboratory charges, safety films, and videos; if any, will be billed as incurred.

III. CLAIMS COSTS

The Claims Costs shall equal the sum of the Claims Handling Charge, Loss and Expense Payment Arrangement and the Loss Deposit.

A.  Claims Handling Charge

1.  The Claims Handling Charge will be computed as follows:

    for each Indemnity Claim for management of such claim reported to Helmsman during the contract period until conclusion:

    | Claim Type | Charge Per Claim |
    |---|---|
    | Indemnity | $1,250.00 |
    | Medical | $95.00 |
    | Record Only | $45.00 |

2.  The Claims Handling Charge shall be incurred in the month the claim is reported and billed monthly one month in arrears.

B.  Loss and Expense Payment Arrangement with Relevant Insurer

   Helmsman shall issue checks from a pool account maintained at Chase to provide a mechanism for the payment of Customer's actual losses and allocated expenses as provided under Financial Obligations. The Customer shall maintain a sub-account at Chase from which Chase shall be permitted to immediately transfer funds from the sub-account into the pool account as such checks are presented for payment.

C.  Loss Deposit held by Relevant Insurer

1.  The Loss Deposit shall be computed on the basis of estimated paid loss and allocated expense, and will be deposited into the Customer's sub-account at Chase as required under Financial Obligations prior to the effective date of this Agreement.

2.  The Loss Deposit shall be maintained in the sub-account at Chase by the Customer at all times while Helmsman is servicing claims in accordance with the Financial Obligations provision of this Agreement.

3.  The amount of the Loss Deposit may be changed by Relevant Insurer in accordance with the TERMS AND CONDITIONS provisions of this Agreement.

IV. OTHER CHARGES

Additional Field Claim Reviews in Excess of Eight will be billed monthly based on a review rate of $995.00/per review.

Field Investigations & Related Activity will be billed monthly based on time and expense at an hourly rate of $90.00/hr.

Claims Audit will be billed monthly based on time and expense at an hourly rate of $90.00/hr.

Additional fees for services requested by the Customer; including but not limited to, seminar attendance, Technical Director travel expenses, analytical laboratory charges, safety films, videos, and ad hoc reports; if any, will be billed as incurred.

## SECTION 3. PAYMENTS

I.  The first amounts due under this Agreement are for Administrative Fee, the Loss Deposit and Other Charges, as applicable. These amounts shall be paid by the Customer not later than the first (1st) day of the period of this Agreement.

II. For each month of the period of this Agreement, Helmsman will send the Customer a statement showing the amounts owed Helmsman under SECTION 2 of this Payment Schedule.

III. In the event of nonpayment by the Customer of any of the amounts owed Helmsman under this Payment Schedule, Helmsman may terminate this Agreement in accordance with the TERMS AND CONDITIONS provisions of this Agreement.