## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## LEXINGTON DIVISION

| | | |
|---|---|---|
| REPUBLIC SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 5:03-494-KSF |
| | ) | |
| V. | ) | |
| | ) | |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, et al., | ) | **SECOND AMENDED COMPLAINT** |
| | ) | |
| Defendants. | ) | |

*     *     *     *     *     *

Comes now the Plaintiff, REPUBLIC SERVICES, INC. ("Republic"), by and through counsel, and for its Second Amended Complaint against the Defendants LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL ACQUISITION COMPANY f/k/a LIBERTY MUTUAL FIRE INSURANCE COMPANY, LIBERTY INSURANCE CORPORATION, LM INSURANCE CORPORATION, THE FIRST LIBERTY INSURANCE CORPORATION and HELSMAN MANAGEMENT SERVICES, INC. (hereinafter collectively the "Liberty Companies"), states as follows:

## REITERATION AND INCORPORATION
## BY REPUBLIC OF VERIFIED COMPLAINT:

1-62.    Republic reiterates and incorporates herein by reference numerical Paragraphs 1-62 of the Verified Complaint as if set forth fully herein and further alleges as follows:

**COUNT FOUR:**
**BREACH OF CONTRACT**

63. Republic reiterates and incorporates herein by reference numerical Paragraphs 1-62 of the Verified Complaint as if set forth fully herein.

64. The Liberty Companies acted as the agents of Republic in handling, administering and managing the Workers Compensation Program.

65. The Liberty Companies accepted substantial consideration from Republic for the services and coverages as alleged in the Verified Complaint, including in the handling, administration and management of the Workers Compensation Program.

66. The Liberty Companies thereby agreed, either expressly or impliedly, to undertake certain contractual obligations and duties in favor of Republic in exchange therefore.

67. The contractual duties and obligations of the Liberty Companies include, but are not limited to, the following:

    A. To properly handle, administer and manage the Workers Compensation Program;

    B. To properly manage and distribute funds entrusted to the Liberty Companies under the Workers Compensation Program;

C.   To prevent Republic from incurring liability or premiums, charges and fees under the Workers Compensation Program as a result of the acts and omissions of the Liberty Companies;

D.   To properly calculate the bonus/penalty under the "Partnership Agreement" to the 2000 fiscal year, covering injuries arising or occurring between July 1, 2000, and June 30, 2001, of the Workers Compensation Program;

E.   To conduct timely, adequate, reasonable and good faith investigations of all claims;

F.   To conduct timely, adequate, reasonable and good faith surveillance on all claims where appropriate;

G.   To conduct timely, adequate, reasonable and good faith evaluations of all claims;

H.   To implement and use an action plan for all claims to determine coverage, compensability, and damages;

I.   To conduct timely, adequate, reasonably and good faith follow-up investigation on all claims where such follow-up investigation is necessary or appropriate;

J.   To timely, adequately, reasonably and in good faith settle of all claims;

3

K.    To obtain all necessary releases and waivers upon settlement of a claim;

L.    To pay only legitimate claims within the authority provided by Republic;

M.    To periodically and consistently monitor the reserves so that the reserves accurately reflect the amount of money paid out and the amount of money that would be paid out for future expenses;

N.    To timely, adequately, reasonably and in good faith adjust the reserves to reflect the realistic value of each claim;

O.    To minimize the number of litigated claims;

P.    To timely, adequately, reasonably and in good faith evaluate all claims before entering settlements;

Q.    To periodically, at reasonably time periods, and consistently monitor all claims files, using calendared deadlines and repeating intervals to follow up on investigation and action plans;

R.    To timely and accurately update all claims files with notes and action plans;

S.    To timely and accurately communicate with Republic regarding the status of claims;

T.    To timely and accurately communicate with the injured employee and any third parties;

4

U.   To provide an adequate defense to claims;

V.   To conduct meaningful claims reviews with Republic;

W.   To timely and accurately communicate with Republic regarding matters of settlement and setting of reserves;

X.   To discuss with Republic the status of all claims in litigation;

Y.   To disclose the Liberty Companies' workers compensation claims practices handling internal policies, procedures, and guidelines;

