Eastern District of Kentucky
**FILED**

JUN 0 7 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 03-494-KSF

REPUBLIC SERVICES, INC.                                                    PLAINTIFF

V.                          **OPINION & ORDER
                     ON PRELIMINARY INJUNCTION**

LIBERTY MUTUAL INSURANCE                                          DEFENDANTS
COMPANY, ET AL.

\* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the motion of defendants Liberty Mutual Insurance

Company, Liberty Insurance Acquisition Corporation f/k/a Liberty Mutual Fire Insurance

Company, Liberty Insurance Corporation, LM Insurance Corporation, the First Liberty Insurance

Corporation, and Helmsman Management Corporation, Inc. (collectively"Liberty") for a

preliminary injunction pursuant to FRCP 65(A) [DE #115].  A hearing of this matter was held on

June 5, 2006, whereby the Court heard evidence and the arguments of both parties.

I.      **FACTUAL BACKGROUND**

According to the plaintiff Republic Services, Inc. ("Republic"), it instituted this lawsuit

because Liberty collectively failed to properly handle, administer, and manage Republic's

workers' compensation program (the "WC Program").  Republic states that Liberty made

representations and assumed certain common law and contractual duties pertaining to their

administration of Republic's WC Program and seeks to recover from Liberty damages sustained

as a result of Liberty's failure to properly administer the program.

Relevant to the present motion, Liberty now claims that Republic is obstructing and interfering with its management of the WC Program by ordering the workers' compensation defense attorneys not to prepare settlement agreements with terms negotiated between Liberty and the claimants. Thus, Liberty now seeks an order enjoining Republic from interference in and obstruction of Liberty's settlement of all workers' compensation claims under the WC Program.

## II.   THE PARTIES' ARGUMENTS

### A.   Liberty's Motion

Liberty asserts that it has an unambiguous and unequivocal right under the policies of the WC Program to settle workers' compensation claims on behalf of Republic.[1] Specifically, Liberty claims that in keeping with this right, it has entered into structured settlements whereby part of the settlement was paid out to claimants by Liberty over time. Liberty would then purchase annuities to fund the settlements using only third-party vendors (brokers and life insurance agencies) who had been pre-approved by Liberty for such purpose.

According to Liberty, a Republic representative (Mr. David Spruance) has wrongly asserted that Liberty is not authorized to consummate these structured settlements without first obtaining *Republic's* approval of the broker being used, and Republic apparently has determined that it will not approve any of the brokers previously approved by Liberty. Thus, with respect to the structured settlement of claimant Russell Morris, Republic has instructed defense attorneys not to finalize the settlement documents because the settlement does not utilize Republic's broker. Thus, Liberty seeks an injunction preventing Republic from interfering with or obstructing *any*

---

[1]    The WC Program covers workers' compensation claims occurring during three consecutive one-year terms commencing June 30, 1998, 1999, and 2000.

-2-

settlement entered into by Liberty under the WC Program (whether or not a structured settlement is involved).

**B.**     **Republic's Response**

Republic responds that Liberty has overstated its authority under the policies and ignores the "Special Service Instructions" ("SSI") and "Minimum Customer Requirements" ("MCR's") negotiated by the parties that also govern Liberty's handling of the WC Program.  Contrary to Liberty's suggestion, the SSI's and the MCR's require Republic to approve such settlements, including the broker used.  A major issue for Republic is the third-party brokers Liberty is using  – and paying with Republic monies – which it argues Liberty is using at Republic's expense for Liberty's own financial gain.  Thus, Republic posits that the only issue presented by the preliminary injunction motion is Liberty's continued failure and refusal to utilize qualified "A" rated third-party structured settlement brokers and annuity providers to the detriment of Republic and to the sole benefit of Liberty and its affiliates.

Republic also argues that the relief sought – enjoining Republic from authorizing or interfering with *any* settlement – is too broad and violates the SSI's and MCR's that expressly require Republic's approval for any claim over $10,000.00.  Republic further points out that Liberty has routinely and historically sought such approval, and continues to do so, under the terms of the SSI's.  Thus, the relief sought, rather than preserving the status quo, would materially and radically change the status quo.

Republic also argues that because Liberty has access to Republic monies through letters of

credit and bank accounts funded by Republic and from which Liberty makes withdrawals,[2] Liberty owes to Republic more than just contractual duties and obligations, but also statutory and common law duties associated with a fiduciary relationship. Thus, Liberty's use of unauthorized brokers or providers breaches these obligations and is also fatal to their motion.

Republic further argues that the motion should be rejected because Liberty relies solely on language in one of multiple policies and documents constituting the contracts between Republic and Liberty, without providing all of these to the Court for review. By failing to attach and discuss all relevant and controlling documents, Liberty has failed in its burden to demonstrate a likelihood of success on the merits.

