Eastern District of Kentucky
FILED
JUN 0 9 2006
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 03-494-KSF

REPUBLIC SERVICES, INC.,                             PLAINTIFF

V.                **MEMORANDUM OPINION AND ORDER**

LIBERTY MUTUAL
INSURANCE COMPANIES, ET AL.,                      DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

The record reflects that on December 1, 2005, following a telephone conference with counsel for both parties hereto, the Magistrate Judge granted Liberty's request for a temporary protective order concerning Liberty's production of approximately 54,000 documents to plaintiff, directing that for the time being, access to these documents shall be restricted to plaintiff, plaintiff's counsel, support staff in the law offices of plaintiff's counsel, plaintiff's experts, and the third-party witnesses scheduled to be deposed during the week of December 5, 2005. See DE #39.

The record also reflects that subsequently, the parties were unable to agree on the terms of a protective order concerning the approximate 54,000 documents in question, that Liberty has filed a motion for a protective order concerning these documents, and that said motion has been fully briefed and is ripe for review.[1] Liberty's motion for a protective order was heard on March 14, 2006, and was taken under advisement at that time. Subsequently, the parties, by counsel, continued to work toward an agreed protective order, but were unable to reach any agreement thereon, and the parties have submitted additional memoranda in support of their respective positions regarding the motion for a protective order. Additionally, Liberty has supplemented its motion for a protective order by requesting that the protective order it seeks also apply to certain documents that reveal

---

[1] Pursuant to numerical paragraph 13 of the district court's Scheduling Order entered herein on March 11, 2005, all discovery disputes were referred to the Magistrate Judge for resolution. [DE #22].

information concerning Liberty's other customers, as more particularly described in Liberty's <u>Reply Supplementing Motion for Protective Order</u> [DE #88]and identified and attached thereto and filed under seal as Exhibits A, B, and C.

## II. THE DISPUTED REQUESTED PROTECTIVE ORDER

Liberty seeks a protective order, not for the entire population of the approximate 54,000 documents at issue, but only for its claims handling and training materials, which Liberty contends consist of trade secrets and/or confidential business information that should not be disclosed outside of this litigation. Additionally, Liberty subsequently moved that the requested protective order also apply to certain documents that reveal information concerning Liberty's other customers, as more particularly described in Liberty's <u>Reply Supplementing Motion for Protective Order</u> [DE #88]and identified and attached thereto and filed under seal as Exhibits A, B, and C. As grounds for its motion for a permanent protective order, Liberty submits that (1) the claims handling and training materials were created at considerable time, effort, and expense to it and are of independent economic value to it, (2) the disclosure of the claims handling materials would economically advantage its competitors, (3) Liberty maintains stringent safeguards to prevent public dissemination of the claims handling materials, and (4) Liberty has a Trade Secret Policy Statement on its intranet site that includes protection for its claims handling materials. For all of these reasons, Liberty asserts that good cause exists for entry of a protective order as to its claims handling and training materials. Liberty also contends that several other documents containing valuable customer information, identified as Exhibits A, B, and C to Liberty' Liberty' <u>Reply Supplementing Motion for Protective Order</u> [DE #88] should only be made available to opposing counsel for use in this litigation only under the terms of a protective order.

In response, plaintiff objects to Liberty's motion for a protective order restricting the production of Liberty's claims handling and training materials, arguing that these documents were prepared in order to comply with the state statutory and regulatory schemes to which Liberty's claims handling process is subject in most, if not all, jurisdictions where Liberty does business; therefore,

plaintiff submits that these documents are not confidential and that disclosure of these documents to any third party could not result in any competitive disadvantage to Liberty. Thus, plaintiff asserts that Liberty's motion for a protective order concerning its claims handing and training materials should be denied. Concerning the additional documents "containing valuable customer information" Liberty also seeks to be protected by a protective order (those documents attached as Exhibits A, B, and C to Liberty' <u>Reply Supplementing Motion for Protective Order</u> [DE #88], plaintiff presently has no objection to the documents identified as Exhibit A being subject to a protective order, but plaintiff does object to the documents identified as Exhibits B and C being covered by a protective order.

