# Defendant's Accounting Expert Report

## REPUBLIC SERVICES, INC.
## V.
## LIBERTY MUTUAL INSURANCE COMPANY, et al

## United States District Court, Eastern District of Kentucky
## Case No. 03-494 KSF

**Prepared by**
**Marc T. Ray, CPA-ABV**
**Ray, Foley, Hensley & Company, PLLC**
**230 Lexington Green Circle, Suite 600**
**Lexington, Kentucky 40503**
**(859) 231-1800**





# Ray, Foley, Hensley & Company, PLLC

### Certified Public Accountants and Consultants

May 1, 2006

Dennis H. England, CPA
Michael D. Foley, CPA
Lyman Hager, Jr., CPA
Jerry W. Hensley, CPA
Chris A. Humphrey, CPA
J. Carroll Luby, CPA
Marc T. Ray, CPA-ABV
_____
David L. Lowe, CPA

J. Clarke Keller, Esq.
Gregory P. Parsons, Esq.
Stites & Harbison, PLLC
250 West Main Street, Suite 2300
Lexington, KY 40507

RE: <u>REPUBLIC SERVICES, INC. V. LIBERTY MUTUAL INSURANCE COMPANY,</u>
<u>et al</u>. United States District Court, Eastern District of Kentucky Case No. 03-494 KSF

Gentlemen:

Ray, Foley, Hensley & Company, PLLC, successor to Ray, Hager & Henderson, PSC was engaged by you to assist with the accounting expert analysis in connection with the above styled case. We have not been engaged to audit or analyze the workers' compensation claim files, rather we have been engaged to analyze the participation and report methodology of Mr. Snoddy in connection with his work on the collaborative effort which culminated in the expert reports of Republic Services, Inc. ("Republic").

We have read the reports of Timothy K. Snoddy, CPA, CVA, DABFA, Thomas L. Ballard, Edgar W. Davenport and Jerome Michael LeVan, Ph.D. With the exception of Mr. Ballard's report, which actually contains some claims analysis, the other three reports are either a parroting of his report or are based on flawed or incomplete logic or information. Mr. Ballard's report is best characterized as a claims audit by checklist. If a claim file failed to show evidence of full compliance with certain claims handling procedures, Mr. Ballard either disallowed the entire cost of the claim or he rejected the expenses actually incurred after a certain date chosen by collaborative assessment.

In our opinion, the experts employed by Republic have crossed the boundary of expert and have moved into the arena of advocate. Their collaborative damage assessment is grossly overstated, lacks any measure of reasonableness or fairness and lacks a reasonable criteria for taking the claims processor's use of judgment into account in managing claims. They have used 20/20 hindsight to completely eliminate some very large claims, with no allowance for error of any type to develop a disallowance error rate to apply to the entire population of claims that has created a skewed damage estimate.

In addition, the selection of the files to be audited was never 100% randomized. Instead of a random sample of the entire population, Republic selected files with $7,500 or more of costs incurred to be reviewed. Snoddy et al tried to sanitize the process by having Dr. Levan attempt to lend some mathematical credibility to their non random sample by

230 Lexington Green Circle, Suite 600 • Lexington, Kentucky 40503-3326
Phone: 859-231-1800 • Fax: 859-422-1800 • Toll-Free: 1-800-342-7299
www.rfhco.com
Members American Institute of Certified Public Accountants and Kentucky Society of Certified Public Accountants

legitimizing their sample size and expanding their scope from 125 out of 7,744 files to 187 files out of the 7,744 population. As a result, they looked at a total of 292 files since some of the 187 files selected overlapped the initial 125 files reviewed. Either 125, 187 or 292 are still relatively small sample sizes out of the population of 7,744 files. These samples were actually selected out of the 746 files selected by Republic, not out of the 7,744 total universe of claims files.

The critical flaw in their selection process is the file selection was initially hand picked by Republic. There was never an opportunity to select files from the entire population and therefore there were no selections of any of the 607 files that were closed without a single dollar of claims being paid. These claim files were excluded at the outset. This is like selecting 500 patients from a list of patients who have had malpractice suits against a hospital chain and coming to the conclusion that 100% of the hospital's patients will have a malpractice claim against the hospital in the future. The selection process was tainted and no amount of statistics can randomize a skewed sample. Additional flaws and a more complete analysis of the claims disallowance criteria is explained in the body of our report.

In addition to rejecting certain actual claims handling costs, Mr. Snoddy alleges there were two other elements of damages. First, he alleges that the bonus paid to Liberty pursuant to the contract was excessive. The fact that he still calculates a bonus based on cost savings when he alleges the claims were overpaid by somewhere between $18,621,866 and $19,616,151 is certainly remarkable. He alludes to that in his commentary that if he measured performance beyond December 31, 2003 there maybe a penalty assessed to Liberty instead of a bonus. This comment is beyond the scope of the contract terms and is unsupported. The calculation of a bonus or penalty was certainly subject to reasonable determination during the term of the bonus measurement period.

Second, he alleges, with the assistance of Mr. Davenport and Willis Risk Services, NA, that Republic was damaged by having to set aside excess reserves and their capital was impaired. Not only do they claim a 1% of excess reserve Letter of Credit (LOC) Fee, but they also calculate excess interest at an assumed borrowing rate of 5% on workers' compensation reserves shown on their balance sheet for which no borrowings were required. This appears to be a double counting of the implied costs on an amount that is still the subject of a reasonable controversy between the parties and the subject of this lawsuit. There is no evidence that Republic set aside funds or borrowed funds for these reserves. If funds were voluntarily set aside, there would have been no prohibition from investing these funds to earn interest. These reserves are merely an accounting determination of potential future workers' compensation costs based on known claims and cases outstanding at a particular point in time.

Additionally, as I will show in the body of my report, neither Snoddy nor Davenport saw fit to analyze the Republic Service, Inc. financial statements. Had they looked at the financial statements at or around the contract periods, they would have seen that Republic had ample cash, they had $964,500,000 of net income for 1999 through 2003, they repurchased $484,300,00 of their own stock on the open market, they spent

$1,334,500,000 on new acquisitions and $1,283,600,000 on new equipment during the same five years. This does not look like a company that had to make choices between setting aside funds to secure workers' compensation claims and all of the other things that they found a way to accomplish in the same time frame. This alleged damage of $3,280,320 is speculative, ill conceived, lacks any relationship to the company's financial statements and is unsupported in either actual costs incurred or potentially avoided costs had the claims actually been determined to be overstated in the amounts alleged by Snoddy et al. If additional costs were incurred, they were incurred at the option of management as one of the many courses of action and elective spending they undertook during the same time period.

It is our opinion that Republic's experts have lost sight of their responsibility to be detached and independent and have become advocates for Republic by failing to exercise reasonable judgment and fairness in their claims analysis and as a result, their report grossly overstates damages by wholesale disallowance of damages actually paid or incurred by Liberty on Republic's behalf, based on technicalities in the claims files as opposed to being based on reasonableness and substantial compliance by Liberty. In addition, their selection process was statistically flawed and should not be the basis for extrapolation to the population of claims files reviewed. Their sample was not randomly selected, but was, to some extent, hand picked by Republic and they later attempted to sanitize the sample by having a statistician waive his wand over their sample.

We reserve the right to supplement this report as additional facts become available or to submit a rebuttal.

Very truly yours,

Ray, Foley, Hensley & Company, PLLC

Marc T. Ray, CPA-ABV

3

## STATEMENT OF FACTS

It is our general understanding that the nature of the controversy between the parties relates to a contractual dispute surrounding the performance of workers' compensation case management services by Liberty Mutual Insurance Company, et al (hereinafter "Liberty") for Republic in accordance with the procedures and terms set forth in their contract.   Republic alleges Liberty's performance caused damages approximating $22,398,579 to $23,392,864.   The controversy relates to such services performed in connection with 7,744 claims over a three year period.

The contract periods involved policy years from July 1, 1998 through June 30, 2001. The contracts called for Liberty to provide insurance coverage for workers' compensation claims and claims administration services in approximately 21 jurisdictions.  This plan had high deductibles based on $500,000 per individual claim in all three policy years, plus aggregate limitations of $12,500,000 to Republic in the first year, $19,000,000 in the second year and no aggregate limit in the third year.

## ANALYSIS PERFORMED

We read the reports of Republic's experts (Snoddy, Ballard, Davenport and Levan).  As accountants, we are not opining as to the validity, reasonableness, adequacy and fairness of amounts paid to workers and medical service providers on behalf of allegedly injured workers.  We are commenting on the report of alleged damages, how it was formulated and the damages computed, whether the calculations were based on scientific methods and inquiry and whether the experts have drawn appropriate conclusions supported by the facts and other evidence presented. Mr. Snoddy basically served as the clearinghouse for the various experts and scribe for the group to set forth their collaborative assessment[1] of damages.

Claims Damages Analysis
Mr. Snoddy, his employees and associates, and Mr. Ballard claim to have reviewed first 2, then 125, then 187 files, which were selected by Dr. Levan, resulting in 292 paper claim files and related electronic claims processing files being reviewed from a pool of 746 files initially selected by Republic. The entire population of 7,744 claims files were first sliced into two groups.  The group of 746 files selected by Republic to be reviewed[2] and the second group of all of the rest of the 7,744 files (6,998 files) which included 607

---

[1] See Mr. Snoddy's report, page 4, last paragraph, wherein he implies that each file was evaluated by his firm and Mr. Ballard and they reached a determination on the outcome of each claim and the cost to Republic since each file was "...collaboratively assessed." In my reading of this phrase, I assume he means that he (Mr. Snoddy) assisted in the file review and the determination of appropriateness of the claims paid. I believe that to be beyond the scope of his training and expertise, if true.  It is quite impossible for Mr. Ballard to "collaboratively" assess the file content with himself and I therefore assumed Mr. Snoddy meant that he and his firm participated in this collaborative process.

