# REPUBLIC SERVICES, INC.

## Vs

# LIBERTY MUTUAL INSURANCE COMPANY, et. al.

### REPORT OF FINDINGS

August 15, 2005

SNODDY CONSULTING, INC.

**SNODDY** *Consulting* INC

Timothy K. Snoddy, CPA, CVA, DABFA
Daniel L. Fulks, Ph.D., CPA
J. Gregory Bushong, Ph.D., CPA, CMA
Carl Fedde, CPA

*Litigation Support*  *Business Valuation*
*Forensic Accounting*  *Financial Consulting*

August 15, 2005

Mr. Robert E. Maclin, III
McBrayer, McGinnis, Leslie & Kirkland
201 East Main Street, Suite 1000
Lexington, KY 40507

Re: Republic Services, Inc. vs. Liberty Mutual Insurance Company, et. al.

Dear Mr. Maclin:

We have been engaged to review costs of the workers' compensation insurance program of Republic Services, Inc. (Republic) for the purposes of providing opinions of costs incurred by Republic as a result of handling and administration of workers' compensation claims by Liberty Mutual Insurance Company and other named defendants, referenced within the Complaint filed in this action collectively as the "Liberty Companies" and referenced to herein as "Liberty", which have resulted in damage to Republic related to three successive annual policy contracts for the periods July 1, 1998 through June 30, 2001. Accordingly, we have performed reviews of workers' compensation claims of employees of Republic and analysis of various factors associated therewith. Our findings and opinions are contained herein.

As will be addressed more fully herein, the findings presented with respect to workers' compensation claims are based on incurred costs as of November 25, 2003. At that date, 189 claims remained open which result in continuing costs to Republic. We will expect to provide a supplemental report detailing those additional costs and damages resulting from the ongoing claims administration by Liberty. Should additional information be subsequently provided which would impact our findings and opinions, we respectfully reserve the opportunity to consider such information and will advise you accordingly of any changes to the findings and opinions contained herein.

GENERAL BACKGROUND

Republic is a large waste management company with corporate offices in Fort Lauderdale, FL, having operations consisting of solid waste collection and disposal in numerous locations throughout twenty-two states with approximately 13,000 employees, at present.

KENTUCKY
501 Darby Creek Road, Suite 5
Lexington, KY 40509

NORTH CAROLINA
90 Patton Avenue, Suite 203
Asheville, NC 28801

FLORIDA
429 S.W. Camden Avenue
Stuart, FL 34994

1

The workers' compensation insurance program of Republic was maintained during the years at issue as a self-insured retention plan, whereby Republic directly pays for all costs incurred for claims and administration of such claims for its employees, as opposed to the purchase of insurance policies from organized insurance companies, in amounts up to established limits after which the retention amounts are covered by an insurance policy for the excess over such limits. These limits are:

|  | Dates | Individual Claim | Aggregate |
|---|---|---|---|
| Policy Year 1 | 7/1/98-6/30/99 | $500,000 | $12,500,000 |
| Policy Year 2 | 7/1/99-6/30/00 | $500,000 | $19,000,000 |
| Policy Year 3 | 7/1/00-6/30/01 | $500,000 | No limit |

The Republic worker compensation program is on an occurrence basis whereby any claim reported which occurred during any of the Policy Years would be covered and administered throughout the entire course of the claim until ultimate closure of the case.

Administration of this self-insured retention workers' compensation insurance program was contracted by Republic to Liberty, and certain other companies as named within the Complaint filed in this action, under three successive annual policy contracts ("Contracts") beginning July 1, 1998 through June 30, 2001. Pursuant to the referenced Contracts, Liberty was the agent and third party administrator (TPA) over the worker's compensation claims from Republic employees occurring within the three Policy Years. As the TPA for Republic, Liberty was and remains responsible for handling, administration, and management for all workers' compensation claims of Republic employees, in accordance with the respective three Contracts. In providing such administration services, Liberty was subject to standards of professional care as generally established within the industry, their own claims handling standards, policies and procedures, and further, as provided within the respective Contracts, including the "WC Claims Management Minimum Customer Requirements" and the "Special Service Instructions" (SSI), (collectively referred hereinafter as "Standards"). Using these Standards, Liberty, as TPA for Republic, was responsible for developing and implementing the course of action for each claim, including actions such as establishing compensability, payment for costs and benefits related to the claim, establishment of reserves, and various other activities. Handling of the claims were to be in a manner that would be in the best interest of Republic, including treatment of the Republic employees, fulfilling the statutory requirements of each respective state applicable to the claims, and in accordance with the generally accepted claims handling and administration procedures and agreed upon procedures.

