# FINDINGS AND ANALYSIS
# RETIRED WORKERS' COMPENSATION
# JUDGE DAVID W. O'BRIEN

## *REPUBLIC SERVICES, INC. vs. LIBERTY MUTUAL INSURANCE COMPANY, ET AL.*

**PREPARED AT THE REQUEST OF:**
McBrayer, McGinnis, Leslie & Kirkland, PLLC

March 11, 2006

**EXHIBIT RR**

At the request of McBrayer, McGinnis, Leslie & Kirkland, PLLC, I have reviewed the conclusions reached by Thomas L. Ballard as set forth in his expert report dated August 15, 2005 concerning the 292 Republic Workers' Compensation Claims files which he reviewed and analyzed in detail. My review consisted of examining the summary of work papers for each of these claims, which Mr. Ballard prepared, and discussing the contents of the work papers themselves.

In my review of the 292 Republic Workers' Compensation claims files, I observed all of the same errors and omissions which are set forth in my expert report dated January 15, 2006, at pages 3-6. In particular, my review of these 292 claims indicated a consistent pattern of, without limitation, failure to investigate claims, use of numerous adjusters on the same files, failure to aggressively handle claims in order to push them to a resolution, allowing claims to languish so that claimant is forced to retain counsel, failure to complete a settlement once authority is obtained from Republic, and failure to pursue (or to fully pursue) opportunities for subrogation.

I have no material disagreement with Mr. Ballard's conclusions concerning the 292 claims files, but offer my observations concerning the following 11 files.

## DARRON WHITEHEAD

## CLAIM NO: 555258769

Liberty failed to settle this claim at a time when claimant's counsel demanded $105,000.00. From my experience claimant's counsel generally overstate their evaluation of a claim expecting a substantially lower counter offer, which in this case I feel $60,000.00 would have been a reasonable compromise.

Instead of settling, Liberty delayed the claim by another about 18 months and settled for $92,000.00 during which time additional temporary disability indemnity payments were made even though Liberty had evidence claimant was working as a volunteer fireman and mowing grass.

Therefore, I am of the opinion that the settlement was overpaid by $32,000.00 as well as the amount paid for temporary disability indemnity paid for the 18 months following the first opportunity to settle.

## GREG HOOPER

## CLAIM NO: 555258768

Liberty overpaid temporary disability during the approximate period December 13, 2000 to March 11, 2003 at which time the claim was settled for $45,000.00. I find this overpayment based on the fact the claimant sought a settlement on December 13, 2000 and, Republic authorized a settlement of $45,000.00 on October 3, 2001, yet Liberty waited until March 11,

2

**EXHIBIT RR**

2003 at which time the claim was settled for $45,000.00, which is the exact amount it most likely could have settled for about October 3, 2001.

## GREG WILKINSON

## CLAIM NO: 413197950

Liberty's adjuster failed to timely respond to claimant's telephone calls apparently making him feel Liberty was conspiring with treating doctors to deny him benefits. At a hearing on October 26, 2000 the Judge ordered Liberty to work up future needed costs and permit claimant to see a treating doctor again. Claimant was not represented by counsel at the hearing.

By failing to follow up and settle with claimant in 2000, Liberty apparently drives claimant to retain counsel. Claimant's counsel then contends claimant's back is part of foot injury and claims drag into 2004 with no proactive claim action by Liberty. Claim would most likely have settled in 2000 if Liberty had been properly prepared for the October 26, 2000 hearing at a time when claimant did not have counsel.

## PAUL BAILEY

## CLAIM NO: 390104061

There was a total failure of Liberty to investigate this claim. Although Bailey alleged his right knee locked up at work on December 12, 2000, claims never did an investigation to determine what if any work activity he may or may not have been performing that day. No indication as to whether he was carrying any weight at time of alleged locking of right knee. No witnesses were sought out for statements. No indication if he worked his shift after incident. It seems no doctors were asked to consider the locking to be just a normal bodily movement that could have been occurred no matter where he was that day.

In my opinion had the facts been disclosed that he was engaged in no heavy work activity at time of locking the doctors and judge would have most likely concluded the locking of the knee was due to a normal bodily movement and therefore not an industrial injury.

## MARTIN WIEST

## CLAIM NO: 205120058

Liberty failed to file a continuing trauma claim against claimant's new employer at the time he alleged injury to his right arm.

Admittedly he injured his left arm at work and doctors indicate that overcompensation for injured left arm caused right arm injury. Liberty should have investigated to determine whether

**EXHIBIT RR**

he was working for new employer, which apparently he was sometime in 1999, in which event a continuing trauma claim should have been filed against the new employer for injury to claimant's right arm. No evidence that such an investigation was ever performed.

### RONALD BROWN

### CLAIM NO: 390056122

There appears to be no medical reports to support Liberty's settlement offer of $25,000.00. It is important to note that claimant lost no time from work and apparently a medical expense of $3,357.28 was incurred on the day of alleged injury. Not only was there no medical report to support such a large settlement for an elbow injury, but Republic did not give any settlement authority to Liberty. I would deny all expenditures except the medical costs.

### MICHAEL BUTLER

### CLAIM NO: 555574892

There was no investigation to prove the claimant had an injury on alleged August 31, 2000. The claimant was not interviewed nor was any Republic employees or supervisors. It is noted that claimant's weight exceeded 400 pounds. The claim was kept open for over a year after the claimant was released to full duty. I would deny the whole claim.

### GEORGE DAVISON

### CLAIM NO: 390043531

No investigation was performed to determine if claimant was injured on July 4, 2004. No contact with claimant's supervisor to get his or her opinion as to whether injury did occur as alleged.

Further, the second opinion doctor was of the opinion that claimant's treatment was "medically mismanaged", yet no investigation was conducted to determine if there was a potential medical malpractice claim in the case.

### JESSIE LEDESMA

### CLAIM NO: 949452340 and 949401309

Claimant injured left shoulder on July 21, 2000, while getting into a forklift.

**EXHIBIT RR**

While physical therapy was being provided for the left shoulder injury at Spine and Joint Center on July 6, 2000 claimant fell off a block hitting a door with his right shoulder. Subsequently he had three surgeries to the right shoulder.

Consequently, Spine and Joint Center should be liable for all medical and other benefits paid as a result of the right shoulder injury, which appears to be the majority of expenditures in these two cases.

## CHARLES CORNETT

## CLAIM NO: 555243405

The employee was killed instantly when a pole fell striking his truck. He left a dependent child whose mother is seeking a settlement from Liberty, which Liberty has not yet responded to. However, the third party case has been settled for $500,000.00 with Liberty accepting $6,592.90 in settlement of its lien, which apparently was $101,215.00 at the time Liberty accepted the $6,592.00.

No explanation is given as to why Liberty did not demand full recovery of its lien from the third party.

## RICHARD REDLEIN

## CLAIM NO: 390109049

When the claimant was released to fully duty on May 2, 2002, Liberty should have secured a MMI report from the treating doctor and settled case. Instead adjuster did nothing to close file. Then in January 2003 claimant's attorney filed Petition for Permanency to which Liberty did not respond.

As of September 3, 2004, Liberty could not secure a permanency report because it could not locate medical records. It has taken Liberty over a year to secure the medical records and file is still open.

The above statements and opinions are based upon the documentation referred to initially in this report and are made under the penalty of perjury.

Dated: March 11, 2006

David W. O'Brien, Esquire

5                                                                                          **EXHIBIT RR**