Z.   To refer each claim to competent and adequate legal counsel to protect Republic's interests;

AA.   To regularly communicate with said legal counsel and to accurately and timely document those communications and the status of litigation;

BB.   To hire competent and adequate medical defense doctors or advisors to protect Republic's interests;

CC.   To timely request all necessary medical treatment and medical evaluations of claimants;

DD.   To process claims fairly with a good faith regard toward their impact on Republic's interests;

EE.   To identify and pursue subrogation against third parties;

FF.  To provide Republic with timely credits on subrogation recoveries;

GG.  To provide Republic with experienced, competent and adequately-trained claims adjusters;

HH.  To provide appropriate training for all claims personnel;

II.  To have the Liberty Companies' claims personnel keep regular diaries for properly monitoring claims and otherwise property and adequately document all activities related to each claim file;

JJ.  To avoid unnecessary delays in closing claims;

KK.  To make timely payments to Republic's injured employees;

LL.  To limit the number of angry claimants by working with Republic in resolving all claims;

MM.  To handle the claim files consistent with Republic's own guidelines;

NN.  To work closely with Republic's personnel in coordinating claims and reducing claims in the future;

OO.  To properly defend Republic in every workers compensation claims;

PP.  To permit Republic to review and audit all claims files and to access all claims data and information;

QQ.   To disclose information to Republic regarding compensation claims against it for auditing purposes;

RR.   To avoid unnecessary delays in defending or otherwise closing out claims;

SS.   When setting the reserves, to consider the impact that those reserves had on Republic's financial situation and the impairment of Republic's capital;

TT.   When setting the reserves, to consider the impact that those reserves would have on Republic's future workers' compensation premiums, including those that might be charged in the future by the Liberty Companies;

UU.   To timely, adequately, reasonably and in good faith consider the advice of its own attorneys or agents;

VV.   To accurately and fairly set Republic's premium rates based on the true claims;

WW.   To timely, adequately, reasonable and in good faith accept or deny claims within the statutory period provided by state law;

XX.   To not modify or conceal the Liberty Companies' reserve practices, or otherwise maximize the Liberty Companies' receipts at the expense of Republic;

YY. To disclose any changes or modifications to the Liberty Companies' workers compensation claims handling practices, procedures and guidelines;

ZZ. To contain Republic's costs and expenses of under the Workers' Compensation Program;

AAA. To timely and properly document all claims files;

BBB. To not receive the benefit of the Liberty Companies' contractual relationships with third party risk managers, attorneys and others whose knowledge and experience in workers' compensation matters could enable Republic to realize a substantial savings in premium dollars;

CCC. To protect the financial interests of Republic; and

DDD. To economically, efficiently and in the best interest of Republic expend funds of Republic and not to expend funds of Republic to the Liberty Companies which were duplicative, unnecessary, or were to be included as a part of fixed charges paid by Republic to the Liberty Companies.

68. The Liberty Companies have breached their contractual duties and obligations to Republic.

69. As a result of the Liberty Companies' breaches of their contractual duties and obligations, Republic has suffered and

incurred damages, including, but not limited to: (i) excessive payments to claimants for indemnity, medical and/or other expenses under the Workers Compensation Program, (ii) late fees, interest and penalties incurred by the Liberty Companies but charged to Republic, (iii) excessive payments to the Liberty Companies for premiums, charges and fees, (iv) payments in excess of the aggregate self-retention for the 1998-1999 fiscal year, (v) excessive payments to the Liberty Companies as a "Bonus" under the Partnership Agreement for the 2000-2001 fiscal year, (vi) increased premiums, (vii) wrongful drawdown on Republic's letter(s) of credit; and (viii) impairment of the financial capital of Republic.