### C. Liberty's Reply

In reply, Liberty reframes the question as follows: should Liberty be permitted to continue the status quo of settling workers' compensation claims filed by Republic's employees during the policy periods free from interference and obstruction by Republic? Liberty asserts that contrary to Republic's statements, the status quo since 1998 has been for Liberty to use pre-approved annuity vendors and brokers for structured settlements. Republic may have objected to portions of this procedure beginning in 2003, but it has only very recently *blocked* or completely obstructed an actual settlement.

Liberty takes issues with certain factual statements made by Republic, such as the statement that it is only Republic that is incurring risk and costs on these claims. Liberty has paid millions of dollars on these claims that will not be reimbursed by Republic and, as the insurer, has

---

[2]       Republic deposits money into at least one bank account from which Liberty makes disbursements to claimants, pays medical bills, makes withdrawals for reserves on claims and to pay related expenses, and receives compensation for its claims handling services.

-4-

continuing financial exposure and risk on these claims. Further, the very document on which Republic relies for its "exclusive and final authority" to settle claims does not support that proposition. The SSI is neither a part of the contract between the parties nor does it grant such authority.

Also misleading is Republic's assertion that the claims are only being settled with Republic's money. For example, Liberty is required to pay additional costs for any claims from the first policy year that exceed Republic's aggregate retention. Most importantly, the four brokers Liberty uses for structured settlements are independent, and they do not provide any compensation to Liberty in connection with the structured settlements. Liberty uses only these four pre-approved brokers because it is exposed to significant liability if the companies fail to fulfill the terms and conditions of the structured settlements. Republic does not identify any problems with these companies and has not shown any cost savings that would result from using its own broker. Liberty argues that Republic further has not identified any specific harm that it suffers as a result of the process Liberty uses to achieve structured settlements.

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Applicable Standards

As the Court has previously noted, "[a] preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved." ACLU v. Mercer County, Kentucky, 219 F. Supp.2d 777, 781 (E.D. Ky. 2002). As set forth by the Sixth Circuit, the four factors a court must balance when considering whether to grant a motion for a preliminary injunction are as follows:

-5-

(1) the likelihood of the [movant's] success on the merits;
(2) whether the injunction will save the [movant] from irreparable injury;
(3) whether the injunction would harm others; and
(4) whether the public interest would be served.

Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1381 (6th Cir. 1995)

(citations omitted).  The Sixth Circuit further stated that "[a] district court is required to make

specific findings concerning each of the four factors, unless fewer are dispositive of the issue."  Id.

(quotation marks omitted).

> For example, a finding that the movant has not established a strong probability of success on the merits will not preclude a court from exercising its discretion to issue a preliminary injunction if the movant has, at minimum, show[n] serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued.

Six Clinics Holding Corp., II v. Cafcomp Sys., Inc., 119 F.3d 393, 399-400 (6th Cir. 1997)

(citations and quotations omitted).  In general, "the degree of likelihood of success that need be

shown to support a preliminary injunction varies inversely with the degree of injury the [movant]

might suffer."  Doe v. Sundquist, 106 F.3d 702, 707 (6th Cir. 1997).  "Moreover, the four factors

are not prerequisites to be met, but rather must be balanced as part of a decision to grant or deny

injunctive relief."  Performance Unlimited, 52 F.3d at 1381 (citing In re DeLorean Motors Co.,

755 F.2d 1223, 1229 (6th Cir. 1985)).

Liberty, as the party seeking the preliminary injunction, bears the burden of producing

evidence of the four factors enumerated above.  However, "[a] party . . . is not required to prove

his case in full at a preliminary injunction hearing . . . ."  In re DeLorean, 755 F.2d at 1230

(quoting University of Texas v. Camenisch, 451 U.S. 390, 395 (1981)).  Further, any "ruling at

-6-

the preliminary injunction stage does not necessarily bind the Court to rule similarly" on later

dispositive motions. Mercer County, 219 F. Supp.2d at 781 (citing Six Clinics Holding Corp.,

119 F.3d at 400).

## B.    Likelihood of Success on the Merits

The ultimate question under this factor is whether Republic is improperly interfering with

or obstructing Liberty's right to settle workers' compensation claims under the WC Program

using its own pre-approved brokers. This turns on a determination of which party has the

ultimate authority to settle such claims. Liberty asserts that under the terms of the policies that

make up the contract agreements, it has the ultimate authority based upon the following language:

> We [Liberty] have the right and duty to defend at our expense any
> claim, proceeding, or suit against you [Republic] for benefits
> payable by this insurance. We have the right to investigate and
> settle these claims, proceedings or suits.