## Discussion

### A. Claims handling and training materials

In compliance with the Order of April 27, 2006, Liberty provided the Magistrate Judge with those documents comprising its "claims handling and training materials" for *in camera* review in the continued consideration of Liberty's motion for a protective order as to these particular documents. Liberty also provided the Magistrate Judge with an itemized listing of its "claims handling and training materials" identified by Bates-number, accompanied by a brief description of the document. The Magistrate Judge has conducted an *in camera* review of the foregoing documents, as itemized and described below:

| BATES NO. | DOCUMENT |
|---|---|
| LM 031805-032319 | WC Business Claim Manual 3rd Qtr 2005 |
| LM 032320-032541 | Business Claims Manual 3 (9/96) |
| LM 032542-032783 | Business Claims Manual 3 (6/97) |
| LM 032784-033292 | Workers Compensation Business Claim Manual 3rd Qtr. 2002 |
| LM 033293-033799 | Workers Compensation Business Claim Manual 4th Qtr. 2002 |

| | |
|---|---|
| LM 033800-034309 | Workers Compensation Business Claim Manual 1st Qtr. 2003 |
| LM 034310-034831 | Workers Compensation Business Claim Manual/Reference Guide Printed from Liberty's Intranet 2nd Qtr. 2003 |
| LM 034832-035328 | Workers Compensation Business Claim Manual/Reference Guide Printed from Liberty's Intranet 3rd Qtr. 2003 |
| LM 035329-035818 | Workers Compensation Business Claim Manual/Reference Guide Printed from Liberty's Intranet 4th Qtr. 2003 |
| LM 035819-036309 | Claims Manual/WC Manual/Reference Guide from LM Intranet 1st Qtr. 2004 |
| LM 036310-036832 | Business Claims Manual; WC Manual/Reference Guide from LM Intranet 2nd Qtr. 2004 |
| LM 036833-037380 | Business Claims Manual; WC Manual/Reference Guide from LM Intranet 3rd Qtr. 2004 |
| LM 037381-037910 | Business Claims Manual; WC Manual/Reference Guide from LM Intranet 4th Qtr. 2004 |
| LM 037911-038172 | Business Claims Manual; Workers Compensation Online Reference Guide 03 (4/01) |
| LM 038173-038475 | WC Reference Guide; Binder 2 |
| LM 038476-039088 | Business Claim Manual; Workers Compensation Online Reference Guide 02 (10/01) |
| LM 039089-039192 | Business Claims Manual; Workers Compensation Online Reference Guide 1 Qtr. 02 |
| LM 039193-039623 | Appears to be part of a manual; no cover sheet |
| LM 039624-040187 | Business Claims Manual; Workers Compensation Online Reference Guide 2 Qtr. 02 |
| LM 040188-040735 | Appears to be part of claims manual; no cover sheet |
| LM 040736-041310 | WC Reference Guide Printed from Liberty's Intranet Site 2nd Qtr. 2005 |
| LM 046623-046723 | Fast Track Fundamentals Facilitator's Guide (9/98) |
| LM 046724-047229 | MCO/People at Work Wausau's Care Managed Workers Compensation (2/18/98) |
| LM 047230-047797 | WC Model Office Training Material Facilitator's Guides (9/98 Edition) |
| LM 047798-048119 | Workers' Compensation New Hire Training Participant Guide (revised date 5/27/04) |
| LM 048120-048438 | Workers' Compensation New Hire Training Participant Guide (revision date 4/8/04) |
| LM 048439-048669 | Liberty Mutual Worker's Compensation New Hire Training Materials Day 2 (revision date Jan. 2000) |

4

| | |
|---|---|
| LM 048670-049039 | WC Core Training Nov. 13 – 17, 2000 Wausau Leader Guide |
| LM 049040-049228 | Litigation Management/Wausau Insurance Companies (3/31/98) |
| LM 049229-049563 | Participant Guide (first page missing from this) (revised date Nov. 2000) |
| LM 049564-050076 | The Best Commercial Markets Claims Education |
| LM 050077-050406 | WC Core Training June 11-15, 2001 Participant Guide (2/5/01 version) |
| LM 050407-050660 | Wausau Insurance Phase I Training Feb. 15-19, 1999 Tampa |
| LM 050661-051000 | Workers Compensation Phase I Training Jan. 22-26, 2001 |
| LM 051001-051127 | Business Markets Claims Education CM-ELT Workers Compensation Module 9; Case Dispositions and Settlement Negotiations |
| LM 051128-051278 | BOTest – ExPRS "Test" Trainer's User Guide for WC-ELT |
| LM 051279-051785 | Workers Compensation Phase 3 April 19-23, 1999 |
| LM 051786-052095 | Workers Compensation Phase I Training Sept. 18-22, 2000 |
| LM 052096-052429 | WC Core Training Nov. 13-17, 2000 Participant Guide |
| LM 052430-053105 | Claim Examiner Phase Two Training Workers Compensation June 21-25, 1999 |
| LM 058832-058964 | Medical and Disability Management Quick Reference Guide Participant's Version |
| LM 058965-059313 | WC Core Training July 25-29, 2005 Participant Guide |
| LM 059314-059460 | WC Core Training Sept. 26-30, 2005 Participant Guide (8/05 version) |
| LM 059461-060013 | Business Claims Manual; WC Manual/Reference Guide from LM Intranet 1st Qtr. 2005 |
| LM 060014-060590 | Business Claims Manual; WC Manual/Reference Guide from LM Intranet 2nd Qtr. 2005 |
| | |
| | |