[2] See Snoddy's report, page 4, second full paragraph, "[f]rom *Republic's identification* of the 746 claim files to be reviewed,..." *emphasis added*.

files closed without a single dollar of cost for damages or medical costs being expended.[3] To start your sample selection with the "problem"[4] files identified by the client, but failing to include in your sample a random selection of all files gives you only a selection of the problem files and files over $7,500 selected by Republic.

The review process was performed in a very strict adherence to the claims adjusting procedures as enumerated in Ballard's report. According to Mr. Ballard, failure resulted, very often, in either 100% disallowance of the expenses paid and incurred by Liberty on Republic's behalf or substantial disallowance (assumed to be 90% or greater disallowance). We have prepared two exhibits which reflect this harsh evaluation of damages performed on both the 187 claim file sample and the 292 claim file sample. The magnitude of the disallowance of all or substantially all of the incurred expenses, as reflected in the attached exhibits are summarized in the table below:

### CLAIMS THAT WERE ESSENTIALLY DISALLOWED IN FULL

|                  | Number | Amount Disallowed | Total Incurred | %      |
|------------------|--------|-------------------|----------------|--------|
| 187 Claim Sample | 38     | $6,650,673.22     | $6,697,017.61  | 99.31% |
| 292 Claim Sample | 69     | $9,645,039.77     | $9,733,182.44  | 99.09% |

Of the 187 claim files examined, 38, or 20.31% of the claims were 99.31% disallowed. In the 292 claim file sample, 69, or 23.63% of the claims were 99.09% disallowed. These wholesale disallowances included an individual case where over $1,400,000 had been expended on a claim that was 100% disallowed by Snoddy and Ballard. Even the most reasonable of employers would surely have had something to say about a case where $1,400,000 is being expended for workers' compensation benefits for a single employee before three years had elapsed. To now claim 100% disallowance or an excess claim, seems a little too late and somewhat unreasonable.

Of the 187 claim files examined (see Exhibit 1), 95 had no claimed excess charges. Of the cases where excess claim costs paid are alleged (92 claims), the amount of the alleged excess is $10,580,682.82 out of $14,940,002.74 in claims, or 70.82% disallowed. This includes the 38 cases that were nearly 100% disallowed totaling $6,650,673.22 of the $10,580,682.82. This is a very high amount and percentage for these very high cost claims. A simple average claim amount is $162,391.33 on 92 claims with $14,940,002.74 in payments that Republic now alleges were overpaid by $10,580,682.82. This alleged error rate is extraordinary and one wonders why Republic had not raised these issues as the costs were being incurred. Obviously, the criteria for claims disallowance is far too harsh and the damage amounts alleged are grossly overstated.

Similar results are reflected in Exhibit 2, the 292 claim sample. Of the 292 cases, 128 (or 43.84%) had no adjustments proposed. The remaining 164 claims represented $15,701,510.12 of claimed excess charges on total expenditures on these claims of

---

[3] See Snoddy's report, Tab D, Schedule entitled Summary of Losses Valued as of 5/31/05, 4th Column. Number of Claims Closed Without Payment,

[4] See the last sentence in the first paragraph on page 5 of Snoddy's report, "…identified by Republic to Liberty as having some potential *problems*.", *emphasis added*.

$22,438,388.30. This represents a 69.98% error rate on these claims, including the 69 claims that were 99.09% disallowed based on the harsh claim file review criteria employed by Mr. Ballard. This is essentially a checklist claims review that ignores the employer's primary obligation for paying these claims and attempts to shift the burden to the insurer, based on checklist failures without determining causation or specific monetary damages. Obviously, the criteria is too strict, fairness and reasonableness have been tossed out by these experts and substantial compliance is "non compliance" in their damage claim analysis.

Republic's experts were so focused on a checklist compliance audit that they failed to determine whether or not performance or non performance of a particular step actually resulted in monetary damages to Republic. The skipped the critical element of determining a causal link between non performance or failure to perform a step in a timely manner actually resulted in harm. They did not appear to consider whether a particular step was rendered meaningless due to a prior determination of responsibility for a particular case based on the facts known to the claims processor at an earlier point in time. Steps skipped on a checklist do not prove a causal relationship to damages and do not convert bona fide workers' compensation costs and expenses into damages due from Liberty. Instead of determining such a causal link, they preferred to arbitrarily disallow medical costs and workers' compensation benefits in their entirety or costs incurred after a certain point in time determined by a collaborative assessment of Republic's experts.

In our opinion these damage estimates are outrageous and speculative and should be disregarded.

Statistical Sample
As an accountant, I have performed auditing in the past. Frequently, when we audit balance sheet accounts or income statement accounts, we select a sample such that we end up with a substantial portion of the account balance in our sample stratification. This is a technique employed by auditors who are vouching transactions to prove a particular balance. When we are auditing to see if procedures are being properly followed, the amount or magnitude of the particular transactions or the sum of the transactions in the entire sample are irrelevant. We want a random sample of all transactions, large and small, to see if the employees are following proper procedure and to determine whether or not we can rely on the procedures to determine sample size for vouching transactions.

In the case of the sample selection by Republic and utilized by their experts, they failed to select samples from 90% of the population by selecting only transactions $7,500 or greater (746 claims out of 7,744). This might be a good sample for testing the balance in an account on the financial statements, but may be a flawed sample for evaluating procedural compliance.

As mentioned before, the sample of 746 claim files out of population of 7,744 was selected by Republic. These were labeled as problem files or comprised a large percentage of the more significant damage claims. The sample was not random. Clearly,

607 files with no costs expended for claims were excluded from the random selection process. The experts are extrapolating the results of the so called "problem" files to the entire sample of 746 claims. They have reviewed, at best, 292 of 7,744 files, or 3.77% of the population.

Taking a statistically relevant sample of a non random file subset of a larger group cannot legitimize or create randomness of the hand selected sample. At best we may have a sample of a non random selection. Any further suggestion that the sample selection is a random sample of the entire population of the 7,744 claims files is improper and should not be allowed to remain in Mr. Snoddy's report.

Error Rate

The error rate calculated by Mr. Snoddy and Mr. Ballard in their analysis of Strata 1, 2 and 3 sample selections is based on very narrowly defined disallowance criteria. To assume that Liberty is solely responsible for all costs incurred on 38 of 187 files or 69 of 292 files that represent either $6,650,673.22 or $9,645,039.77 of excess claims paid would be extraordinarily rare. It would certainly seem to be unreasonable to disallow 100% of costs of this many claims without assuming that there was at least substantial compliance by Liberty and that these charges were valid. It appears that these wholesale disallowances have skewed the error rate inappropriately. To assume that because a certain entry was not made in a file in a timely manner shifts 100% of the burden of Republic's workers' compensation liability to Liberty as a claims administrator is ridiculous and so preposterous as to invalidate the entire findings of the experts in our opinion.

Certainly a very large percentage of the disallowed expenses were expended for real medical costs and workers' compensation benefits and were incurred for the real employees of Republic. If Republic wishes to be compensated for actual damages, if any, they should calculate them, not extrapolate them based on strict objective criteria exercised without judgment or reasonableness on the part of their experts. Clerks can prepare checklists and look for errors. An expert is employed to exercise professional judgment, applied in a detached and disinterested manner, seeking the truth and the right answer, not as an advocate for his client. In our opinion, an error rate calculated without the exercise of proper professional judgment should be disregarded and not utilized to extrapolate further damages from claim files not reviewed by the experts.

Other Costs

Mr. Snoddy's report reflects other costs which are in fact the fees paid to Liberty for excess liability coverage, claims handling charges, fees for services, etc... He fails to allege that these costs were in fact additional damages other than in the context that they may be included in the damages alleged in connection with their claims disallowed analysis.

Bonus Damages

Mr. Snoddy's report reflects damages for the excess performance based bonus previously paid to Liberty. He states that it should be $394,195, not the $890,588 previously paid,

or $496,393 of alleged damages. He goes on to allude to the fact that if he looked out beyond the contract measurement period ending December 31, 2005, he might suggest that Liberty owes the maximum penalty of $110,625 back to Republic for a damage amount of $1,001,213 ($890,588 plus $110,625 = $1,001,213). This comment is beyond the scope of the contract terms.

It is somewhat remarkable that Mr. Snoddy still finds Liberty to be entitled to a bonus of $394,195 when he also alleges they overpaid claims totally $18,621,866 to $19,616,151.

Impairment of Capital and Excess Reserve Requirements
Mr. Snoddy's report includes a calculation of damages for capital impairment, prepared with the assistance of Mr. Davenport and Willis Risk Services, NA. It does not appear that either Mr. Snoddy or Mr. Davenport looked at any of Republic's annual reports. We have looked at the financial statements reflecting activity for 1999 through 2003.

Those financial statements reflect the following activity for that five year period:

| | |
|---|---|
| Net Income | $964,500,000 |
| Cash Balances | From a low of $2,000,000 at yearend to $141,500,000 |
| Amounts Expended for | |
|     Acquisitions | $1,334,500,000 |
|     Assets Purchases | $1,283,600,000 |
| Interest Expense of | $64,200,000 to $81,600,000 on an annual basis[5] |
| Treasury Stock Acquired | $484,300,000 over the five year term |

This company has spent nearly one-half of a billion dollars buying back its own stock on the open market. It has spent in excess of $2.6 billion dollars on acquisitions and fixed asset additions. This does not look like a company suffering from $3,280,320 of capital impairment damages. Mr. Snoddy and company have not identified actual capital impairment damages associated solely with Liberty's claims handling process from 1998 through 2001. Clearly, Republic had adequate access to capital to make elective purchase of new companies, new assets and their own stock in excess of $3 billion dollars in the five year period of 1999 through 2003.