During the three Contract periods approximately 7,740 workers' compensation claims were reported by Republic employees. As of November 25, 2003 these claims had resulted in a total incurred cost of approximately $54.1 million related directly to such claims. At the same date, there were 189 claim files that remained in "open" status representing approximately $31.2 million of the total incurred costs. Pursuant to the

respective Contracts, these open claims are continuing to be administered by Liberty. As of May 31, 2005 total incurred costs were $61.9 million with 126 claims remaining open.

As more fully described in the Complaint filed in this matter, Republic is seeking damages against Liberty (including all named Defendants) resulting from Liberty's handling, administration and management of the approximately 7,740 workers' compensation claims.

## SUMMARY OF OUR ANALYSIS

The focus of our analyses includes the several components of expenses and liabilities incurred by Republic including:

- Costs incurred for worker's compensation claims
- Fees and other amounts paid Liberty for administration/management
- Amounts paid Liberty identified as "bonus" (Policy Year 7/1/2000 – 6/30/2001)
- Costs incurred by Republic for impairment of capital resulting from excess reserves requirements

The processes employed in performing our analyses are detailed within the following. Our efforts were combined with other experts and personnel of Republic. These included extensive review of individual workers' compensation claim files, performed in conjunction with Thomas Ballard; reviews of outstanding reserves and loss computations in conjunction with Edgar Davenport of Willis Risk Solutions of North America, the actuarial company engaged by Republic; reviews of the three policy Contracts between Republic and Liberty and various documents related thereto.

## CLAIM FILE ANALYSIS

During the period of the three policy Contracts, approximately 7,740 claims were filed against the Republic worker's compensation plan. Of these 7,740 claims, Republic has total incurred costs of approximately $ 54.1 million as of November 25, 2003. Incurred costs include actual costs paid plus "reserves" representing estimated future costs for each respective claim.

For purposes of claim file reviews, Republic selected all workers' compensation claim files in "Open" status, and those "Closed" having a total incurred cost of $7,500 and greater, which consisted of 746 claims, as of November 25, 2003 (Exhibit A). These included 557 "Closed" files, indicating that the case had been completed and the files closed with no additional costs being incurred, and, 189 "Open" files representing those claims having ongoing activity with additional costs being incurred. Total costs incurred for the subject 746 claims, as of November 25, 2003, were approximately $52.2 million, of which $21.0 million was for the Closed files and $31.2 for Open files. Of the incurred

costs for Open files, $17.3 million had been paid with $13.9 in reserves. In total, through November 25, 2003, costs paid for these 746 claims were $38.3 million and $13.9 was in reserves.

As of May 31, 2005, there remain 126 claims in Open status for which the reserve amount is $14.1 million. Total costs paid through May 31, 2005 were $47.8 million, resulting in a total incurred cost of $61.9 million (Exhibit D).

From Republic's identification of the 746 claim files to be reviewed, Liberty was requested to provide "all files" related to each respective claim. In response, Liberty forwarded approximately 61 boxes of files to the office of its legal counsel in Lexington, Kentucky. These boxes and the documents contained therein are commonly referred to as the "paper claims files".