**COUNT FIVE**
**<u>NEGLIGENCE</u>**

70. Republic reiterates and incorporates herein by reference numerical Paragraphs 1-62 of the Verified Complaint and Paragraphs 63-69 of this Second Amended Complaint as if set forth fully herein.

71. The Liberty Companies acted as the agents of Republic in handling, administering and managing the Workers Compensation Program.

72. The Liberty Companies accepted substantial consideration from Republic for the services and coverages as alleged in the Verified Complaint, including in the handling,

administration and management of the Workers Compensation Program.

73. As a result of this relationship, the Liberty Companies had certain common law obligations and duties in favor of Republic.

74. The duties and obligations of the Liberty Companies include, but are not limited to, those duties and obligations set forth *supra* in Paragraph 67.

75. The Liberty Companies negligently breached their duties and obligations to Republic.

76. As a result of this negligence by the Liberty Companies, Republic has suffered and incurred damages, including, but not limited to: (i) excessive payments to claimants for indemnity, medical and/or other expenses under the Workers Compensation Program, (ii) late fees, interest and penalties incurred by the Liberty Companies but charged to Republic, (iii) excessive payments to the Liberty Companies for premiums, charges and fees, (iv) payments in excess of the aggregate self-retention for the 1998-1999 fiscal year, (v) excessive payments to the Liberty Companies as a "Bonus" under the Partnership Agreement for the 2000-2001 fiscal year, (vi) increased premiums, (vii) wrongful drawdown on Republic's letter(s) of credit; and (viii) impairment of the financial capital of Republic.

## COUNT SIX:
## BREACH OF IMPLIED DUTY OF
## GOOD FAITH AND FAIR DEALINGS/BAD FAITH

77. Republic reiterates and incorporates herein by reference numerical Paragraphs 1-62 of the Verified Complaint and Paragraphs 63-76 of this Second Amended Complaint as if set forth fully herein.

78. The Liberty Companies acted as the agents of Republic in handling, administering and managing the Workers Compensation Program.

79. The Liberty Companies accepted substantial consideration from Republic for the services and coverages as alleged in the Verified Complaint, including in the handling, administration and management of the Workers Compensation Program.

80. The Liberty Companies owed certain implied obligations and duties of good faith and fair dealings to Republic.

81. The duties and obligations of good faith and fair dealings of the Liberty Companies include, but are not limited to, those duties and obligations set forth *supra* in Paragraph 67.

82. The Liberty Companies have breached these duties and obligations of good faith and fair dealings to Republic and otherwise acted in bad faith.

11

83. As a result of these breaches of the duties and obligations of good faith and fair dealings and bad faith by the Liberty Companies, Republic has suffered and incurred damages, including, but not limited to: (i) excessive payments to claimants for indemnity, medical and/or other expenses under the Workers Compensation Program, (ii) late fees, interest and penalties incurred by the Liberty Companies but charged to Republic, (iii) excessive payments to the Liberty Companies for premiums, charges and fees, (iv) payments in excess of the aggregate self-retention for the 1998-1999 fiscal year, (v) excessive payments to the Liberty Companies as a "Bonus" under the Partnership Agreement for the 2000-2001 fiscal year, (vi) increased premiums, (vii) wrongful drawdown on Republic's letter(s) of credit; and (viii) impairment of the financial capital of Republic.

**COUNT SEVEN:**
**BREACH OF FIDUCIARY DUTY**

84. Republic reiterates and incorporates herein by reference numerical Paragraphs 1-62 of the Verified Complaint and Paragraphs 63-83 of this Second Amended Complaint as if set forth fully herein.

85. The Liberty Companies acted as the agents of Republic in handling, administering and managing the Workers Compensation Program.

12

86. The Liberty Companies accepted substantial consideration from Republic for the services and coverages as alleged in the Verified Complaint, including in the handling, administration and management of the Workers Compensation Program.

87. The Liberty Companies owed certain fiduciary obligations and duties to Republic.

88. These fiduciary duties and obligations of the Liberty Companies include, but are not limited to, those duties and obligations set forth *supra* in Paragraph 67.