(Defts.' Mot. at p. 6.)[3]

Republic, on the other hand, contends that the parties' agreement regarding settlement

authority relies not only on the policies at issue, but also the applicable SSI's and MCR's, as well

as fiduciary considerations. It cites language from one SSI in particular in support of its argument

that it is only Republic that can finally authorize a settlement, as well as the manner in which a

claim is settled (i.e., the use of a specific broker):

---

[3]      Republic argues that this is the language in only one of many contracts between the
parties, but Liberty replies that all of the policies contain this same language, as attested to by a
Liberty representative. Republic has not come forth with any other policy language for the Court
to consider.

SETTLEMENT AUTHORITY:
All proposed settlements greater than $10,000 must be discussed in advance with Suzanne Flynn [a Republic representative]. An E-mail note should be sent at least one week prior to negotiations. For settlements of $50,000 or more send a copy of the request to Gary Gezzer. Every request for authority should include [the following specific information]: . . .

(Plff.'s Resp., Exh. A at p.3.) In support of its contention that the SSI's are part of the binding

contract between the parties, Republic relies on a document referred to as the "Helmsman Service

Agreement" for the 1998-1999 policy period, which apparently was a written addendum to one or

more of the policies at issue, and which stated the following:

[Liberty s]hall have the authority to investigate, negotiate, adjust and settle claims subject to agreed upon Special Claims Services Instructions, if any, and in accordance with applicable law and regulation.

(Plff.'s Resp. at p. 12.) Republic apparently argues that the Helmsman Service Agreement is a

limitation on Liberty's settlement authority for all claims it administers under the WC Program.

### 1.    *Contractual Authority*

It appears initially to the Court that Liberty, and not Republic, has the ultimate authority

to settle claims under the WC Program, based on the policy language cited by the parties. Each

policy contains language stating that Liberty, as the insurer, has "the right . . . to settle these

claims, proceedings, and suits" with claimants. It is clear from this language that the final

authority resides with Liberty, not Republic.

The SSI's do not appear to alter this authority. First, the SSI's cannot be considered

amendments to the policies. Each policy contains a merger clause limiting the agreement between

the parties to the express terms of the policy and limiting changes or waivers to endorsements

issued by Liberty. The SSI's and MCR's are not signed by either party and were not issued as

-8-

part of any Liberty endorsement. They are internal directives or guidelines or instructions to Liberty personnel regarding how to handle specific matters that may arise in administering the WC Program. Therefore, the Court finds that it is the policy language that controls.

Based on the above, Liberty has at the very least raised serious questions as to the merits of this issue and has sufficiently shown that the policy language controls and that Republic has improperly interfered with the claim of Russell Morris. However, the Court notes that this ruling at the preliminary injunction stage does not necessarily bind the Court to rule similarly on a later dispositive motion. Mercer County, 219 F. Supp.2d at 781 (citation omitted).[4]

### 2.     *Authority Based on Common Law and Fiduciary Duties*

Republic also argues that "because the money to fund the annuity [related to a structured settlement] comes from Republic, [Liberty is] obligated to use a broker and annuity provider that will benefit Republic, and not [Liberty]," and thus Liberty's use of its own pre-approved vendors instead of Republic-approved vendors is a breach of Liberty's fiduciary duties.

The court must reject this argument. First, Republic's repeated assertions that "this is our money" ignores the fact that Republic is not a self-insurer, but that *Liberty* is the insurer, with all the concomitant risks associated with that position. Second, assuming that Liberty's access to Republic's account creates a fiduciary relationship, along with all applicable (but as yet unidentified) statutory and common law duties, Republic has not sufficiently articulated how Liberty's use of its own brokers is benefitting Liberty *to the detriment of Republic,* or how the use

---

[4]     In reaching this decision, the Court has given no weight to Republic's Exhibit B, a document dated September 2, 1998. Based on the evidence presented at the hearing, the Court still has no idea what this document is, who authored it, what its purpose is, etc. At the very least, the Court finds that the document did not alter the policy language discussed above.

of Republic-approved vendors would benefit Republic more than just nominally.

Republic states that Liberty's use of an affiliated life insurance vendor is "at Republic's expense" and "to the cost, expense and detriment of Republic" because said vendor is not a qualified "A" rated vendors. However, according to Liberty's reply, this associated vendor does, in fact, have an A.M. Best rating of "A." Liberty also puts forth additional valid business reasons why these vendors are the only ones it uses for structured settlements. This argument simply is not sufficiently developed to overcome Liberty's showing of a serious question on the merits.