In support of its motion for a protective order regarding its "claims handling and training materials," Liberty relies chiefly on *Hamilton v. State Farm Mutual Automobile Insurance Company*, 204 F.R.D. 420 (S.D. Ind. 2001), a case which is very instructive concerning the same issues presently before the court. The issues before the court in *Hamilton* were "whether State Farm's claims handing materials constitute protectable trade secrets, and whether they are subject to a

5

protective order." *Id.* at 423.² At the end of the day in *Hamilton*, the court concluded that State Farm's claims handling materials were trade secret materials that should be protected by a protective order.

## Analysis

Rule 26(c)(7) of the Federal Rules of Civil Procedure concerns protective orders and trade secrets and states in relevant part, as follows:

> **(c) Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> * * * *
>
> (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way; and . . .

Thus, in order to satisfy Fed.R.Civ.P. 26(c)(7), the movant must show that: (1) the interest for which protection is sought is an actual trade secret or other confidential business information that is protected under the rule; and (2) there is good cause for the entry of a protective order. *Andrew Corporation v. Rossi*, 180 F.R.D. 338, 340 (N.D.Ill.1998), *citing Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 (N.D. Ill. 1993).

To determine whether Liberty's "claims handling and training materials" in question constitute trade secret information entitled to protection under Fed.R.Civ.P. 26(c)(7), the court is also guided by the Kentucky Uniform Trade Secrets Act (hereafter "Act"), codified at KRS 365.880(4), which defines a "trade secret," as follows:

---

² Since *Hamilton* is a case decided by a sister district court in the Seventh Circuit Court of Appeals, *Hamilton* is not controlling, primary authority. However, the analysis of the *Hamilton* court and the rationale underlying the court's decision therein is nonetheless applicable by analogy.

(4) "Trade secret" means information, including a formula, pattern, compilation, program, data, device, method, technique, or process that:
    (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
    (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

KRS 365.880(4).

Under the foregoing definition, a trade secret entails information that (1) is of independent economic value due to its confidential nature, (2) would be of economic advantage to competitors if disclosed, and (3) is reasonably kept secret. The Act provides that "a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings." KRS § 365.888. Thus, in determining whether Liberty's "claims handling and training materials" at issue are trade secret information, the court must examine each of the aforementioned three factors.

**a.    information is of independent value due to its confidential nature**

Liberty asserts that its "claims handling and training materials" are of independent economic value to Liberty in that it invested considerable time, effort, and expense in creating these materials. Liberty states that these materials are unique creations of the company and are among its most valuable competitive assets. In short, Liberty says that these materials are at the very core of its strategies in competitively conducting its business. In support of these assertions, Liberty relies on the affidavit of Kristen Dodge, Liberty's Director of Technical Training, Commercial Services, who has been employed by Liberty for twenty (20) years. Ms. Dodge's affidavit states in relevant part, as follows:

> 3.    Liberty has developed its own customized claims handling procedures, techniques, processes, methods, systems, and policies that are embodied in Liberty's claims handling manuals and employee training materials (collectively "claims handling materials") that are unique to Liberty. Liberty has made substantial monetary and time investments in the development of its claims handling materials. Liberty's claims handling materials are among Liberty's most valuable assets. Liberty derives an independent economic value by maintaining the confidentiality of its claims handling materials such that they are not generally known to or readily ascertainable by proper means by other persons, such as competitors, who can obtain economic value from the materials' disclosure or use.

7

. . .