Republic's impairment of capital calculation assumes a 5% borrowing cost on alleged excess reserves reflected on their balance sheet. The fact that reserves are reflected on a balance sheet does not establish that Republic actually borrowed funds in the amount of these reserves. In addition, there is no accounting requirement that Republic set aside funds to compensate for these expected future costs reflected in these reserve balances. Even if Republic chose to set aside funds, as opposed to utilizing a LOC to back up the expected future claims (at a 1% fee not 5%), there is no prohibition against investing those funds in an interest bearing account. There is no showing that even if funds had been set aside to fund excess claims and they were later determined to be surplus funds, that Republic would have used these excess funds to reduce or avoid debt.

---

[5] The annual amounts have been generally declining since 2000. They were $64.2 in 1999, $81.6 in 2000, $80.1 in 2001, $77.0 in 2002 and $78.0 in 2003.

Additionally, the calculation of impairment to Republic's capital by their experts adds interest cost at 5% and LOC fees at 1% on approximately $54,672,000 of cumulative annual estimated loss of capital calculations ($54,672,000 x 6% = $3,280,320).  Mr. Snoddy's report reflects the entire outlay under the Liberty insurance program for Republic at $54,100,000.  It is somewhat anomalous that the alleged impairment to capital of $54,672,000 caused by the allegedly $19,000,000 of excess costs exceeds the entire outlay for three years worth of workers' compensation coverage pegged by these same experts at $54,100,000.

The proper calculation of costs incurred could be the interest expense incurred that could have been avoided[6] had excess claims, if any, not been incurred and that Liberty was at fault for these excess claims being incurred.  Or, in the alternative, the cost of excessive Letter of Credit Fees incurred by Republic to back up excess damage claims paid, if any.  Snoddy has employed a variation of both of these damages by adding Letter of Credit Fees to 5% imputed interest on capital impairment amounts.  In our opinion this is duplicative and improper.

The impairment of capital calculation appears to be a disguised method of calculating prejudgment interest.  If Republic can prove it is entitled to recover alleged excessive claims costs, then the Court can decide whether or not prejudgment interest is appropriate in this case.

The damage claim of $3,280,320 is unsupported, speculative and lacks any connection to the actual financial operating results and financial condition of Republic and should be disregarded.

## CONCLUSIONS

- The damages alleged by Republic, through its experts, are grossly overstated, based upon a flawed selection sample and bad extrapolation to the total sample selected by Republic.  They failed to use professional judgment, but rather disallowed claims in their entirety, if found to be deficient in any technical way, as opposed to using reasonableness and finding substantial compliance by Liberty where it existed.  They also failed to establish a causal link between steps on a checklist and actual monetary damages.  We believe their damage claim should be disregarded; and

- The damages for impairment to Republic's capital are double counted and are based on grossly overstated damages.  They are speculative and are not tied to the relevant facts clearly evident in the Republic financial statements.  They should be disallowed in total.  Costs incurred by Republic, if any, for impairment of its capital, were as a result of elective spending choices they made, in lieu of providing an actual cash reserve for legally mandated workers' compensation.

---

[6] The "avoided cost method" would calculate damages based on interest that was incurred that could have been avoided had the excess claims, if any, not been incurred.  Also, you would have to show that Republic would have used the excess funds, if any, to reduce debt.

9

Also, if the Court finds no excess claims were paid, the impairment argument is moot.

## ASSUMPTIONS AND LIMITING CONDITIONS

This report is subject to the assumptions and limiting conditions as presented below. It was prepared for the limited purpose of assisting counsel with an analysis of damages, if any, in connection with the administration of a Workers' Compensation program by Liberty for Republic.

We have no responsibility to update this report for changes in economic conditions or for any other reason. We reserve the right to supplement this report prior to trial if additional information pertinent to this case comes to our attention. This report was prepared by Marc T. Ray, CPA-ABV. Neither Marc Ray, nor the other members or employees of Ray, Foley, Hensley & Company, PLLC have any present or contemplated future interest in the outcome of this litigation, any personal interest with respect to the parties involved, or any other interest that might prevent us from performing an unbiased analysis of damages in this case. Our compensation is not contingent upon an action or event resulting from the analyses, opinions, or conclusions in, or the use of, this report.

1. Information, estimates, and opinions contained in this report were obtained from sources considered to be reliable. However, we assume no liability for such sources. We obtained all of our financial data, various reports, depositions and analyses through counsel. We have not audited or reviewed such financial data and therefore express no form of opinion with respect to the financial data. Copies of all such documents are either contained in our files or are referenced in this report and were returned to counsel.

2. We have accepted the financial data received from counsel without modification by us. We do not express any opinion with respect to the financial data supplied to us for this report.

3. Possession of this report, or a copy of it in whole or in part, does not carry with it the right of publication of all or part of it, nor may it be used for any purpose by anyone but the client without the previous written consent of the client or us and, in any event, only with proper attribution.

4. We may be required to give testimony in court, or be in attendance during any hearings or depositions, with reference to this report. However, we will require that arrangements are made as to the availability of our personnel and that satisfactory compensation has been agreed to in advance.

5. The various estimates of damages, income, expenses and losses, if any, presented in this report apply only to this report and the calculation of damages, if any, and may not be used out of the context presented herein. This report is valid only for the purposes specified herein.

6. The report contemplates facts and conditions existing as of the date of this report. Events and conditions arising after that date have not been considered to the extent they were either unknown or unforeseen and could not have been reasonably contemplated at that time. We have no obligation to update our report

for such events and conditions whether or not they subsequently come to our attention.

7. Our compensation is based on our hourly rate of $200 per hour.

## SOURCES OF INFORMATION RELIED UPON IN CONNECTION WITH THIS REPORT

We have analyzed and relied upon the following financial data and sources of information in determining our final reported conclusions:

1. Annual reports for Republic for 2000, 2001, 2002 and 2003.
2. The expert reports and attached exhibits of Mr. Snoddy, Mr. Davenport, Mr. Ballard and Dr. Levan.
3. Verified Complaint filed in Jessamine Circuit Court in this matter.

We have not performed individual claims file reviews nor have we seen, discussed or been provided copies of the other expert reports prepared by others for Liberty in this case.

## STATEMENT OF QUALIFICATIONS

Marc T. Ray is a certified public accountant engaged in the practice of accounting since May, 1976. He is a member of the AICPA and the Kentucky Society of Certified Public Accountants. He received his Bachelor of Business Administration, Accounting Option, from Morehead State University in May 1975. He was certified in Kentucky in September 1978. He received the Accredited Business Valuation (ABV) Certification from the AICPA after passing their uniform examination in November 1998. He was a tax partner with Coopers & Lybrand from October, 1986 through January, 1994. Prior to that, he was a tax manager for Coopers & Lybrand from January, 1982 to September, 1986. He began his career in public accounting with Coopers & Lybrand in May, 1976.

Mr. Ray has testified in state, probate and federal court on several occasions regarding valuation issues relating to stock appraisals, contract disputes, lost profits, minority shareholder issues, lost earnings in connection with wrongful death and wrongful termination and business valuations. He has performed several business valuations in connection with divorce proceedings, commercial transactions and litigation, and in connection with IRS tax matters.

## CERTIFICATIONS

We certify that, to the best of our knowledge and belief:

1. The statements of fact in this report are true and correct.
2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, unbiased professional analyses, opinions, and conclusions.
3. No one provided significant professional assistance to the person signing this report.

# CURRICULUM VITAE - MARC T. RAY, CPA-ABV

## Education
Morehead State University, May 1975, BBA, Accounting Option.

## Work Experience
Morehead State University, January 1975 - July 1975, Systems Programmer-Analyst.
Coopers & Lybrand, May 1976 - December, 1978, Staff accountant through January 1977, Tax staff accountant through December 1978.
Parker Seal Group, Parker-Hannifin Corporation, January 1979 - February 1980, Seal Group
Financial Analyst, responsible for consolidations accounting for multi-divisional manufacturing group, acquisitions analysis, tax planning for executives, transfer packages for sales personnel, group budgeting and forecasts, and general assistance to the Seal Group Controller.
Allen, Horton, Arvin & King, CPA's, March 1980 - December 1981, Tax partner and managing partner of local accounting firm in Mt. Sterling, Kentucky.
Coopers & Lybrand, January 1982 - January 1994, Tax Manager-in-Charge January 1982 - September 1986, Tax Partner-in-Charge of the Lexington Office Tax Department October 1986 - January 1994. Responsible for all tax work performed in the Lexington Office, as well as, key engagements including:
> Lexmark International, Inc., Banc One Lexington, NA, First Security National Bank & Trust Company, Jannock, Inc. (formerly U.S. Brick, Inc. and domestic subsidiaries, a subsidiary of a Canadian public company), General Energy Corporation, Stanford Energy Company, Phoenix Fuel Co., Inc., special tax consulting for Costain Coal Company, special tax consulting for USX Corporation including expert testimony before the Kentucky Board of Tax Appeals, pretrial work for Bailey Mining Company, expert testimony on NewEra Resources, Inc. v. Maryland Coal & Coke et al., acquisition work for Ethyl Corporation, and various valuation projects.

Ray, Hager & Henderson, PSC, February 1994 – October 31, 2004, founder and president of public accounting and consulting firm.
Ray, Foley, Hensley & Company, PLLC, November 1, 2004 to present, founder and managing member of public accounting and consulting firm.