On January 5, 2004 the review process was begun of the paper claim files in the offices of Liberty legal counsel. Initial reviews of these paper claims files revealed that they were significantly lacking in documentation, most notably, claims handlers notes, documentation for expenses paid or incurred, and accounting records for tracking the accumulation of expenses incurred. It was subsequently determined that there were at least two electronic records maintained by Liberty for each claim file within which the detailed claim information is contained. Two primary electronic record-keeping systems used by Liberty were identified as "RISKTRAC" and "BOCOMP". Access to the RISKTRAC system in its electronic format was subsequently provided through David Spruance, Risk Manager of Republic. Access to the BOCOMP system and all information contained therein, was consistently denied until April, 2005, at which time we were provided three CD's containing approximately 40,000 pages of documents represented to be the claim files maintained in BOCOMP. In reviewing such documents, it was found that the information contained within BOCOMP appears to be duplicative of information contained within RISKTRAC, although not in an orderly form which virtually eliminated its usefulness for file review.

The process for claim file reviews was to include a detailed review of documents contained within the files as presented, paper claim files and electronic format, for each claim. The files were analyzed for documented evidence of handling and administration in accordance with the Standards by Mr. Ballard. From information contained within the files presented for each claim that the handling and administration was contrary to adherence with the Standards, and findings that documentation was lacking or nonexistent, determinations were made to establish points in time, events, or other occurrences where payments and further incurrence of costs to Republic were inappropriate and/or unwarranted. The impact of those determinations on the outcome of that claim, with the corresponding cost to Republic, was collaboratively assessed. With such assessments, incurred costs were analyzed to ascertain the amount which were determined to be "excess costs" (costs in excess of those which would have been incurred had the claims been handled in accordance with the Standards). Such resulting excess costs are set forth herein as damages to Republic.

On the first day of the file review process, two individual claim files were randomly selected from the paper claim files (D. West #555243410, Ford #555246748). This initial review of documents within the respective paper claim files revealed the appearance of significant handling and administration failures on the part of Liberty. Upon complete file review with RISKTRAC, it is our opinion that virtually the entire amount paid on both claims was in excess of what should have been paid. With these initial findings it was determined that approximately 125 claim files would be selected for the first phase of file reviews. The selection process was relatively random including both open and closed claim files, except the selected files did include certain specific ones which had been identified by Republic to Liberty as having some potential problem.

Upon completion of reviews of the initial selection of 125 files, it was our determination that substantial excess costs had been incurred by Republic as a result of Liberty's actions as TPA. Because the selection had not been purely random, the results could not be applied to the entire group of claims for determining the total damages as would be required under a statistically valid sampling approach. Therefore, the claims file review process continued which has resulted in a total of 292 claims being reviewed to date.

Statistical Sample

Recognizing the time consuming process for reviewing each remaining claim file Republic decided that a statistical sampling approach should be employed from which results obtained could be applied to the entire population of selected claims.

Republic engaged the services of an expert in statistics Dr. Mike LeVan (a professor and chairman of the Mathematics department at Transylvania University) to independently develop a statistical sample of files for review. With the wide ranging values (e.g., incurred costs) within the population of claims, it was proposed that the claims be segregated into strata which would dramatically improve the accuracy of results derived from sampling when applying those results to the entire population. The expectation is that strata can be determined by naturally occurring breaks with values and/or numbers within the population. From analysis of the population, it was determined that three strata would result in the optimal development of a statistical sample which are:

- Strata 1 - claims with incurred costs exceeding $250,000
- Strata 2 – claims with incurred costs between $25,000 and $250,000
- Strata 3 – claims with incurred costs less than $25,000

TOTAL

As explained by Dr. LeVan, the theories of statistics provide that typically a sample size of approximately 30 to 40 items from a population, selected randomly, will develop a statistically valid sample which can be projected to the population as a whole, within certain ranges of standard deviation and margin of error. Larger sample sizes will narrow the range of standard deviation and margin of error.

5

Due to the number of claims within Strata 1 a statistically valid sample could not be obtained, therefore this group was included for review in its entirety. Claims within Strata 2 represent the highest total of incurred costs. Therefore, in order to achieve greater reliability from the sample, the sample size of 100 was chosen for Strata 2. For claims within Strata 3, the sample size of 50 was established. This resulted in a total sample size of 187 claims for which Dr. LeVan randomly selected the individual claims to be included for review. The sample of 187 claims reviewed represent 25.07% of the total number and 51.04% of total incurred costs.