89. The Liberty Companies have breached these fiduciary duties and obligations to Republic.

90. As a result of these breaches of fiduciary obligations and duties by the Liberty Companies, Republic has suffered and incurred damages, including, but not limited to: (i) excessive payments to claimants for indemnity, medical and/or other expenses under the Workers Compensation Program, (ii) late fees, interest and penalties incurred by the Liberty Companies but charged to Republic, (iii) excessive payments to the Liberty Companies for premiums, charges and fees, (iv) payments in excess of the aggregate self-retention for the 1998-1999 fiscal year, (v) excessive payments to the Liberty Companies as a "Bonus" under the Partnership Agreement for the 2000-2001 fiscal year, (vi) increased premiums, (vii) wrongful drawdown on

Republic's letter(s) of credit; and (viii) impairment of the financial capital of Republic.

**COUNT EIGHT:**
**FRAUD and/or INTENTIONAL MISPREPRESENTATION**
**and/or NEGLIGENT MISREPRESENTATION**

91. Republic reiterates and incorporates herein by reference numerical Paragraphs 1-62 of the Verified Complaint and Paragraphs 63-90 of this Second Amended Complaint as if set forth fully herein.

92. At all times herein alleged, upon information and belief, Defendant Liberty Mutual Insurance Company was the agent for and/or alter ego of Defendants Liberty Mutual Acquisition Company f/k/a Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance Company, and Helmsman Management Services, Inc. Defendant Liberty Mutual Insurance Company, acting within the scope and authority of this agency relationship, made materially false misrepresentations regarding the Liberty Companies' workers compensation claims handling practices, procedures, and guidelines by which the Liberty Companies would handle, administer and manage the Workers Compensation Program for Republic, including, but not limited to, those duties and obligations set forth in Paragraph 67 *supra*. Specifically, Defendant Liberty Mutual Insurance Company misrepresented to Republic that the Liberty Companies would handle, administer and

manage the Workers Compensation program by implementing, following, using, and abiding by those workers compensation claims handling practices, procedures, and guidelines standard in the industry, requested by Republic, and set forth in Paragraph 67 *supra*.

93. Defendant Liberty Mutual Insurance Company, acting within the scope and authority of the foregoing agency relationship, knowingly, intentionally, recklessly, or negligently made these misrepresentations.

94. Defendant Liberty Mutual Insurance Company, acting within the scope and authority of the foregoing agency relationship, made these misrepresentations to induce Republic to retain the Liberty Companies to handle, administer and manage the Workers Compensation Program for Republic.

95. Republic relied and acted upon those misrepresentations in retaining and paying the Liberty Companies to handle, administer and manage the Workers Compensation Program for Republic

96. As a result of Republic's reliance upon the misrepresentations of Defendant Liberty Mutual Insurance Company, acting within the scope and authority of the foregoing agency relationship, Republic has suffered and incurred damages, including, but not limited to: (i) excessive payments to claimants for indemnity, medical and/or other expenses under the

Workers Compensation Program, (ii) late fees, interest and penalties incurred by the Liberty Companies but charged to Republic, (iii) excessive payments to the Liberty Companies for premiums, charges and fees, (iv) payments in excess of the aggregate self-retention for the 1998-1999 fiscal year, (v) excessive payments to the Liberty Companies as a "Bonus" under the Partnership Agreement for the 2000-2001 fiscal year, (vi) increased premiums, (vii) wrongful drawdown on Republic's letter(s) of credit; and (viii) impairment of the financial capital of Republic.

### COUNT NINE:
### UNJUST ENRICHMENT

97. Republic reiterates and incorporates herein by reference numerical Paragraphs 1-62 of the Verified Complaint and Paragraphs 63-96 of this Second Amended Complaint as if set forth fully herein.

98. The Liberty Companies had an obligation to not incur unreasonable costs, expenses, indemnity payments, medical payments, penalties, interest or fees in satisfying its obligations and duties, as set forth in Paragraph 67 *supra*, in connection with the handling, administration and management of claims under the Workers Compensation Program.