### 3.    Issue of "Recency" and Status Quo

Republic also objects to Liberty's motion because, it argues, this is not a new dispute and that, in fact, Republic has been objecting to Liberty's use of these vendors since at least 2003. Republic contends that, as a result, a preliminary injunction would not preserve the status quo, but would radically and materially alter the status quo (the status quo being that Liberty must seek and receive authorization from Republic to settle certain claims in the WP Program). Liberty responds that while Republic's *objections* are not new, it has only recently begun to completely obstruct at least one settlement negotiated by Liberty.

Based on the analysis above, concluding that Liberty retains the ultimate authority to decide how to settle claims under the WC Program, and given the recent change in circumstances, whereby Republic has gone from voicing objections to acting on them, the timing of the motion is appropriate. However, the injunction sought by Liberty – enjoining Republic from interfering with and obstructing the settlement of *all* workers' compensation claims being managed by Liberty – is simply too broad. Therefore, any preliminary injunction that issues will be tailored to the specific situation raised in the present motion (i.e., structured settlements).

-10-

Based on all of the above, the Court finds that this factor mitigates in favor of granting the injunction.

### C.     Irreparable Injury

"To demonstrate irreparable harm, [Liberty] must show that" unless the Court stops Republic from blocking settlements, it "will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated." Abney v. Amgen, Inc., 443 F.3d 540, 552 (6th Cir. 2006). Liberty asserts that it will suffer irreparable injury if Republic is allowed to continue blocking settlements negotiated by Liberty because Republic's actions expose Liberty to a number of injuries, primarily the exposure to liability for bad faith claims under state statutory law.

Republic responds that Liberty would not suffer any harm from having to use qualified, "A" rated vendors. It further argues that any harm to Liberty is speculative, as Liberty would not be subject to bad faith claims if it would just continue with the settlements using a Republic-approved vendor. Any harm that Liberty might otherwise incur would be the direct and sole result of Liberty's refusal to use Republic-approved vendors.

The Court is of the opinion that this factor weights in favor of issuing the injunction. Liberty has the last say as to how its settlements are structured, including the choice of broker used. Liberty, as an insurer, is also required to comply with varied state insurance laws. If Republic is allowed to block such settlements based on a right it does not have, this would not only subject Liberty to liability for bad faith claims, but could also jeopardize its license and ability to insure workers' compensation claims in various states. The Court further finds that this is the type of harm that is not easily compensated through money damages.

### D.     Potential Harm to Others

Liberty argues that issuance of the injunction would not harm any other party and would, in fact benefit many other parties, particularly WC Program claimants who have negotiated a settlement with Liberty. Any argument by Republic that it may be harmed is irrelevant, as Liberty has the sole contractual right to settle claims as it sees fit. Further, any alleged harm to Republic is the subject of this case and will be resolved herein.

Republic responds that Liberty's argument that Liberty employees will be harmed if Liberty uses qualified "A" rated Republic-approved vendors, as opposed to a Liberty affiliate, is ridiculous. Republic further argues that if Liberty would simply conduct and complete settlements pursuant to Republic's authority, no one would suffer any harm. On the other hand, enjoining Republic from exercising its settlement authority over structured settlements would only lead to further injury to Republic.

The Court finds that this factor also mitigates in Liberty's favor, particularly given Liberty's right to exercise authority over settlements and choose its own brokers. Because of the limited number of structured settlements, Republic was able to articulate at most a negligible harm resulting from Liberty using its own brokers as opposed to Republic-chosen brokers.

### E.     Public Interest

Liberty argues that the public interest would be served by issuance of the injunction because it would uphold the strong public policy in favor of using private settlement of disputes. Republic responds that it would not be in the public interest to allow Liberty to ignore its fiduciary obligations to Republic and allow Liberty to financially benefit at the cost and to the detriment of Republic and its employees.

-12-

Given that Republic has not articulated its fiduciary breach claims sufficiently, and given the public interest in settling disputes, the Court is of the opinion that the public interest favors issuance of the injunction.

## IV.   CONCLUSION

Based on the above, the court finds that a preliminary injunction should issue, but in a modified form. Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1)   the defendants' motion for a preliminary injunction is GRANTED IN PART and DENIED IN PART in accordance with this order;

(2)   pending further Orders of the Court, Republic and its representatives shall cease from interfering with and obstructing Liberty's use of structured settlements using its own pre-approved brokers and vendors, including Russell Morris's claim and any other structured settlement that might hereafter arise; and

(3)   no later than three (3) business days after the date of entry of this Order, Liberty shall post a surety bond in this Court in the amount of $10,000.00 to secure the preliminary injunction.

This _____ day of June, 2006.

KARL S. FORESTER, SENIOR JUDGE

-13-