>5. Liberty's claims handling processes and procedures have been developed at great expense, are not made available to the public, and are maintained as confidential documents under Liberty's security. Disclosure of such information to a competitor would give the competitor information that otherwise could not be obtained. A competitor could use the claims handling manuals and training information requested by the plaintiff to copy or adapt Liberty's claims handling processes and policies. Just as significantly, the competitor's development time and cost for the concept, method, or process would be greatly reduced if it had access to the claims handling manuals and other training and instructional materials that plaintiff seeks. The competitor would realize substantial cost savings and thereby gain an unfair advantage. The competitor could do so without compensating Liberty for its expenses incurred in developing these ideas. This triple threat of a competitor's unearned savings, Liberty's uncompensated expense, and the competitor's market gain would result in an unfair competitive disadvantage to Liberty.
> With respect to Liberty's claims handling materials that have been discontinued, Liberty's claims handling process is evolutionary. Each new modification draws on Liberty's substantial financial investment made in the development of prior procedures and policies. Liberty's claims manuals and training materials are constantly reviewed and incremental improvements are implemented. Even claims handling manuals and training materials that have been discontinued are useful as part of that evolutionary process, both to Liberty and to Liberty's competitors, because they represent processes, procedures, and policies that are deemed less desirable in some way when compared to those currently used. Learning what procedures and policies are not optimal can be as valuable as learning optimal features. Liberty's claims handling experience is a unique asset that gives it a competitive advantage and the disclosure of that unique experience to a competitor poses a real risk of offering the competitor an unfair advantage.
> The workers compensation claims handling business is highly competitive. Competitors are always seeking to gain any advantage, whether it is more lead time for the introduction of new products, or an understanding of the competition's methods, thinking, goals and strategy. Competitors in the workers compensation claims handling industry also do not disclose information about their claims handling procedures and policies. Liberty does not have access to its competitors' claims handling and training materials. It would be extremely injurious to Liberty's competitive position in the marketplace if its claims handling manuals and training materials became public.

<u>Affidavit of Kristen Dodge</u>, 12/21/05 - Exhibit 2 to Liberty's <u>Memorandum in Support of Motion for Protective Order</u> [DE #42].

Based on the foregoing statements contained in the affidavit of Kristen Dodge, the Magistrate Judge concludes that Liberty has established that its "claims handling and training materials" have independent economic value to Liberty due to (1) their confidential nature, (2) the time, effort, and expense Liberty has invested in creating these materials, (3) the evolutionary process surrounding the development of these materials, (4) the competitive nature of the workers' compensation claims

8

handling business, and (5) the fact that competitors in the workers' compensation claims handling industry do not disclose information about their claims handling policies and procedures to one another.

### b. information would be of economic advantage to competitors if disclosed

Liberty asserts that the public disclosure of its claims handling manuals and training materials would economically advantage its competitors, as its competitors would then be able to see Liberty's claims handling and training strategies and philosophies and would then be able to replicate them without having to invest their own time, money, and resources, unlike Liberty has done. To support this argument, Liberty relies on numerical paragraph 5 of the Dodge Affidavit.

Numerical paragraph 5 of the Dodge Affidavit is set out in full above. Based on the statements contained therein, the Magistrate Judge concludes that Liberty has established that the public disclosure of its claims handling manuals and training materials would be of economical advantage its competitors.

### c. information is reasonably kept secret

Liberty contends that it maintains stringent safeguards to prevent public dissemination of its claims handling and training materials, as seen by the fact that its employee policy prohibits outside dissemination of the claims handling materials and its employees must agree not to disclose these materials to outside persons. Liberty also points out that it has a Trade Secret Policy Statement posted on its intranet site that includes protection for its claims handling and training materials. As support for these claims, Liberty relies on numerical paragraph 4 of the Dodge Affidavit, which states as follows:

> 4. For these reasons, Liberty treats its claims handling materials as confidential, commercial trade secrets, proprietary information, and Liberty takes substantial security measures to ensure that its trade secrets and competitively sensitive information, which includes its claims handling materials, (collectively "confidential information") remain strictly confidential within the company. Liberty's policies with regard to dissemination of confidential information are given to all new employees when they are hired at the company. Those policies include prohibition of, among other things, disseminating any information contained in the claims handling materials. All Liberty employees agree not to disclose to persons outside

> of the company any confidential company information without the company's express permission.
> Liberty employees who are given access to its computer systems have a user identification number and password and must agree not to disclose their passwords to others. Liberty's claims handling materials are provided only to Liberty employees who are able to access the information via the company's password protected intranet system. The fact that this information is available only through the company's private intranet system constantly reminds Liberty employees that this information is to be kept strictly confidential. Moreover, employees must return all company documents containing any confidential information when they terminate their employment with Liberty and are likewise required to surrender their intranet access. In addition, Liberty controls access to all of its business premises. Visitors are required to sign in and to be escorted by Liberty personnel while on the premises. All of these security precautions are maintained at a significant expense to Liberty.