## Professional Credentials and Accomplishments
Certified Public Accountant, September, 1978; Member of the AICPA; Member of the Kentucky Society of CPA's; Past President of the Lexington Estate Planning Council; Founding Member of the Lexington Tax Forum, Past Member of the University of Kentucky Masters of Tax Curriculum Advisory Committee, Past Member of the Sayre School Planned Giving Committee; Current Member of the Planned Giving Advisory Board for Midway College; Past Instructor on Coal Taxation for the North Texas State University Professional Development Institute; Frequent Instructor for Local and National Tax Courses on corporate distributions and liquidations, partnership taxation, sales tax, individual taxation and multistate corporate taxation for Coopers & Lybrand

and Dean of the National Tax Associate School for Coopers & Lybrand in 1987. Accredited Business Valuation (ABV) designation earned 1998, by the American Institute of Certified Public Accountants, certificate number 755. Past Member of the AICPA ABV Review Course Task Force.

## Deposition and Expert Witness Testimony

Shawnee Technology, Inc. v. Kathy Brown, Fayette Circuit Court, Division II, Civil Action No. 03-CI-5040, Dissenter's rights action for fair value, expert rebuttal report on valuation. Deposition taken October 2005. Trial testimony in March and April 2006, Magistrate hearing.

Barry Johns v. U S Bank, Pikeville Circuit Court. Lost business opportunity damages from public disclosure of private banking transactions in connection with the purchase and lease of a building. Report and trial testimony.

Kentucky Educational Supplies, LLC v. Educator's Delight, Inc. et al., United States Bankruptcy Court for the Eastern District of Kentucky, Lexington Division. Defending a claim for fraud based on alleged overstatement of revenue in connection with the sale of business assets. Expert report.

Foodtown Supermarkets of Kentucky, Inc. v. Park Hills Center Partnership, Ltd., Commonwealth of Kentucky, Fayette Circuit Court, No. 04-CI-1388. Financial condition of prospective replacement tenant versus landlord's opinion of prospective tenant's financial condition and suitability to assume Plaintiff's lease obligation.

Robert D. Oldham and Arnold G. Pessin v. Dueling Grounds Entertainment Corporation, et. al., Commonwealth of Kentucky, Simpson Circuit Court, Civil Action No. 97-CI-0084. Expert opinion on stock value in a shareholder suit against the promoters of a race track and gaming establishment. September 2004.

Keller Rigging & Construction SC, Inc. and Southern States Fabrication, Inc. v. Bridgestone/Firestone North American Tire, L.L.C., United States District Court Middle District of Tennessee, Nashville Division. Lost profits and failure to pay balances due in connection with contract interference and delay damages in a machinery rigging contract on the construction of a tire plant in Aiken, SC. Expert report and deposition testimony.

Nash Academy et al. v. PetsMart, Inc., Lost profits in connection with a breach of a dog grooming school training contract. United States District Court, Eastern District of Kentucky at Lexington. Expert report, deposition testimony, Daubert hearing and trial testimony.

A&S Coal v. Diamond May Coal Corporation, Lost profits report in connection with contract interference and wrongful termination, Perry Circuit Court, Deposition testimony.

13

<u>R. Geoff Layne and Charles Johnson, Jr. vs. Bank One,</u>  Expert report on damages associated with a delayed sale of collateral.  Deposition taken 8/21/02.

<u>Dixon v. Dixon,</u> Divorce valuation and deposition testimony closely held tax preparation business and bookkeeping practice.  Deposition taken 4/17/02.

<u>Estate of David Wayne Price vs. Pezzi et. al.,</u> Trial testimony regarding damages for wrongful death.  Fayette Circuit Court, November 2001.

**<u>Publications -  - None</u>**

Republic v. Liberty
Analysis of Claims - 187 Claims Analyzed
Damages Claimed Due as a Percent of Total Incurred

| | Claim Number | Name | Damages Claimed | Total Incurred | % to Total | Limited to $500k | Allowed per Snoddy | % Allowed |
|---|---|---|---|---|---|---|---|---|
| 1 | 555525331 | Muckenfuss | $ 1,414,668.00 | $ 1,414,668.00 | 100.00% | $ 500,000.00 | $ - | 0.00% |
| 2 | 390077010 | Toles | $ 363,637.49 | $ 730,609.00 | 49.77% | $ 133,028.49 | $ 386,971.51 | 50.23% |
| 3 | 648148569 | Aquillar | $ 313,040.71 | $ 721,360.00 | 43.40% | $ 91,680.71 | $ 408,319.29 | 56.60% |
| 4 | 608261027 | Armen | $ 559,821.00 | $ 568,934.00 | 98.40% | $ 490,887.00 | $ 9,113.00 | 1.60% |
| 5 | 555258420 | Hicks | $ 545,933.00 | $ 545,933.00 | 100.00% | $ 500,000.00 | $ - | 0.00% |
| 6 | 555265663 | Warner | $ 253,401.00 | $ 511,109.00 | 49.58% | $ 242,292.18 | $ 257,708.00 | 50.42% |
| 7 | 949420963 | Followell | $ 224,028.89 | $ 419,276.00 | 53.43% | $ 224,028.89 | $ 195,247.11 | 46.57% |
| 8 | 555258415 | Brown | $ 409,713.00 | $ 409,713.00 | 100.00% | $ 409,713.00 | $ - | 0.00% |
| 9 | 390063342 | Weltkamp | $ 160,022.00 | $ 405,932.00 | 39.42% | $ 160,022.00 | $ 245,910.00 | 60.58% |
| 10 | 648149079 | Deleon | $ 396,160.00 | $ 396,160.00 | 100.00% | $ 396,160.00 | $ - | 0.00% |
| 11 | 390043695 | Winter | $ 151,301.51 | $ 365,610.00 | 41.38% | $ 151,301.51 | $ 214,308.49 | 58.62% |
| 12 | 555243447 | Delalic | $ 349,424.11 | $ 350,055.00 | 99.82% | $ 349,424.11 | $ 630.89 | 0.18% |
| 13 | 648148610 | Aldaco | $ 160,048.60 | $ 337,802.00 | 47.38% | $ 160,048.60 | $ 177,753.40 | 52.62% |
| 14 | 555261054 | Aponte | $ 214,361.49 | $ 337,436.00 | 63.53% | $ 214,361.49 | $ 123,074.51 | 36.47% |
| 15 | 555270848 | Patterson | $ 317,082.07 | $ 319,783.00 | 99.16% | $ 317,082.07 | $ 2,700.93 | 0.84% |
| 16 | 555310586 | Gibson | $ 97,890.15 | $ 317,039.00 | 30.88% | $ 97,890.15 | $ 219,148.85 | 69.12% |
| 17 | 555265913 | Johnson | $ 82,495.24 | $ 300,573.14 | 27.45% | $ 82,495.24 | $ 218,077.90 | 72.55% |
| 18 | 648148611 | Reyes | $ 298,786.00 | $ 298,786.00 | 100.00% | $ 298,786.00 | $ - | 0.00% |
| 19 | 555550429 | Beck | $ 279,627.00 | $ 280,002.00 | 99.87% | $ 279,627.00 | $ 375.00 | 0.13% |
| 20 | 555281624 | Pate | $ 271,688.65 | $ 273,275.00 | 99.42% | $ 271,688.65 | $ 1,586.35 | 0.58% |
| 21 | 648147085 | Diaz | $ 157,446.93 | $ 270,503.00 | 58.21% | $ 157,446.93 | $ 113,056.07 | 41.79% |
| 22 | 471710041 | Leaman | $ 142,579.70 | $ 261,368.00 | 54.55% | $ 142,579.70 | $ 118,788.30 | 45.45% |
| 23 | 648148805 | Pena | $ 240,024.00 | $ 259,007.00 | 92.67% | $ 240,024.00 | $ 18,983.00 | 7.33% |
| 23 | 23 of 37 with Claimed Excess Costs * | | $ 7,403,180.54 | $ 10,094,933.14 | 73.34% | $ 5,910,567.72 | $ 2,691,752.60 | 26.66% |
| 14 | Balance of 37 with no Claimed Excess | | $ - | $ 8,412,803.48 | 0.00% | $ - | $ 8,412,803.30 | 100.00% |
| 37 | Strata 1 Totals | | $ 7,403,180.54 | $ 18,507,736.62 | 40.00% | $ 5,910,567.72 | $ 11,104,555.90 | 60.00% |
| 1 | 555247050 | Manzella | $ 103,348.74 | $ 218,973.04 | 47.20% | $ 103,348.74 | $ 115,624.30 | 52.80% |
| 2 | 949529381 | Compton | $ 192,060.00 | $ 192,060.00 | 100.00% | $ 192,060.00 | $ - | 0.00% |
| 3 | 390022826 | Eachus | $ 98,743.92 | $ 174,185.32 | 56.69% | $ 98,743.92 | $ 75,441.40 | 43.31% |
| 4 | 949424780 | Parks | $ 128,478.28 | $ 164,372.00 | 78.16% | $ 128,478.28 | $ 35,893.72 | 21.84% |
| 5 | 205121024 | Castillo | $ 129,923.94 | $ 154,625.00 | 84.03% | $ 129,923.94 | $ 24,701.06 | 15.97% |
| 6 | 949505041 | Moore | $ 102,744.43 | $ 153,019.00 | 67.14% | $ 102,744.43 | $ 50,274.57 | 32.86% |
| 7 | 555286911 | Cohns | $ 102,436.35 | $ 150,097.00 | 68.25% | $ 102,436.35 | $ 47,660.65 | 31.75% |
| 8 | 390049310 | Carson | $ 35,685.96 | $ 148,181.00 | 24.08% | $ 35,685.96 | $ 112,495.04 | 75.92% |
| 9 | 205119617 | Sullivan | $ 111,264.79 | $ 147,335.00 | 75.52% | $ 111,264.79 | $ 36,070.21 | 24.48% |
| 10 | 555284419 | Perry | $ 23,787.98 | $ 140,298.00 | 16.96% | $ 23,787.98 | $ 116,510.02 | 83.04% |
| 11 | 555246526 | Ordaz | $ 115,453.20 | $ 118,300.00 | 97.59% | $ 115,453.20 | $ 2,846.80 | 2.41% |