Each of these 187 individual claim files were reviewed using the process described above. Total excess costs for each Strata were accumulated then applied to total incurred costs within the sample to develop a percentage which is referred to as the "error rate". The error rate developed from the statistical sample could then be used to estimate the excess costs occurring within each Strata of the total population of selected claims.

A listing of the sample of 187 claims reviewed (Exhibit B) is summarized as follows:

|  | # of claims | Incurred costs | Excess costs | Percentage Excess to Incurred |
|---|---|---|---|---|
| Strata 1 | 37 | $18,507,737 | 5,910,568* | 31.94% |
| Strata 2 | 100 | 7,447,935 | 3,049,113 | 40.94% |
| Strata 3 | 50 | 717,369 | 128,390 | 17.90% |
| Total | 187 | $26,673,041 | 9,088,071 | |

* limited to $500,000 per claim, actual excess costs = $7,403,181

Since all claims within Strata 1 were reviewed, the excess costs determined represent the actual dollar amount of damages for that group of claims. Hence, the error rate was not applied to that Strata. Using the error rates developed from claims within the statistical sample for Strata 2 and 3, estimated damages occurring within the population of selected claims are as follows:

|  | Error Rate | Total Incurred Costs | Damages |
|---|---|---|---|
| Strata 1 | n/a | $18,507,737 | $5,910,568 |
| Strata 2 | 40.94% | 28,954,372 | 11,853,920 |
| Strata 3 | 17.90% | 4,789,822 | 857,378 |
| Total | | $52,251,931 | $18,621,866 |

With respect to Strata 1, it is recognized that the incurred costs of 11 claims exceed $500,000. As described herein, the Republic worker compensation insurance plan was based on a self-insured retention with a single claim limit of $500,000. Total incurred costs are maintained for all claims in their total amounts, even when such costs exceed the exposure to Republic. For purposes of establishing damages to Republic, with respect to those claims where we have determined the excess costs are greater than $500,000, the damage calculation has been limited to $500,000, which should represent the ultimate maximum exposure of Republic.

From the aforementioned 11 claims, there are 2 claims where actual costs paid exceed the $500,000 limit (as of November 25, 2003). Each of those 2 claims remains in Open status indicating that costs continue to be paid. It has also been determined that total amounts paid for Policy Year 1 (7/1/98 – 6/30/99) have exceeded the aggregate limit of $12.5 million by approximately $3.96 million (as of May 31, 2005 total paid is $16,455,675, Exhibit D). It is believed that the funding for those costs, although having exceeded the Republic retention limit, continues to be made by Liberty from Republic monies. Such amounts should be refunded to Republic in accordance with the terms of the policy Contracts. We have not made a full determination of all amounts due Republic under its self-insured retention limits and accordingly, have not included such amounts in our damage calculations presented herein.

All Files Reviewed

As described herein, a number of files were reviewed prior to the utilization of the statistical sampling method. In total, the course of file reviews included 292 claims, which incorporated the 187 from the statistical sample. This total of 292 claims (Exhibit C) represents total incurred costs of $36,939,836. From those 292 file reviews we have determined excess costs to be $14,208,897.

For purpose of comparison, following is segregation by Strata of the 292 claims reviewed.

|          | # Claims | Incurred Costs | Excess Costs |
|----------|----------|----------------|--------------|
| Strata 1 | 37       | $18,507,737    | $5,910,568   |
| Strata 2 | 181      | 17,381,501     | 8,019,656    |
| Strata 3 | 74       | 1,050,598      | 278,673      |
| Total    | 292      | $36,939,836    | $14,208,897  |