99. The Liberty Companies incurred unreasonable costs, expenses, indemnity payments, medical payments, penalties,

interest or fees in handling, administering, and managing the Workers Compensation Program by failing to perform their obligations and duties, as set forth in Paragraph 67 *supra*.

100. The Liberty Companies charged or passed on to Republic these unreasonable costs, expenses, indemnity payments, medical payments, penalties, interest or fees.

101. The Liberty Companies have failed and refused to reimburse Republic for any of the unreasonable costs, expenses, indemnity payments, medical payments, penalties, interest or fees paid by Republic but incurred by the Liberty Companies.

102. The Liberty Companies also shifted claims handling, administration and management functions to their own in-house legal counsel, nurse care managers and other departments resulting in Republic paying to the Liberty Companies excessive premiums, charges and fees.

103. By reason of the foregoing, the Liberty Companies have been unjustly enriched at the expense of Republic, and Republic has suffered and incurred damages, including, but not limited to: (i) excessive payments to claimants for indemnity, medical and/or other expenses under the Workers Compensation Program, (ii) late fees, interest and penalties incurred by the Liberty Companies but charged to Republic, (iii) excessive payments to the Liberty Companies for premiums, charges and fees, (iv) payments in excess of the aggregate self-retention

for the 1998-1999 fiscal year, (v) excessive payments to the Liberty Companies as a "Bonus" under the Partnership Agreement for the 2000-2001 fiscal year, (vi) increased premiums, (vii) wrongful drawdown on Republic's letter(s) of credit; and (viii) impairment of the financial capital of Republic.

**COUNT TEN:**
**INDEMNITY-PAYMENTS EXCEEDING SELF-RETENTION LIMITS**

104.  Republic reiterates and incorporates herein by reference numerical Paragraphs 1-62 of the Verified Complaint and Paragraphs 63-103 of this Second Amended Complaint as if set forth fully herein.

105.  The Workers Compensation Program for the 1998-1999 fiscal year, covering injuries arising from July 1, 1998 through June 30, 1999, provides for an aggregate self-retention by Republic in the amount of $12,500,000.00 or a rate of $4.34 per $100 of audited Workers Compensation and Employers Liability payroll, whichever is greater.

106.  The Workers Compensation Program for the 1999-2000 fiscal year, covering injuries arising from July 1, 1999 through June 30, 2000, provides for an aggregate self-retention by Republic in the amount of $19,000,000.00 or a rate of $4.56 per $100 of audited Workers Compensation and Nevada Employers Liability excluding all other Monopolistic States payroll, whichever is greater.

107.  The total costs incurred, including expenses, indemnity and reserves, by Republic for the 1998 fiscal year, covering injuries arising from July 1, 1998 through June 30, 1999, and the 1999 fiscal year, covering injuries arising from July 1, 1999 through June 30, 2000 under the Workers

Compensation Program, are in excess of the aggregate self-retention limit for the respective period.

108. Republic is entitled to reimbursement and/or indemnity from the Liberty Companies for any and all monies paid exceeding the aggregate self-retention on claims made under the 1998 fiscal year, covering injuries arising from July 1, 1998 through June 30, 1999, and the 1999 fiscal year, covering injuries arising from July 1, 1999 through June 30, 2000.

**COUNT ELEVEN:**
**INDEMNITY-EXCESSIVE "BONUS"**
**PAYMENTS UNDER PARTNERSHIP AGREEMENT**

109. Republic reiterates and incorporates herein by reference numerical Paragraphs 1-62 of the Verified Complaint and Paragraphs 63-108 of this Second Amended Complaint as if set forth fully herein.

110. As part of the Workers Compensation Program for the 2000-2001 fiscal year, covering injuries arising from July 1, 2000 through June 30, 2001, Republic and the Liberty Companies also entered into the 2000 Workers' Compensation Partnership Agreement (hereinafter the "Partnership Agreement").