<u>Affidavit of Kristen Dodge</u>, 12/21/05 - Exhibit 2 to Liberty's <u>Memorandum in Support of Motion for Protective Order</u> [DE #42].

Based on the foregoing statements contained in the affidavit of Kristen Dodge, the Magistrate Judge concludes that Liberty has established that its "claims handling and training materials" are reasonably kept secret.

Thus, under Kentucky's definition of a "trade secret," Liberty has established that its "claims handling and training materials" are trade secret information because it (1) is of independent economic value due to its confidential nature, (2) would be of economic advantage to competitors if disclosed, and (3) is reasonably kept secret.

The next step in this analysis requires the court to determine whether good cause exists for entry of a protective order relative to Liberty's trade secret information. Determining whether good cause exists "requires a balancing of the potential harm to litigants' interests against the public's right to obtain information concerning judicial proceedings." *Makar-Wellbon v. Sony Electronics, Inc.*, 187 F.R.D. 576, 577 (E.D.Wis.1999). *See also Wiggins v. Burge*, 173 F.R.D. 226, 228 (N.D.Ill.1997) (court must balance "the harm to the party seeking the protective order and the importance of disclosure to the public."). The moving party must show "that disclosure will work a clearly defined and serious injury." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3rd Cir.1994). *See, e.g., Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir.1986) (good cause must be based on specific factual determinations or potential harm, not on conclusory statements).

### a. disclosure would cause significant harm to Liberty's competitive and financial position

Liberty asserts that good cause exists for entry of a protective order as to its claims handling and training materials. Liberty states that in the absence of a protective order, its claims handling and training materials would become available to competitors through discovery produced in this litigation. Liberty reiterates that the insurance and claims handling industry is highly competitive and that its competitors could undermine its position in the marketplace with knowledge of these materials, as competitors could duplicate and reconstruct Liberty's claims handling and training procedures without investing their own time and effort in developing their own procedures. Liberty submits that public access to its claims handling and training materials would result in a substantial cost savings and competitive economic advantage to its competitors, at Liberty's expense.

Based on the statements contained in the Kristen Dodge affidavit, the Magistrate Judge concludes that this factor weighs in favor of entering a protective order.

### b. disclosure would result in an uncompensated taking of Liberty's property

Liberty also asserts that in the absence of a protective order, with the public disclosure of its claims handling and training materials, it will suffer a taking without just compensation, since its trade secret information, if disseminated, will lose its value.

It is well settled that trade secrets are a form of property. *See Carpenter v. United States*, 484 U.S. 19, 26 (1987). Therefore, the Fifth Amendment, which has been applied to the states and judicial action, affords property protection for Liberty's trade secrets and other confidential information. *See Chicago, B. & F.R.D. v. City of Chicago*, 166 U.S. 226 (1879). The value of a constitutionally-protected property such as a trade secret is depleted if the court permits public disclosure thereof. *See Hartley Pen Co. v. U. S. District Court,* 287 F.2d 324, 328 (9th Cir. 1961) ("the property in a trade secret is the power to make use of it the exclusion of the world. If the world knows the process, then the property disappears."). Since public knowledge of a company's trade secret destroys the value of such material, the forced disclosure of Liberty's claims handling and training materials would result in an uncompensated taking.

11

Based on the foregoing analysis, the Magistrate Judge concludes that this factor weighs in favor of entering a protective order.

c.     **balancing Liberty's interest with the interest of the plaintiff or the public**

The documents at issue concern only Liberty's internal claims handling and training procedure materials. Further, this breach-of-contract action is a simply private civil action filed by a party who contracted with Liberty to administer and manage its workers' compensation claims and who alleges that Liberty's services to it are deficient. Thus, the public interest in gaining access to the materials at issue is minimal at best, totally unlike the situation if this were a case filed by the government, on behalf of the public, asserting claims of fraud or breach of public trust against Liberty. Given the potential economic harm to Liberty resulting from the disclosure of its claims handling and training materials, the Magistrate Judge concludes that the great risk of injury to Liberty outweighs any interest of the plaintiff, third parties, or the public in gaining access to these materials.