Exhibit 1

Republic v. Liberty
Analysis of Claims - 187 Claims Analyzed
Damages Claimed Due as a Percent of Total Incurred

| | Claim Number | Name | Damages Claimed | Total Incurred | % to Total | Limited to $500k | Allowed per Snoddy | % Allowed |
|---|---|---|---|---|---|---|---|---|
| 12 | 390074525 | Hubbard | $ 117,233.00 | $ 117,233.00 | 100.00% | $ 117,233.00 | $ - | 0.00% |
| 13 | 648147482 | Sordia | $ 116,014.00 | $ 116,014.00 | 100.00% | $ 116,014.00 | $ - | 0.00% |
| 14 | 390043331 | Dey | $ 104,787.00 | $ 114,215.00 | 97.57% | $ 104,787.00 | $ 9,428.00 | 8.25% |
| 15 | 413539068 | Palumbo | $ 31,496.44 | $ 106,756.63 | 29.50% | $ 31,496.44 | $ 75,260.19 | 70.50% |
| 16 | 390043599 | Hatcher | $ 87,576.80 | $ 100,617.13 | 87.04% | $ 87,576.80 | $ 13,040.33 | 12.96% |
| 17 | 471455464 | Harris | $ 66,105.66 | $ 98,393.73 | 67.18% | $ 66,105.66 | $ 32,288.07 | 32.82% |
| 18 | 608203462 | Magana | $ 97,076.40 | $ 97,076.40 | 100.00% | $ 97,076.40 | $ - | 0.00% |
| 19 | 555289082 | Jackson | $ 12,791.19 | $ 96,915.00 | 13.20% | $ 12,791.19 | $ 84,123.81 | 86.80% |
| 20 | 648147630 | Huipio | $ 40,843.50 | $ 93,378.00 | 43.74% | $ 40,843.50 | $ 52,534.50 | 56.26% |
| 21 | 390062717 | Vought | $ 78,531.52 | $ 92,756.00 | 84.66% | $ 78,531.52 | $ 14,224.48 | 15.34% |
| 22 | 205120058 | Wiest | $ 1,800.00 | $ 89,927.00 | 2.00% | $ 1,800.00 | $ 88,127.00 | 98.00% |
| 23 | 555246947 | Wilson | $ 19.70 | $ 87,949.87 | 0.02% | $ 19.70 | $ 87,930.17 | 99.98% |
| 24 | 608198503 | Tabarez | $ 3,000.00 | $ 84,064.02 | 3.57% | $ 3,000.00 | $ 81,064.02 | 96.43% |
| 25 | 555265220 | Green | $ 70,404.97 | $ 83,104.43 | 84.72% | $ 70,404.97 | $ 12,699.46 | 15.28% |
| 26 | 648148613 | Martinez | $ 82,751.00 | $ 82,751.00 | 100.00% | $ 82,751.00 | $ - | 0.00% |
| 27 | 949449479 | Gowans | $ 76,442.63 | $ 76,442.63 | 100.00% | $ 76,442.63 | $ - | 0.00% |
| 28 | 555571995 | Screen | $ 75,461.00 | $ 75,461.00 | 100.00% | $ 75,461.00 | $ - | 0.00% |
| 29 | 390106976 | Gunter | $ 72,118.00 | $ 72,118.00 | 100.00% | $ 72,118.00 | $ - | 0.00% |
| 30 | 555240123 | Desir | $ 71,199.77 | $ 71,199.77 | 100.00% | $ 71,199.77 | $ - | 0.00% |
| 31 | 555297232 | Gunning | $ 6,258.88 | $ 70,925.23 | 8.82% | $ 6,258.88 | $ 64,666.35 | 91.18% |
| 32 | 205121620 | Roth | $ 61,389.68 | $ 68,519.00 | 89.60% | $ 61,389.68 | $ 7,129.32 | 10.40% |
| 33 | 471468689 | Allen | $ 4,000.00 | $ 63,363.62 | 6.31% | $ 4,000.00 | $ 59,363.62 | 93.69% |
| 34 | 949468030 | Sanchez | $ 46,093.05 | $ 62,806.05 | 73.39% | $ 46,093.05 | $ 16,713.00 | 26.61% |
| 35 | 665058109 | Silvaz | $ 60,995.14 | $ 60,995.14 | 100.00% | $ 60,995.14 | $ - | 0.00% |
| 36 | 390037682 | Pares | $ 44,361.35 | $ 55,924.51 | 79.32% | $ 44,361.35 | $ 11,563.16 | 20.68% |
| 37 | 205154406 | Bullers | $ 342.65 | $ 52,905.00 | 0.65% | $ 342.65 | $ 52,562.35 | 99.35% |
| 38 | 555555767 | Joseph | $ 50,645.09 | $ 50,645.09 | 100.00% | $ 50,645.09 | $ - | 0.00% |
| 39 | 555246606 | Edge | $ 49,549.69 | $ 49,549.69 | 100.00% | $ 49,549.69 | $ - | 0.00% |
| 40 | 555243354 | Loroy | $ 9,025.70 | $ 47,991.82 | 18.81% | $ 9,025.70 | $ 38,966.12 | 81.19% |
| 41 | 390184253 | Woodard | $ 46,236.61 | $ 46,236.61 | 100.00% | $ 46,236.61 | $ - | 0.00% |
| 42 | 555527149 | DeJesus | $ 27,775.00 | $ 44,022.17 | 63.09% | $ 27,775.00 | $ 16,247.17 | 36.91% |
| 43 | 555246529 | Harrell | $ 8,542.06 | $ 43,147.86 | 19.80% | $ 8,542.06 | $ 34,605.80 | 80.20% |
| 44 | 555544126 | Grant | $ 8,499.59 | $ 41,547.62 | 20.46% | $ 8,499.59 | $ 33,048.03 | 79.54% |
| 45 | 390203232 | Schuller | $ 39,757.40 | $ 39,757.40 | 100.00% | $ 39,757.40 | $ - | 0.00% |
| 46 | 555246630 | Wells | $ 29,100.41 | $ 39,415.00 | 73.83% | $ 29,100.41 | $ 10,314.59 | 26.17% |
| 47 | 413565161 | Pickett | $ 29,675.90 | $ 36,777.62 | 80.69% | $ 29,675.90 | $ 7,101.72 | 19.31% |
| 48 | 608197982 | Alvord | $ 36,355.63 | $ 36,355.63 | 100.00% | $ 36,355.63 | $ - | 0.00% |
| 49 | 648148836 | Hernandez | $ 35,540.00 | $ 35,540.00 | 100.00% | $ 35,540.00 | $ - | 0.00% |
| 50 | 390037180 | Spisso | $ 19,280.21 | $ 31,988.00 | 60.27% | $ 19,280.21 | $ 12,707.79 | 39.73% |

Exhibit 1

Page 2 of 3

Republic v. Liberty
Analysis of Claims - 187 Claims Analyzed
Damages Claimed Due as a Percent of Total Incurred

| | Claim Number | Name | Damages Claimed | Total Incurred | % to Total | Limited to $500k | Allowed per Snoddy | % Allowed |
|---|---|---|---|---|---|---|---|---|
| 51 | 55526104? | Boykin | $ 6,914.59 | $ 30,859.65 | 22.41% | $ 6,914.59 | $ 23,945.06 | 77.59% |
| 52 | 55524140? | Garcia | $ 18,012.34 | $ 30,078.60 | 59.88% | $ 18,012.34 | $ 12,066.26 | 40.12% |
| 53 | 471731340 | Nonnenmacher | $ 1,350.00 | $ 29,531.07 | 4.57% | $ 1,350.00 | $ 28,181.07 | 95.43% |
| 54 | 471498284 | Campbell | $ 29,470.00 | $ 29,470.00 | 100.00% | $ 29,470.00 | $ - | 0.00% |
| 55 | 55531162? | Weston | $ 19,011.08 | $ 28,851.00 | 65.89% | $ 19,011.08 | $ 9,839.92 | 34.11% |
| 56 | 55524652? | Beaver | $ 6,886.35 | $ 28,316.91 | 24.32% | $ 6,886.35 | $ 21,430.56 | 75.68% |
| 57 | 555552105 | Miller | $ 4,464.00 | $ 28,082.35 | 17.12% | $ 4,464.00 | $ 21,618.35 | 82.88% |
| 57 | 57 of 100 with Claimed Excess Costs ** | | $ 3,049,112.57 | $ 4,699,420.61 | 64.88% | $ 3,049,112.57 | $ 1,650,308.04 | 35.12% |
| 43 | 43 of 100 with no Claimed Excess Costs | | $ - | $ 2,748,514.66 | 0.00% | $ - | $ 2,748,514.66 | 100.00% |
| 100 | Strata 2 Totals | | $ 3,049,112.57 | $ 7,447,935.27 | 40.94% | $ 3,049,112.57 | $ 4,398,822.70 | 59.06% |
| 12 | Strata 3 with Damages Claimed *** 8=100% | | $ 128,389.71 | $ 145,648.99 | 88.15% | $ 128,389.71 | $ 17,259.28 | 11.85% |
| 38 | Strata 3 with No Claimed Damages | | $ - | $ 571,720.36 | 0.00% | $ - | $ 571,720.36 | 100.00% |
| 50 | Strata 3 Totals | | $ 128,389.71 | $ 717,369.35 | 17.90% | $ 128,389.71 | $ 588,979.64 | 82.10% |
| 92 | Total All with Claimed Damages | | $ 10,580,682.82 | $ 14,940,002.74 | 70.82% | $ 9,088,070.00 | $ 4,359,319.92 | 29.18% |
| 95 | Total All with No Claimed Damages | | $ - | $ 11,733,038.50 | 0.00% | $ - | $ 11,733,038.32 | 100.00% |
| 187 | Grand Total | | $ 10,580,682.82 | $ 26,673,041.24 | 39.67% | $ 9,088,070.00 | $ 16,092,358.24 | 60.33% |
| | **Zero or Near Zero Allowed** | | | | | | | |
| 30 | Strata 1 and 2 | 30 of 137 | $ 6,552,072.39 | $ 6,597,736.36 | 99.31% | $ 5,522,537.39 | $ 45,663.97 | 0.69% |
| 8 | Strata 3 | 8 of 50 | $ 98,600.83 | $ 99,281.25 | 99.31% | $ 99,281.25 | $ 680.42 | 0.69% |
| | 20.32% were nearly 100% | | | | | | | |
| 38 | Disallowed | 38 of 187 | $ 6,650,673.22 | $ 6,697,017.61 | 99.31% | $ 5,621,818.64 | $ 46,344.39 | 0.69% |

* - 11 of 23 Strata 1 Claims were 100% or substantially 100% disallowed by the analysis of the Plaintiff's experts.
These are cases in excess of $250,000 of incurred costs and Snoddy et al say they were 100% disallowed years after the fact.
** - 19 of 57 were 100% or nearly 100% disallowed
*** - 8 of 12 were 100% or nearly 100% disallowed.
38 of 92 with claimed damages were 100% or nearly 100% disallowed.

Exhibit 1

Page 3 of 3

Republic v. Liberty
Analysis of Claims - 292 Claims Analyzed
Damages Claimed Due as a Percent of Total Incurred

| | Claim Number | Name | Damages Claimed | Total Incurred | % to Total | Limited to $500k | Allowed per Snoddy | % Allowed |
|---|---|---|---|---|---|---|---|---|
| 1 | 555525331 | Muckenfuss | $ 1,414,668.00 | $ 1,414,668.00 | 100.00% | $ 500,000.00 | $ - | 0.00% |
| 2 | 390077010 | Toles | $ 363,637.49 | $ 730,609.00 | 49.77% | $ 133,028.49 | $ 366,971.51 | 50.23% |
| 3 | 648148569 | Aquilar | $ 313,040.71 | $ 721,360.00 | 43.40% | $ 91,680.71 | $ 408,319.29 | 56.60% |
| 4 | 608261027 | Armen | $ 559,821.00 | $ 568,934.00 | 98.40% | $ 480,887.00 | $ 9,113.00 | 1.60% |
| 5 | 555258420 | Hicks | $ 545,933.00 | $ 545,933.00 | 100.00% | $ 500,000.00 | $ - | 0.00% |
| 6 | 555265663 | Warner | $ 253,401.00 | $ 511,109.00 | 49.58% | $ 242,292.18 | $ 257,708.00 | 50.42% |
| 7 | 949420963 | Followell | $ 224,028.89 | $ 419,276.00 | 53.43% | $ 224,028.89 | $ 195,247.11 | 46.57% |
| 8 | 555258415 | Brown | $ 409,713.00 | $ 409,713.00 | 100.00% | $ 409,713.00 | $ - | 0.00% |
| 9 | 390063342 | Welkamp | $ 160,022.00 | $ 405,932.00 | 39.42% | $ 160,022.00 | $ 245,910.00 | 60.58% |
| 10 | 648149079 | Deleon | $ 396,160.00 | $ 396,160.00 | 100.00% | $ 396,160.00 | $ - | 0.00% |
| 11 | 390043695 | Winter | $ 365,610.00 | $ 365,610.00 | 100.00% | $ 151,301.51 | $ 214,308.49 | 58.62% |
| 12 | 555243447 | Delalic | $ 349,424.11 | $ 350,055.00 | 99.82% | $ 349,424.11 | $ 630.89 | 0.18% |
| 13 | 648148610 | Aldaco | $ 160,048.60 | $ 337,802.00 | 47.38% | $ 160,048.60 | $ 177,753.40 | 52.62% |
| 14 | 555261054 | Aponte | $ 214,361.49 | $ 337,436.00 | 63.53% | $ 214,361.49 | $ 123,074.51 | 36.47% |
| 15 | 555270848 | Patterson | $ 317,082.07 | $ 319,783.00 | 99.16% | $ 317,082.07 | $ 2,700.93 | 0.84% |
| 16 | 555310586 | Gibson | $ 97,890.15 | $ 317,039.00 | 30.88% | $ 97,890.15 | $ 219,148.85 | 69.12% |
| 17 | 555265913 | Johnson | $ 82,495.24 | $ 300,573.14 | 27.45% | $ 82,495.24 | $ 218,077.90 | 72.55% |
| 18 | 648148611 | Reyes | $ 298,786.00 | $ 298,786.00 | 100.00% | $ 298,786.00 | $ - | 0.00% |
| 19 | 555550429 | Beck | $ 279,627.00 | $ 280,002.00 | 99.87% | $ 279,627.00 | $ 375.00 | 0.13% |
| 20 | 555281624 | Pate | $ 271,688.65 | $ 273,275.00 | 99.42% | $ 271,688.65 | $ 1,586.35 | 0.58% |
| 21 | 648147085 | Diaz | $ 157,446.93 | $ 270,503.00 | 58.21% | $ 157,446.93 | $ 113,056.07 | 41.79% |
| 22 | 471710041 | Leaman | $ 142,579.70 | $ 261,368.00 | 54.55% | $ 142,579.70 | $ 118,788.30 | 45.45% |
| 23 | 648148805 | Pena | $ 240,024.00 | $ 259,007.00 | 92.67% | $ 240,024.00 | $ 18,983.00 | 7.33% |
| 23 | 23 of 37 with Claimed Excess Costs * | | $ 7,403,180.54 | $ 10,094,933.14 | 73.34% | $ 5,910,567.72 | $ 2,691,752.60 | 26.66% |
| 14 | Balance of 37 with no Claimed Excess | | | $ 8,412,803.48 | 3.00% | | $ 8,412,803.30 | 100.00% |
| 37 | Strata 1 Totals | | $ 7,403,180.54 | $ 18,507,736.62 | 40.00% | $ 5,910,567.72 | $ 11,104,555.90 | 60.00% |
| 1 | 555247050 | Manzella | $ 103,348.74 | $ 218,973.04 | 47.20% | $ 103,348.74 | $ 115,624.30 | 52.80% |
| 2 | 949529381 | Compton | $ 192,060.00 | $ 192,060.00 | 100.00% | $ 192,060.00 | $ - | 100.00% |
| 3 | 390022826 | Eachus | $ 98,743.92 | $ 174,185.32 | 56.69% | $ 98,743.92 | $ 75,441.40 | 43.31% |
| 4 | 949424780 | Parks | $ 128,478.28 | $ 164,372.00 | 78.16% | $ 128,478.28 | $ 35,893.72 | 21.84% |
| 5 | 205121024 | Castillo | $ 129,923.94 | $ 154,625.00 | 84.03% | $ 129,923.94 | $ 24,701.06 | 15.97% |
| 6 | 949505041 | Moore | $ 102,744.43 | $ 153,019.00 | 67.14% | $ 102,744.43 | $ 50,274.57 | 32.86% |
| 7 | 555286911 | Cohns | $ 102,436.35 | $ 150,097.00 | 68.25% | $ 102,436.35 | $ 47,660.65 | 31.75% |
| 8 | 390049310 | Carson | $ 35,685.96 | $ 148,181.00 | 24.08% | $ 35,685.96 | $ 112,495.04 | 75.92% |
| 9 | 205119617 | Sullivan | $ 111,264.79 | $ 147,335.00 | 75.52% | $ 111,264.79 | $ 36,070.21 | 24.48% |
| 10 | 555284419 | Perry | $ 23,787.98 | $ 140,298.00 | 16.96% | $ 23,787.98 | $ 116,510.02 | 83.04% |
| 11 | 555246526 | Ordaz | $ 115,453.20 | $ 118,300.00 | 97.59% | $ 115,453.20 | $ 2,846.80 | 2.41% |
| 12 | 390074525 | Hubbard | $ 117,233.00 | $ 117,233.00 | 100.00% | $ 117,233.00 | $ - | 0.00% |
| 13 | 648147482 | Sordia | $ 116,014.00 | $ 116,014.00 | 100.00% | $ 116,014.00 | $ - | 0.00% |
| 14 | 390043331 | Dey | $ 104,787.00 | $ 114,215.00 | 91.75% | $ 104,787.00 | $ 9,428.00 | 8.25% |

Exhibit 2

Republic v. Liberty
Analysis of Claims - 292 Claims Analyzed
Damages Claimed Due as a Percent of Total Incurred

| | Claim Number | Name | Damages Claimed | Total Incurred | % to Total | Limited to $500k | Allowed per Snoddy | % Allowed |
|---|---|---|---|---|---|---|---|---|
| 15 | 413539068 | Palumbo | $ 31,496.44 | $ 106,756.63 | 29.50% | $ 31,496.44 | $ 75,260.19 | 70.50% |
| 16 | 390043599 | Hatcher | $ 87,576.80 | $ 100,617.13 | 87.04% | $ 87,576.80 | $ 13,040.33 | 12.96% |
| 17 | 471455464 | Harris | $ 66,105.66 | $ 98,393.73 | 67.18% | $ 66,105.66 | $ 32,288.07 | 32.82% |
| 18 | 608203462 | Magana | $ 97,076.40 | $ 97,076.40 | 100.00% | $ 97,076.40 | - | 0.00% |
| 19 | 555289082 | Jackson | $ 12,791.19 | $ 96,915.00 | 13.20% | $ 12,791.19 | $ 84,123.81 | 86.80% |
| 20 | 648147630 | Huipio | $ 40,843.50 | $ 93,378.00 | 43.74% | $ 40,843.50 | $ 52,534.50 | 56.26% |
| 21 | 390082717 | Vought | $ 78,531.52 | $ 92,756.00 | 84.66% | $ 78,531.52 | $ 14,224.48 | 15.34% |
| 22 | 205120058 | Wiest | $ 1,800.00 | $ 89,927.00 | 2.00% | $ 1,800.00 | $ 88,127.00 | 98.00% |
| 23 | 555246947 | Wilson | $ 19.70 | $ 87,949.87 | 0.02% | $ 19.70 | $ 87,930.17 | 99.98% |
| 24 | 608198503 | Tabarez | $ 3,000.00 | $ 84,064.02 | 3.57% | $ 3,000.00 | $ 81,064.02 | 96.43% |
| 25 | 555265220 | Green | $ 70,404.97 | $ 83,104.43 | 84.72% | $ 70,404.97 | $ 12,699.46 | 15.28% |
| 26 | 648148613 | Martinez | $ 82,751.00 | $ 82,751.00 | 100.00% | $ 82,751.00 | - | 0.00% |
| 27 | 949449479 | Gowans | $ 76,442.63 | $ 76,442.63 | 100.00% | $ 76,442.63 | - | 0.00% |
| 28 | 555571995 | Screen | $ 75,461.00 | $ 75,461.00 | 100.00% | $ 75,461.00 | - | 0.00% |
| 29 | 390106976 | Gunter | $ 72,118.00 | $ 72,118.00 | 100.00% | $ 72,118.00 | - | 0.00% |
| 30 | 555240123 | Desir | $ 71,199.77 | $ 71,199.77 | 100.00% | $ 71,199.77 | - | 0.00% |
| 31 | 555237232 | Gunning | $ 6,258.88 | $ 70,925.23 | 8.82% | $ 6,258.88 | $ 64,666.35 | 91.18% |
| 32 | 205121620 | Roth | $ 61,389.68 | $ 68,519.00 | 89.60% | $ 61,389.68 | $ 7,129.32 | 10.40% |
| 33 | 471468689 | Allen | $ 4,000.00 | $ 63,363.62 | 6.31% | $ 4,000.00 | $ 59,363.62 | 93.69% |
| 34 | 949468030 | Sanchez | $ 46,093.05 | $ 62,806.05 | 73.39% | $ 46,093.05 | $ 16,713.00 | 26.61% |
| 35 | 665058109 | Silvaz | $ 60,995.14 | $ 60,995.14 | 100.00% | $ 60,995.14 | - | 0.00% |
| 36 | 390037682 | Pares | $ 44,361.35 | $ 55,924.51 | 79.32% | $ 44,361.35 | $ 11,563.16 | 20.68% |
| 37 | 205154406 | Butlers | $ 342.65 | $ 52,905.00 | 0.65% | $ 342.65 | $ 52,562.35 | 99.35% |
| 38 | 555555767 | Joseph | $ 50,645.09 | $ 50,645.09 | 100.00% | $ 50,645.09 | - | 0.00% |
| 39 | 555246606 | Edge | $ 49,549.69 | $ 49,549.69 | 100.00% | $ 49,549.69 | - | 0.00% |
| 40 | 555243354 | Loroy | $ 9,025.70 | $ 47,991.82 | 18.81% | $ 9,025.70 | $ 38,966.12 | 81.19% |
| 41 | 390184253 | Woodard | $ 46,236.61 | $ 46,236.61 | 100.00% | $ 46,236.61 | - | 0.00% |
| 42 | 555527149 | DeJesus | $ 27,775.00 | $ 44,022.17 | 63.09% | $ 27,775.00 | $ 16,247.17 | 36.91% |
| 43 | 555246529 | Harrell | $ 8,542.06 | $ 43,147.86 | 19.80% | $ 8,542.06 | $ 34,605.80 | 80.20% |
| 44 | 555544126 | Grant | $ 8,499.59 | $ 41,547.62 | 20.46% | $ 8,499.59 | $ 33,048.03 | 79.54% |
| 45 | 390203232 | Schuller | $ 39,757.40 | $ 39,757.40 | 100.00% | $ 39,757.40 | - | 0.00% |
| 46 | 555246630 | Wells | $ 29,100.41 | $ 39,415.00 | 73.83% | $ 29,100.41 | $ 10,314.59 | 26.17% |
| 47 | 413566161 | Pickett | $ 29,675.90 | $ 36,777.62 | 80.69% | $ 29,675.90 | $ 7,101.72 | 19.31% |
| 48 | 608197982 | Alvord | $ 36,355.63 | $ 36,355.63 | 100.00% | $ 36,355.63 | - | 0.00% |
| 49 | 648148836 | Hernandez | $ 35,540.00 | $ 35,540.00 | 100.00% | $ 35,540.00 | - | 0.00% |
| 50 | 390037180 | Spisso | $ 19,280.21 | $ 31,988.00 | 60.27% | $ 19,280.21 | $ 12,707.79 | 39.73% |
| 51 | 555261047 | Boykin | $ 6,914.59 | $ 30,859.65 | 22.41% | $ 6,914.59 | $ 23,945.06 | 77.59% |
| 52 | 555241400 | Garcia | $ 18,012.34 | $ 30,078.60 | 59.88% | $ 18,012.34 | $ 12,066.26 | 40.12% |
| 53 | 471731340 | Nonnenmacher | $ 1,350.00 | $ 29,531.07 | 4.57% | $ 1,350.00 | $ 28,181.07 | 95.43% |
| 54 | 471498284 | Campbell | $ 29,470.00 | $ 29,470.00 | 100.00% | $ 29,470.00 | - | 0.00% |
| 55 | 555311628 | Weston | $ 19,011.08 | $ 28,851.00 | 65.89% | $ 19,011.08 | $ 9,839.92 | 34.11% |
| 56 | 555246521 | Beaver | $ 6,886.35 | $ 28,316.91 | 24.32% | $ 6,886.35 | $ 21,430.56 | 75.68% |

Exhibit 2

Republic v. Liberty
Analysis of Claims - 292 Claims Analyzed
Damages Claimed Due as a Percent of Total Incurred

Page 3 of 4

| | Claim Number | Name | Damages Claimed | Total Incurred | % to Total | Limited to $500k | Allowed per Snoddy | % Allowed |
|---|---|---|---|---|---|---|---|---|
| 57 | 555552105 | Miller | $ 4,464.00 | $ 26,082.35 | 17.12% | $ 4,464.00 | $ 21,618.35 | 82.88% |
| 58 | 390062012 | Lubraggie | $ 237,973.01 | $ 237,973.01 | 100.00% | $ 237,973.01 | $ - | 0.00% |
| 59 | 390044130 | Howard | $ 88,424.24 | $ 218,074.00 | 40.55% | $ 88,424.24 | $ 129,649.76 | 59.45% |
| 60 | 648148787 | Monreal | $ 52,115.95 | $ 214,996.00 | 24.24% | $ 52,115.95 | $ 162,880.05 | 75.76% |
| 61 | 471461140 | McGaughey | $ 53,719.12 | $ 211,873.00 | 25.35% | $ 53,719.12 | $ 158,153.88 | 74.65% |
| 62 | 390054855 | Banks | $ 189,739.00 | $ 208,593.00 | 90.96% | $ 189,739.00 | $ 18,854.00 | 9.04% |
| 63 | 949401309 | Ledesma | $ 207,734.00 | $ 207,734.00 | 100.00% | $ 207,734.00 | $ - | 0.00% |
| 64 | 390037691 | Pergolese | $ 205,265.00 | $ 205,265.00 | 100.00% | $ 205,265.00 | $ - | 0.00% |
| 65 | 471480771 | Godsey | $ 204,703.39 | $ 204,703.39 | 100.00% | $ 204,703.39 | $ - | 0.00% |
| 66 | 555554330 | Jones | $ 196,541.00 | $ 196,541.00 | 100.00% | $ 196,541.00 | $ - | 0.00% |
| 67 | 648148841 | Galvan | $ 193,424.00 | $ 193,424.00 | 100.00% | $ 193,424.00 | $ - | 0.00% |
| 68 | 648147642 | Marquez | $ 166,982.17 | $ 185,301.00 | 90.11% | $ 166,982.17 | $ 18,318.83 | 9.89% |
| 69 | 390022745 | Keller | $ 101,520.91 | $ 182,685.60 | 55.57% | $ 101,520.91 | $ 81,164.69 | 44.43% |
| 70 | 390037009 | Heisel | $ 56,058.06 | $ 182,582.00 | 30.70% | $ 56,058.06 | $ 126,523.94 | 69.30% |
| 71 | 471443235 | Lyons | $ 143,364.14 | $ 168,573.00 | 85.05% | $ 143,364.14 | $ 25,208.86 | 14.95% |
| 72 | 390024268 | Green | $ 67,293.86 | $ 162,336.00 | 41.45% | $ 67,293.86 | $ 95,042.14 | 58.55% |
| 73 | 555246683 | Daniels | $ 73,634.24 | $ 155,955.00 | 47.22% | $ 73,634.24 | $ 82,320.76 | 52.78% |
| 74 | 555243446 | Coffey | $ 97,361.19 | $ 155,842.00 | 62.47% | $ 97,361.19 | $ 58,480.81 | 37.53% |
| 75 | 555563103 | Boyd | $ 59,691.12 | $ 154,952.00 | 38.52% | $ 59,691.12 | $ 95,260.88 | 61.48% |
| 76 | 555246416 | Garcia | $ 68,998.64 | $ 152,778.73 | 45.16% | $ 68,998.64 | $ 83,780.09 | 54.84% |
| 77 | 390119952 | Moncado | $ 148,390.00 | $ 148,390.00 | 100.00% | $ 148,390.00 | $ - | 0.00% |
| 78 | 648147640 | Ramirez | $ 146,659.00 | $ 146,659.00 | 100.00% | $ 146,659.00 | $ - | 0.00% |
| 79 | 390037173 | Klose | $ 53,175.35 | $ 144,609.00 | 36.77% | $ 53,175.35 | $ 91,433.65 | 63.23% |
| 80 | 471773327 | Lockner | $ 85,922.34 | $ 143,150.00 | 60.02% | $ 85,922.34 | $ 57,227.66 | 39.98% |
| 81 | 55299237 | Gann | $ 57,255.90 | $ 140,815.00 | 40.66% | $ 57,255.90 | $ 83,559.10 | 59.34% |
| 82 | 949480204 | Acosta | $ 40,631.22 | $ 140,801.00 | 28.86% | $ 40,631.22 | $ 100,169.78 | 71.14% |
| 83 | 471473193 | Micer | $ 136,401.00 | $ 136,401.00 | 100.00% | $ 136,401.00 | $ - | 0.00% |
| 84 | 949471378 | Marsh | $ 70,114.65 | $ 132,756.00 | 52.81% | $ 70,114.65 | $ 62,641.35 | 47.19% |
| 85 | 205121614 | Flanagan | $ 100,543.27 | $ 129,247.00 | 77.79% | $ 100,543.27 | $ 28,703.73 | 22.21% |
| 86 | 648147656 | Aquilino | $ 126,369.00 | $ 126,369.00 | 100.00% | $ 126,369.00 | $ - | 0.00% |
| 87 | 205125800 | Miranda | $ 118,416.00 | $ 118,416.00 | 100.00% | $ 118,416.00 | $ - | 0.00% |
| 88 | 949477755 | Gamboa | $ 70,981.29 | $ 115,771.40 | 61.31% | $ 70,981.29 | $ 44,790.11 | 38.69% |
| 89 | 555271050 | Biggins | $ 25,821.04 | $ 114,115.95 | 22.63% | $ 25,821.04 | $ 88,294.91 | 77.37% |
| 90 | 555246528 | Day | $ 27,890.45 | $ 112,759.00 | 24.73% | $ 27,890.45 | $ 84,868.55 | 75.27% |
| 91 | 949493105 | Bragg | $ 95,558.68 | $ 110,956.00 | 86.12% | $ 95,558.68 | $ 15,397.32 | 13.88% |
| 92 | 390109340 | Gonzalez | $ 33,616.96 | $ 107,425.17 | 31.29% | $ 33,616.96 | $ 73,808.21 | 68.71% |
| 93 | 390104061 | Bailey | $ 81,379.52 | $ 106,226.01 | 76.61% | $ 81,379.52 | $ 24,846.49 | 23.39% |
| 94 | 205133677 | Harris | $ 14,633.28 | $ 102,488.00 | 14.28% | $ 14,633.28 | $ 87,854.72 | 85.72% |
| 95 | 413547700 | Taylor | $ 53,370.77 | $ 101,482.00 | 52.59% | $ 53,370.77 | $ 48,111.23 | 47.41% |
| 96 | 390043330 | Brutus | $ 82,922.79 | $ 95,943.00 | 86.43% | $ 82,922.79 | $ 13,020.21 | 13.57% |
| 97 | 555522428 | Moody | $ 94,420.00 | $ 94,420.00 | 100.00% | $ 94,420.00 | $ - | 0.00% |
| 98 | 555246527 | Fullard | $ 77,673.16 | $ 92,855.06 | 83.65% | $ 77,673.16 | $ 15,181.90 | 16.35% |

Exhibit 2

Republic v. Liberty
Analysis of Claims - 292 Claims Analyzed
Damages Claimed Due as a Percent of Total Incurred

| Claim Number | Name | Damages Claimed | Total Incurred | % to Total | Limited to $500k | Allowed per Snoddy | % Allowed |
|---|---|---|---|---|---|---|---|
| 99 205148425 | McDonald | $ 46,446.00 | 89,076.00 | 52.14% | $ 46,446.00 | 42,630.00 | 47.86% |
| 100 555585730 | Cheek | $ 84,279.47 | 88,752.00 | 94.96% | $ 84,279.47 | 4,472.53 | 5.04% |
| 101 390037172 | Heisel | $ 35,538.20 | 87,838.00 | 40.46% | $ 35,538.20 | 52,299.80 | 59.54% |
| 102 555279803 | Abers | $ 82,753.71 | 82,753.71 | 100.00% | $ 82,753.71 | - | 0.00% |
| 103 555261048 | Davis | $ 38,429.22 | 74,602.00 | 51.51% | $ 38,429.22 | 36,172.78 | 48.49% |
| 104 390022725 | Schell | $ 65,141.42 | 65,141.42 | 100.00% | $ 65,141.42 | - | 0.00% |
| 105 555243410 | Weston | $ 64,826.56 | 64,979.48 | 99.76% | $ 64,826.56 | 152.92 | 0.24% |
| 106 555246510 | McKinsey | $ 54,737.25 | 63,767.07 | 85.84% | $ 64,826.56 | 9,029.82 | 14.16% |
| 107 390090187 | Gardner | $ 17,567.13 | 63,113.71 | 27.83% | $ 17,567.13 | 45,546.58 | 72.17% |
| 108 555532078 | Blankenship | $ 31,550.40 | 57,328.00 | 55.03% | $ 31,550.40 | 25,777.60 | 44.97% |
| 109 555281692 | Anderson | $ 54,779.18 | 54,779.18 | 100.00% | $ 54,779.18 | - | 0.00% |
| 110 608198483 | Pena | $ 48,146.02 | 48,146.02 | 100.00% | $ 48,146.02 | - | 0.00% |
| 111 390022727 | Smeal | $ 46,647.05 | 46,647.05 | 100.00% | $ 46,647.05 | - | 0.00% |
| 112 555579517 | Bradley | $ 26,088.00 | 45,860.10 | 56.89% | $ 26,088.00 | 19,772.10 | 43.11% |
| 113 390066081 | Gardner | $ 4,239.48 | 41,719.29 | 10.16% | $ 4,239.48 | 37,479.81 | 89.84% |
| 114 555246748 | Ford | $ 32,215.81 | 32,215.81 | 100.00% | $ 32,215.81 | - | 0.00% |
| 115 555251925 | Gregory | $ 30,470.62 | 30,470.62 | 100.00% | $ 30,470.62 | - | 0.00% |
| 115 | 115 of 181 with Claimed Excess Costs ** | $ 8,019,656.80 | 11,998,846.39 | 66.84% | $ 8,019,656.80 | 3,979,189.59 | 33.16% |
| 66 | 66 of 181 with no Claimed Excess Costs | $ - | 5,382,654.69 | 0.00% | $ 8,019,656.80 | 5,382,654.69 | 100.00% |
| 181 | Strata 2 Totals | $ 8,019,656.80 | 17,381,501.08 | 46.14% | $ 8,019,656.80 | 9,361,844.28 | 53.86% |
| 26 | Strata 3 with Damages Claimed *** 16 =100% | $ 278,672.78 | 344,608.77 | 80.87% | $ 278,672.78 | 65,935.99 | 19.13% |
| 48 | Strata 3 with no Claimed Damages | $ - | 705,989.09 | 0.00% | $ - | 705,989.09 | 100.00% |
| 74 | Strata 3 Totals | $ 278,672.78 | 1,050,597.86 | 26.53% | $ 278,672.78 | 771,925.08 | 73.47% |
| 164 | Total All with Claimed Damages | $ 15,701,510.12 | 22,438,388.30 | 69.98% | $ 14,208,897.30 | 6,736,878.18 | 30.02% |
| 128 | Total All with no Claimed Damages | $ - | 14,501,447.26 | 0.00% | $ - | 14,501,447.08 | 100.00% |
| 292 | Grand Total | $ 15,701,510.12 | 36,939,835.56 | 42.51% | $ 14,208,897.30 | 21,238,325.26 | 57.49% |

**Zero or Near Zero Allowed**

| | | Damages Claimed | Total Incurred | % to Total | Limited to $500k | Allowed per Snoddy | % Allowed |
|---|---|---|---|---|---|---|---|
| 53 Strata 1 and 2 | 53 of 218 | $ 9,434,348.80 | 9,521,811.05 | 99.08% | $ 8,404,813.80 | 87,462.25 | 0.92% |
| 16 Strata 3 | 16 of 74 | $ 210,690.97 | 211,371.39 | 99.68% | $ 99,281.25 | 680.42 | 0.32% |
| 23.63% were nearly 100% | | | | | | | |
| 69 Disallowed | 69 of 292 | $ 9,645,039.77 | 9,733,182.44 | 99.09% | $ 8,504,095.05 | 88,142.67 | 0.91% |

* - 11 of 23 Strata 1 Claims were 100% or substantially 100% disallowed by the analysis of the Plaintiff's experts.
These are cases in excess of $250,000 of incurred costs and Snoddy et al say they were 100% disallowed years after the fact.
** - 42 of 115 were 100% or nearly 100% disallowed
*** - 16 of 26 were 100% or nearly 100% disallowed.
69 of 164 with claimed damages were 100% or nearly 100% disallowed.

Exhibit 2