7

There remain 454 claims representing $15,312,095 total incurred costs that have not been subject to a detailed file review. Based on the results of our findings of excess costs within the 292 claims reviewed, it is reasonable to believe that there is some amount of excess costs contained within the remaining 454 claims that have not been reviewed. Such unknown amounts would be in addition to the amount of known excess costs from the 292 files. For purposes of reasonable estimation of the unknown amount we have based our calculations on the results obtained from the statistical sample, applying the error rate by respective strata to total incurred costs of the claims not reviewed, calculated as follows:

|  | Total | | Reviewed | | Not Reviewed | |
| --- | --- | --- | --- | --- | --- | --- |
|  | Claims | Amount | Claims | Amount | Claims | Amount |
| Strata 1 | 37 | $18,507,737 | 37 | $18,507,737 | -0- | -0- |
| Strata 2 | 367 | 28,954,372 | 181 | 17,381,501 | 186 | 11,572,871 |
| Strata 3 | 342 | 4,789,822 | 74 | 1,050,598 | 268 | 3,739,224 |
| Total | 746 | $52,251,931 | 292 | $36,939,836 | 454 | $15,312,095 |

|  | Incurred Costs not reviewed | Error Rate | Estimated Excess costs |
| --- | --- | --- | --- |
| Strata 2 | $11,572,871 | 40.94 % | $4,737,933 |
| Strata 3 | 3,739,224 | 17.90% | 669,321 |
| Total Estimated |  |  | 5,407,254 |
| Actual Damages from reviewed claims |  |  | 14,208,897 |
| Total Damages |  |  | $19,616,151 |

Conclusion

Having reviewed and analyzed the claim files as provided herein, it is our opinion that as a result of failure by Liberty to comply with the Standards in handling and administration of the workers compensation claims of Republic employees, that Republic has incurred costs in excess of amounts that were appropriate resulting in financial damages.

8

It is our opinion that the use of sampling is a reasonable, valid and acceptable method for estimating the values of a known population based on results obtained from a statistically valid sample. We have relied upon the sample of 187 claims for purposes of our file reviews. From these file reviews, excess costs (damages) specific to those 187 claims were established, which was converted into the error rates. These error rates were applied to the entire population of 746 claims having $52,251,931 total incurred costs which results in our opinion that estimated damages for costs of claims are **$18,621,866.**

Should a determination be made that would preclude the use of the statistical sampling method, it would be our opinion that damages can be determined using results from the total claims reviewed with an additional amount estimated for those claims not reviewed. As presented herein, our opinion of estimated damages for costs of claims with this method is **$19,616,151.**

## OTHER COSTS INCURRED BY REPUBLIC

In addition to the amounts discussed hereinabove for the actual direct costs for workers' compensation claims, there are a certain other significant costs incurred by Republic throughout the term of the three Contracts with Liberty, some of which are continuing.

### A. MONIES PAID TO LIBERTY

Each of the three respective annual policy Contracts provided for various fees and compensation to be paid to Liberty including the following:

- Annual Premium
- Claims Handling Charges
- Fees for various services

### Annual Premium

The estimated annual premiums for each of the Contracts was charged directly to Republic and paid in addition to the direct costs of claims. The amounts are:

| | |
|---|---|
| Year 1 | $ 772,352 |
| Year 2 | 1,957,723 |
| Year 3 | 1,939,730 |
| TOTAL | $4,669,805 |

9

## Claims Handling charges

Republic was directly charged for each claim made based on the following schedule for each year of the Contracts:

| Claim Type | Charge Per Claim |
|---|---|
| Indemnity | $1,250 |
| Medical | 95 |
| Record only | 45 |

For policy Contract Years 2 and 3 an estimated amount for the claims handling charges was included within the annual premium. Total fees paid Liberty for the claims handling charges for the three year period are calculated as follows:

| Claim Type | # Claims | Charge Per Claim | Total Charges |
|---|---|---|---|
| Indemnity | 2,586 | $ 1,250 | $3,232,500 |
| Medical | 5,131 | $    95 | 487,445 |
| Record only | 23 | $    45 | 1,035 |
| Total | 7,740 | | $3,720,980 |
| Less: Amounts included in Annual Premium | | | |
| -Year 2 | | | <792,445> |
| -Year 3 | | | <800,480> |
| Net | | | $2,128,055 |

## Fees for Services

Various fees were charged to Republic for Liberty services pursuant to and as outlined in the respective policy Contracts. These include items such as in-house legal counsel, managed care, and bill reviews. These charges are generally referred to as allocated expenses and included in the incurred costs of each respective workers' compensation claim. We have estimated the total amount paid to Liberty using charges identified for the 292 claims reviewed to be approximately $2.7 million, calculated as follows:

| | |
|---|---|
| Liberty charges identified (292 claims) | $ 1,988,500 |
| Incurred costs | 36,939,836 |
| Average ratio | .053831 |
| Total Incurred Costs | 52,251,931 |
| Estimated Liberty Charges | $ 2,812,774 |

10

Although the policy Contracts identified that Republic would be charged for the various fees, there is some question as to the reasonableness of certain of the fees. Concerns were communicated to Liberty about claims managers abandoning files by referring them to in-house legal staff for management which resulted in additional costs to Republic.

Bill review fees were charged to Republic based on "30% of the savings". In the course of our file reviews, we found that the Liberty charges for such bill reviews ranged from amounts as small as less than a dollar per medical provider bill to several thousand dollars. In certain instances we found that the Liberty bill review fee was significant in comparison to the amount paid the Provider. A few examples of large Liberty Bill Review charges are identified in the following with details provided in Exhibit G:

| Claim | | Date | Payment to Medical Provider | Liberty Bill Review Fee |
|---|---|---|---|---|
| Gamboa, J. | 949477755 | 1/27/03 | $ 6,889.68 | $4,465.64 |
| Moore, A. | 949505041 | 5/23/01 | $ 2,604.52 | $3,332.76 |
| Young, D. | 949505534 | 3/17/03 | $ 7,012.40 | $4,825.55 |
| Jones, M. | 555554330 | 3/30/01 | $ 7,601.00 | $9,564.89 |
| Limppo, B. | 390022747 | 4/4/00 | $ 4,145.94 | $3,323.18 |

Since the various fees for services were included within incurred costs for each respective claim, to the extent that an amount of excess costs was determined, certain of these fees have therefore been incorporated into the damage amount for claims.

Summary

In summary, the amount of monies paid to Liberty for the three respective policy Contracts, actual and estimated are:

| | |
|---|---|
| Estimated Annual Premium | $ 4,669,805 |
| Claims Handling Charges | 2,128,055 |
| Fees for Services | 2,812,774 |
| Total | $ 9,610,634 |

B. BONUS

The policy Contract for Year 3 (7/1/00 – 6/30/01) included a "Partnership Agreement" (Exhibit H). The stated objective of the Agreement was "To partner with Republic Services, Inc. to reduce total workers' compensation costs". This Agreement provided that Liberty would be subject to/entitled to a penalty/bonus based on projected ultimate paid losses. Any penalty/bonus was to be cumulative determined at three dates, 18, 30

and 42 months after the Agreement effective date (i.e., December 31, 2001, 2002, and 2003 respectively). The penalty was fixed at a maximum amount of $110,625. The bonus was "20% of the savings..." with no limit. An example provided within the terms of the Partnership Agreement however, used a bonus amount of $120,000.

At the end of the first calculation period, 18 months, Liberty provided their calculation which resulted in a bonus of $890,588. Despite disagreement of the amount by Republic, the full amount was paid to Liberty. There has been no evidence provided that penalty/bonus calculations along with adjustments to the cumulative amount owed to/from Liberty were made for the second and third calculation period.

With the penalty/bonus amount being cumulative, the ultimate amount due either party would be determined as of December 31, 2003. Based on our understanding of the formula provided within the Agreement and following the same calculation used for the December 31, 2001 bonus amount, (as provided in Exhibit H) it is our determination that the total bonus payable to Liberty should be $394,195. Since Liberty has been paid $890,588, it is therefore our opinion that the excess of **$496,393** is refundable to Republic under the terms of the Agreement.

The Agreement was predicated upon the basis of a reduction in workers' compensation costs to Republic. While this premise is theoretically possible, the facts as now determined indicate otherwise. Notwithstanding the findings of excess costs presented herein, the total incurred costs as of May 31, 2005 for Policy Year 3 claims are $20.3 million, consisting of $14.6 million paid and $5.7 million reserved. By contrast, the projected ultimate paid loss at December 31, 2003 (the 42-month calculation period) was $13.8 million, using total claims paid at that date applied to the ultimate paid loss development factor, provided within the Agreement. As a result, Liberty has been paid a bonus for administration of the Policy Period 3 claims, although total incurred costs (at May 31, 2005) have exceeded the projected ultimate paid loss by approximately $6.5 million.

Considering these claims costs far exceed the amounts contemplated by the Agreement, it would appear that the penalty provision could apply rather than a bonus. In that case, the full amount of the bonus, $890,588 and the penalty of $110,625, totaling $1,001,213 would be payable to Republic by Liberty.

C.  COSTS OF EXCESS RESERVE REQUIREMENTS/IMPAIRMENT OF CAPITAL

Pursuant to the three policy Contracts, Republic was required to secure its obligations under the workers' compensation program an amount established by Liberty at the beginning of each policy Contract. The security was provided by Republic using surety bonds and letters of credit. In accordance with generally accepted accounting principles Republic was also required to record a liability on its financial statements for the reserves. Such reserves were actuarially determined as the amounts for projected ultimate costs of workers' compensation claims based on actual paid claims and

anticipated future costs. From the analysis of claims presented herein, it has been determined that there were substantial excess costs for claims. As a result, the basis for determining security requirements and reserves were correspondingly inflated causing excess amounts to be calculated for such security and reserves. This resulted in Republic incurring costs for purchasing the instruments used for security in excess of that required. Likewise, Republic has recognized liabilities in its financial statements for reserves in excess of the amounts required causing an impairment of capital that could have been otherwise employed within the operations of Republic.

After obtaining the results of the claim file analysis wherein excess costs were determined, we provided such data to Mr. Ed Davenport, the actuary used by Republic. Mr. Davenport performed a re-calculation of reserves that would have been appropriate, the details of which are provided within his report. From the re-calculation, Mr. Davenport has identified the amount of excess reserves existing at each Contract year end, and continuing through June 30, 2005. Comparing the required reserves before adjustment to required reserves after adjustment (adjustments being the error rates determined from file reviews for each respective Policy Year) yields the Estimated Loss of Capital. The Estimated Loss of Capital is then applied to assumed costs, based on an assumed borrowing rate of 5% and 1% letter of credit/security cost. The summary of Mr. Davenport's analysis is as follows:

| Year Ending | Estimated loss of Capital | 5% Cost | 1% Cost | Total Cost |
|---|---|---|---|---|
| 6/30/99 | $ 4,623,000 | $231,150 | $ 46,230 | $277,380 |
| 6/30/00 | $ 9,195,000 | 459,750 | 91,950 | 551,700 |
| 6/30/01 | $13,287,000 | 664,350 | 132,870 | 797,220 |
| 6/30/02 | $ 9,937,000 | 496,850 | 99,370 | 596.220 |
| 6/30/03 | $ 7,388,000 | 369,400 | 73,880 | 443,280 |
| 6/30/04 | $ 5,619,000 | 280,950 | 56,190 | 337,140 |
| 6/30/05 | $ 4,623,000 | 231,150 | 46,230 | 277,380 |
| Total | | $2,733,600 | $546,720 | $3,280,320 |

As illustrated, the estimated cost to Republic for impairment of capital resulting from estimating reserves and security in amounts greater than necessary due to calculations based on excess incurred costs is $3,280,320.

13

## CONCLUSION

On the basis of the several analyses as detailed herein, it is my opinion that Republic has incurred costs as a result of actions by Liberty resulting in damages summarized as follows:

|  | Sampling Method | All files Reviewed Method |
|---|---|---|
| Excess Costs for claims | $ 18,621,866 | $19,616,151 |
| Excess Bonus payment | 496,393 | 496,393 |
| Costs for impairment of capital | 3,280,320 | 3,280,320 |
| Total | $ 22,398,579 | $23,392,864 |

Furthermore, certain costs continue to be incurred by Republic resulting from claims that were and remain open. For such claims, there will be amounts determined to be excess costs which will be presented in a supplemental report as additional damages to those identified hereinabove.

Respectfully submitted,

SNODDY CONSULTING, INC.

Timothy K. Snoddy, CPA, CVA, DABFA