111. The goal of the "Partnership Agreement" was for the Liberty Companies to partner with Republic to reduce total workers' compensation costs to Republic.

112.  This Partnership Agreement provided that the Liberty Companies would be entitled/subject to a bonus/penalty based upon ultimate paid loss rate.

113.  The bonus/penalty to be paid by/to the Liberty Companies under the Partnership Agreement was to be determined at three dates, approximately 18, 30 and 42 months, after the effective date of the Partnership Agreement, and net of the previous calculation for the 30 and 42 month evaluation dates.

114.  In the event a bonus was to be paid to the Liberty Companies, the bonus to be was to be 20% of the savings between actual projected ultimate workers compensation paid losses and the lower boundary of the guaranteed range. In the event a penalty was to be paid by the Liberty Companies, the penalty was fixed at a maximum of $110,625.

115.  The Liberty Companies were paid a bonus under the Partnership Agreement based upon its calculation at the end of the 18 month period. There has been no determination of the bonus/penalty to be paid to/by the Liberty Companies for the 30 or 42 month periods.

116. The total incurred costs under the Workers Compensation Program for the 2000-2001 fiscal year now exceed the projected ultimate paid loss rate.

117.  As a result, in addition to the compensatory and punitive damages asserted elsewhere in the Verified Complaint

21

and Second Amended Complaint, Republic is entitled to reimbursement and/or indemnity from the Liberty Companies for any and all monies paid under the Partnership Agreement to the Liberty Companies as a "bonus" and the Liberty Companies are obligated to pay the maximum "penalty" to Republic under the Partnership Agreement.

## COUNT TWELVE:
## PUNITIVE DAMAGES

118. Republic reiterates and incorporates herein by reference numerical Paragraphs 1-62 of the Verified Complaint and Paragraphs 63-117 of this Second Amended Complaint as if set forth fully herein.

119. As a result of the Liberty Companies' bad faith, acts, omissions, oppression, fraud, malice, breaches and willful and wanton conduct alleged in the Verified Complaint and Second Amended Complaint, Republic is entitled to punitive damages from the Liberty Companies.

**WHEREFORE**, Plaintiff, Republic Services, Inc., prays for relief on its Verified Complaint and Second Amended Complaint against Defendants, Liberty Mutual Insurance Company, Liberty Mutual Acquisition Company f/k/a Liberty Mutual Fire Insurance Company, Liberty Mutual Corporation, LM Insurance Corporation, The First Liberty Insurance Corporation and Helmsman Management

Services, Inc., jointly and severally, as agents of each other and/or alter egos of each other, as follows:

(1) For a judgment in favor of Republic and against the Liberty Companies, jointly and severally, for compensatory damages in an amount to be determined at trial;

(2) For a judgment in favor of Republic and against the Liberty Companies, jointly and severally, for incidental and consequential damages in an amount to be determined at trial;

(3) For a judgment in favor of Republic and against the Liberty Companies, jointly and severally, for punitive damages in an amount to be determined at trial;

(4) For a judgment in favor of Republic and against the Liberty Companies, jointly and severally, for recovery of Republic's attorneys' fees, costs and expenses incurred in obtaining the relief requested in the Verified Complaint and Second Amended Complaint;

(5) For a trial by jury on all issues so triable;

(6) For prejudgment and postjudgment interest applicable; and

(7) For such other relief to which Republic may be properly entitled.

Respectfully submitted,

**/s/ ROBERT E. MACLIN, III, ESQ.**
Robert E. Maclin, III, Esq.
MCBRAYER, MCGINNIS, LESLIE
& KIRKLAND, PLLC
201 East Main Street, Suite 1000
Lexington, KY 40507-1361
Telephone: (859) 231-8780
ATTORNEYS FOR PLAINTIFF,
REPUBLIC SERVICES, INC.

P:\Rob Maclin\Republic\LIBERTY MUTUAL\Second Amended Complaint.doc