Consequently, for the foregoing reasons, the Magistrate Judge also concludes that this factor weighs in favor of entering a protective order.

Since all three of the factors set out above weigh in favor of entering a protective order, the Magistrate Judge further concludes that Liberty has established good cause for the entry of a protective order relating to its claims handling and training materials. Such a protective order will strike an adequate balance between the competing interests of plaintiff and Liberty. Liberty has already provided plaintiff with its claims handling and training materials; therefore, a protective order will not prevent plaintiff from having full access to the documents at issue; it simply will prevent dissemination of these materials for use outside of this litigation.

B.     **Documents revealing information concerning Liberty's other customers**

Liberty has also moved that any protective order entered by the court also apply to certain documents that reveal information concerning Liberty's other customers, as more particularly described in Liberty's Reply Supplementing Motion for Protective Order [DE #88] and identified and

12

attached thereto and filed under seal as Exhibits A, B, and C. Liberty contends that these documents should only be made available to opposing counsel for use in this litigation under the terms of a protective order.

1.      **Documents revealing financial information (Exhibit A)**

Liberty seeks a protective order for those documents revealing the financial relationship with its customers and/or customer financial information. These documents, which comprise Exhibit A, consist of the following Bates-numbered documents:

    LM-020317 - LM-020321
    LM-025126
    LM-025044 - LM-025046
    LM-024969
    LM-025383
    LM-031057 - LM-031065
    LM-056566 - LM-056568

Plaintiff has no objection to the foregoing documents being subject to a protective order. The Magistrate Judge has conducted an *in camera* review of the documents comprising Exhibit A and concludes that these documents should be covered by a protective order.

2.      **Documents revealing Liberty's marketing relationship with its customers (Exhibit B)**

Liberty also seeks a protective order for those documents revealing its marketing relationship with its customers. These documents, which comprise Exhibit B, consist of the following Bates-numbered documents:

    LM-013924
    LM-013927 - LM-013928
    LM-015632 - LM-015638
    LM-015653 - LM-015666
    LM-015685 - LM-015699
    LM-020406 - LM-020407
    LM-025084
    LM-025134 - LM-025136
    LM-029277 - LM-029281
    LM-055011 - LM-055013
    LM-008360
    LM-008736 - LM-008738

13

Plaintiff objects to the foregoing documents being subject to a protective order, arguing that even a cursory review of these documents reveals that these documents do not contain marketing information; therefore, Liberty is not entitled to a protective order as to these documents.

The Magistrate Judge has conducted an *in camera* review of the documents comprising Exhibit B and concludes that, contrary to plaintiff's argument, these documents do contain marketing information and should be covered by a protective order.

3. **Documents revealing a compilation of Liberty's customers and/or customer information (Exhibit C)**

Liberty also seeks a protective order for those documents revealing a compilation of its customers (customer lists) and/or customer information. These documents, which comprise Exhibit C, consist of the following Bates-numbered documents:

```
LM-11819 - LM-11822
LM-11824
LM-11852
LM-11867
LM-11874
LM-11991
LM-11963
LM-11969
LM-11988
LM-20408 - LM-20410
LM-29282 - LM-29286
LM-008532
```

Plaintiff objects to the foregoing documents being subject to a protective order, arguing that such information is not a trade secret or proprietary information; therefore, Liberty is not entitled to a protective order as to these documents.

The Magistrate Judge has conducted an *in camera* review of the documents comprising Exhibit B and is unpersuaded by plaintiff's argument that Liberty is not entitled to a protective order protecting the documents in Exhibit C from disclosure to the public.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Liberty's motion for a protective order concerning its "claims handling and training materials" [DE #42] and as supplemented to include the documents contained in Exhibits A, B, and C to Liberty's Reply Supplementing Motion for Protective Order [DE #88] is **GRANTED**.

2. The temporary protective order entered on December 2, 2005, that was applicable to the 54,000 documents that Liberty produced to plaintiff on November 30, 2005, is **VACATED** and **SET ASIDE**, and shall be superceded by the entry of a more detailed Protective Order, which is being entered contemporaneously with the entry of this Memorandum Opinion and Order.

This __9th__ day of June, 2006.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE