UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
FILED
SEP 2 5 2006
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 03-494-KSF

REPUBLIC SERVICES, INC.     PLAINTIFF

V.     **<u>OPINION AND ORDER</u>**

LIBERTY MUTUAL INSURANCE     DEFENDANTS
COMPANY, *et al.*

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on plaintiff's motion for partial summary judgment. [DE #50]. This matter has been fully briefed and is ripe for review.

I.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This suit arises out of a contractual relationship between plaintiff Republic Services, Inc. ("Republic") and defendants Liberty Mutual Insurance Company, Liberty Insurance Acquisition Corporation *f/k/a* Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance Corporation and Helmsman Management Services, Inc. (collectively referred to as the "Liberty Companies"). Republic is a holding company for numerous subsidiary corporations, limited liability companies, and limited partnerships that own and operate landfill and waste disposal facilities in Kentucky and approximately twenty-one other states.

Republic and the Liberty Companies entered into a contractual relationship (the "Workers' Compensation Program") beginning on July 1, 1998. At that time, the parties entered into a one year

1

contract for the Liberty Companies to provide "large deductible workers' compensation insurance for the Republic Companies, and claims administration for claims filed under those insurance coverages." The Workers Compensation Program was renewed by two subsequent annual policy contracts on July 1, 1999 and July 1, 2000, and ultimately expired on June 30, 2001.

As part of the Workers Compensation Program for the 2000-2001 fiscal year, covering injuries arising from July 1, 2000 through June 30, 2001, Republic and the Liberty Companies also entered into the 2000 Workers' Compensation Partnership Agreement (the "Partnership Agreement"). [DE #50, Ex A] The stated purpose of the Partnership Agreement was for the Liberty Companies to "partner with Republic Services, Inc. to reduce total workers' compensation costs." The Agreement only applies to the third policy year of the Workers' Compensation Program.

Under the terms of the Partnership Agreement, the Liberty Companies guaranteed that Republic's ultimate paid loss rate during the policy period would fall within the so-called "neutral range." To the extent that the loss rate fell below the neutral range, the Liberty Companies were to receive a bonus payment calculated as "20% of the savings between actual projected ultimate WC paid losses and the lower boundary of the guaranteed range." Likewise, to the extent the "projected ultimate WC paid loss rate" exceeded the upper boundary of the guaranteed range, the Liberty Companies were to pay Republic a monetary penalty in the amount of $110,625.00.

Since injured workers can continue to incur medical costs and expenses for an indefinite future period, the periodic actual paid loss rate could fluctuate over time as workers continued to incur claims costs. Thus, the parties agreed on three dates to compare the actual paid loss to the target loss range. Specifically, the Partnership Agreement called for the entitlement to a bonus, or the requirement of a penalty, to be assessed at eighteen, thirty, and forty-two months following

execution of the Partnership Agreement, which corresponds to January 2002, January 2003, and January 2004. According to the Partnership Agreement, payment of the bonus or penalty is due "within 30 days of receipt of Republic Services'/Liberty's invoice, which ever is applicable."

On January 17, 2002, the Liberty Companies performed the eighteen month valuation provided for under the Partnership Agreement and determined that the loss rate was below the guaranteed range, and that a bonus payment of $890,589.00 was due from Republic. This bonus payment was paid by Republic in four equal installments. [DE #56, Ex 2]

On January 13, 2003, the Liberty Companies performed the thirty month valuation provided for under the Partnership Agreement. Based on the revised loss rate after an additional twelve months of claims experience following the eighteen month valuation, the Liberty Companies' original bonus calculation resulted in a payment by Republic to the Liberty Companies which was too large. Specifically, the bonus payment should have been only $728,449.00. As a result, the Liberty Companies returned the overage of $162,140.00 to Republic. [DE#56 Ex3]

On January 30, 2004, the Liberty Companies performed the final valuation provided for in the Partnership Agreement. Based on the revised loss rate after forty two months of claims experience, the Liberty Companies determined that the final bonus amount should have been $366,287.00. [DE #50 Ex F and G] The overage of $362,162.00 has not been returned to Republic.

On January 19, 2006, Republic filed this motion for partial summary judgment pursuant to Rule 56(c). [DE #50] Specifically, Republic argues that it is entitled to a judgment as a matter of law as to Count Eleven of the Amended Complaint, including a finding that:

(1)  Republic is entitled to the return of $362,162.00 of the bonus payment, together with prejudgment interest thereon at the rate of eight percent (8%) per annum from January 30, 2004 until the date of entry of the judgment requested herein, and

3

    thereafter at the rate of twelve (12%) per annum on the combined principal and interest amount from the date of entry of the judgment requested herein until paid;

(2)  the Liberty Companies determined at the forty-two month valuation provided for in the Partnership Agreement that Republic was entitled to the return of an additional almost $365,000.00 of the bonus payment <u>and</u> affirmatively acted to conceal this determination;

(3)  the Liberty Companies, notwithstanding their special position of trust with Republic, and the information which the Liberty Companies, but for this litigation would have remained solely in possession of, have knowingly and intentionally kept and withheld this money; and

(4)  reserving the determination of Republic's entitlement to attorney's fees and punitive damages, and the amount any such attorney's fees and punitive damages, for subsequent determination by this Court and/or the trier of fact as this matter proceeds.

(5)  the Partnership Agreement, and its terms, constitute no bar or limitation to the assertion and prosecution of claims, and the recovery of damages additional to those damages requested herein, by Republic against and from the Liberty Companies, by reason of the failures and breaches of the Liberty Companies to properly handle, administer and manage claims occurring under Republic's self-insured workers compensation program during the fiscal year 2000 policy period.

[DE #34] Additionally, Republic seeks judgment as a matter of law in its favor as to Count III of the Liberty Companies' Counterclaim:

> that the Partnership Agreement, and its terms, constitute no bar or limitation to the assertion and prosecution of claims, and the recovery of damages, additional to those requested herein, by Republic against and from the Liberty Companies, by reason of the failure and breaches of the Liberty Companies to properly handle, administer and manage claims occurring under Republic's self-insured workers compensation program during the fiscal year 2000 policy period (July 1, 2000 to June 30, 2001).

[DE #28].

  The Liberty Companies have filed their response to Republic's motion for partial summary judgment arguing that material facts are in dispute and that additional discovery is necessary.

Furthermore, the Liberty Companies argue that Republic has failed to comply with conditions precedent to its recovery under the Partnership Agreement and has failed to prove entitlement to relief under the Partnership Agreement. Finally, the Liberty Companies argue that the law of the Commonwealth of Massachusetts applies, and that this Court should hold as a matter of law that the Partnership Agreement is a liquidated damages agreement and that the Liberty Companies never assumed a fiduciary duty to Republic. [DE #56]. Contained within the Liberty Companies' response is its alternative motion for extension of time to complete discovery and a request for oral argument. Republic has filed its Reply [DE #62] and its Surreply [DE #90].

## II. ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving

5

party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [nonmoving party]. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

### B. MASSACHUSETTS LAW GOVERNS CLAIMS ARISING FROM THE PARTNERSHIP AGREEMENT

Generally, a federal court sitting in diversity must apply the substantive law of the forum state. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). This rule includes application of the forum state's choice of law rules. *Wallace Hardware Co. Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000). Accordingly, Kentucky's choice of law rules apply with regard to this matter.

The Supreme Court of Kentucky has held that to determine which state's law governs the parties' rights and responsibilities under a contract, Kentucky follows the "most significant relationship" test set forth in the Restatement of Law (Second) Conflict of Laws § 188, which provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
>
> (2) In the absence of an effective choice of law by the parties (see §187), the contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include:

        (a) the place of contracting;
        (b) the place of negotiation of the contract;
        (c) the place of performance;
        (d) the location of the subject matter of the contract; and
        (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

As stated in § 188, these factors are to be analyzed in conjunction with the interests set forth in § 6 of the Restatement, which includes (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. RESTATEMENT OF THE LAW, SECOND, CONFLICT OF LAWS, § 6 (1971).

The Partnership Agreement at issue in this case contains no choice of law provision. Republic is a Delaware corporation with a principal place of business in Florida. [DE #1] Republic is a holding company for numerous subsidiary corporations, limited liability companies, and limited partnerships, including Republic Services of Kentucky, LLC, a Kentucky limited liability company which operates and does business in Kentucky. Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, and Helmsman Management Services, LLC are Massachusetts corporations. Liberty Insurance Corporation is an Illinois corporation, and LM Insurance Corporation and the First Liberty Insurance Corporation are Iowa corporations. All of the Liberty

7

Companies defendants maintain a principal place of business in Massachusetts.

The Partnership Agreement was discussed and negotiated between representatives of Republic and the Liberty Companies at a meeting in Boston, Massachusetts. [DE # 56, Ex 11] While its unclear where Republic's representative signed the Partnership Agreement, the Liberty Companies representative signed the Partnership Agreement in Boston, Massachusetts. The Liberty Companies duties under the Partnership Agreement arose in Massachusetts.

On the other hand, Kentucky is merely one of 23 states wherein Republic's workers' compensation claims originated, with only 4.16% of all claims subject to this litigation originating in Kentucky. [DE #56, Ex 11] Kentucky has no more connection to the negotiation of or the Liberty Companies' compliance with the Partnership Agreement than the 22 other states where Republic's claims were managed by the Liberty Companies. When compared to the significant contacts of Massachusetts, Kentucky's connection to the Partnership Agreement fails the "significant relationship test." Accordingly, Massachusetts law will govern this Court's review of the claims arising out of the Partnership Agreement.

### C. BREACH OF THE PARTNERSHIP AGREEMENT

Under the terms of the Partnership Agreement, and based on the 42 month valuation, it is undisputed that Republic overpaid the bonus to the Liberty Companies in the amount of $362,162.00. Nevertheless, the Liberty Companies now attempt to avoid refunding an amount clearly due to Republic on the basis of dubious defenses, which the Court rejects for the reasons set forth below.

#### 1. CONDITIONS PRECEDENT

Instead of disputing the calculation of the overpayment of the bonus or its obligation to

refund the overpayment, the Liberty Companies argue that because Republic failed to tender an invoice requesting a partial bonus refund in the amount of $362,162.00, the Liberty Companies are under no obligation to make a refund. The Court disagrees.

According to the Partnership Agreement, "[t]he bonus/penalty will be paid after each valuation (18, 30, and 42 months) within 30 days of receipt of Republic Services/Liberty's invoice, which ever is applicable." [DE #50, Ex A] The Partnership Agreement is silent with regard to a refund of an overpayment of a bonus. Even if the Court were to find that this provision also governs the refund of an overpayment of a bonus, this requirement has been waived. Neither Republic nor the Liberty Companies have produced an "invoice" for the bonus payment made after the eighteen months valuation or for the partial refund of the bonus payment after the thirty month valuation. Rather, at the eighteen and thirty month valuations, the record reflects that the parties informally discussed the valuation and arranged for payment of the bonus, or refund of the overpayment of the bonus. [DE #50, Ex F and I, DE #56, Ex 2 and 3] It is reasonable for the Court to find that the parties performed their obligations with regard to the bonus/penalty provision of the Partnership Agreement without adhering to the literal language of the Partnership Agreement.

Importantly, the Partnership Agreement does not contain a non-waiver provision and it is apparent from the parties' course of conduct in this regard that even if the Partnership Agreement initially required a invoice for the bonus/penalty and refund of an overpayment of a bonus to change hands, that requirement has been discounted. At the very least, Republic's motion for partial summary judgment serves as a constructive invoice for refund of the bonus overpayment. Accordingly, the Court finds that Republic's alleged failure to forward an invoice to the Liberty Companies does not relieve the Liberty Companies' obligation under the Partnership Agreement to

refund the overpayment of the bonus to Republic.

### 2. EQUITABLE ESTOPPEL

The Court also finds that Republic is not estopped from claiming entitlement to a refund of the overpayment of the Liberty Companies' bonus. In Massachusetts, a plaintiff can "escape the consequences of his lack of diligence in bringing his action . . . by way of proof that the defendants lulled the plaintiff into the delay." *Kozikowski v. Toll Bros., Inc.*, 354 F.3d 16, 24 (1st Cir. 2003) (citing *Coady v. Marvin Lumber and Cedar Co.*, 167 F.Supp.2d 166, 171 (D.Mass. 2001)). The evidence reveals that the Liberty Companies were well aware a refund of the overpayment of the bonus was due to Republic and that the Liberty Companies never made any effort to advise Republic that a refund was due. [DE#50, Ex F and I]

On the other hand, the Liberty Companies now argue that it is possible that at the 42 month valuation, Republic's increased claims costs were due in whole or part to a change in the mix of Republic's operations. Under the Partnership Agreement, if Republic's mix of operations has changed, then the Liberty Companies has the option of modifying the Partnership Agreement. [DE #50 Ex A] However, the Liberty Companies knew as early as January 2004 that Republic's claims costs had increased and a refund was due, yet has made no effort to modify the terms of the Partnership Agreement. [DE #50, Ex F and I] The Court finds that the Liberty Companies is now estopped from attempting to avoid refunding the overpayment by waiting until this claim in this litigation arose to attempt to modify the Partnership Agreement.

### 3. NO DISPUTED ISSUES OF MATERIAL FACT PREVENT THE COURT FROM ORDERING THE LIBERTY COMPANIES TO REFUND TO REPUBLIC THE OVERPAYMENT OF THE BONUS

The Liberty Companies argue that outstanding issues of fact preclude this Court from

10

entering partial summary judgment. First, the Liberty Companies contend that Republic has contested the accuracy of the 12 month valuation, and therefore, presents a question of fact regarding the amount of the partial bonus refund due. However, for purposes of this motion for partial summary judgment, Republic and the Court have accepted the Liberty Companies' calculations as accurate.

The remainder of the Liberty Companies' alleged factual disputes go to Republic's claim for breach of fiduciary duty. For the reasons set forth in Section D below, the Court will deny Republic's motion for partial summary judgment with respect to its breach of fiduciary duty claims.

### 4. THE PENALTY CONTEMPLATED BY THE PARTNERSHIP AGREEMENT IS NOT A LIQUIDATED DAMAGES PROVISION

The Liberty Companies argue that Republic's remedy for breach of the Partnership Agreement is limited to the relief expressly set forth within the Partnership Agreement, including refund of previously collected bonuses and/or enforcement of penalty provisions. This Court again disagrees.

Under Massachusetts law, a fixed sum specified in advance as contract damages is normally sustained if actual damages are difficult to ascertain in advance; on the other hand, if this condition is not met, or if the amount specified is grossly disproportionate to a reasonable estimate, enforcement is denied. *See Kelly v. Marx*, 705 N.E.2d 1114, 1116 (Mass. 1999); *A-Z Servicenter, Inc. v. Segall*, 138 N.E.2d 266, 268 (Mass. 1956). "A judge, in determining the enforceability of a liquidated damages clause, should examine only the circumstances at contract formation." *Kelly*, 705 N.E.2d at 1116.

On its face, the Partnership Agreement does not contain a liquidated damages clause.

11

Nevertheless, the Liberty Companies attempt to argue that the bonus/penalty provision of the Partnership Agreement should be construed to limit Republic's damages. That provision provides:

> Liberty Mutual will incur a penalty if Republic Services' projected WC ultimate paid loss rate at 18, 30, and 42 months exceeds the upper boundary of the neutral range. The penalty will equal $110,625.

Clearly, this "penalty" applies only in a very narrow circumstance: when the paid loss rate is less than the agreed "neutral range." The Partnership Agreement does not speak of - or infer - any broader application. It cannot be construed to apply to the circumstances of this matter - failure of the Liberty Companies to refund the overpayment of a bonus.

Moreover, the amount the Liberty Companies seek to declare as liquidated damages in the event of their breach is less than one-third of the amount Republic is clearly entitled to by operation of the Partnership Agreement. This is simply not proportional to the anticipated loss, and should not serve to limit Republic's recovery in this action. *Id.* at 1115-16. Accordingly, the Court finds that the bonus/penalty provision of the Partnership Agreement is not a liquidated damages claim thereby limiting Republic's recovery in this action.

### 5. REPUBLIC IS ENTITLED TO A REFUND OF THE OVERPAYMENT OF THE BONUS

The Court, having rejected the Liberty Companies' only defenses to refunding the overpayment of the bonus to Republic and resolving all ambiguities and drawing all inferences against Republic, finds that under the simple terms of the Partnership Agreement, Republic is entitled to a refund in the amount of $362,162.00.[1] Inasmuch as many similar claims remain pending

---

[1] The fact that the parties could not resolve this dispute, and instead expect the Court to litigate every dispute arising under their contractual relationship as illustrated by both parties' continuous filing of motions, frustrates and burdens the Court.

12

before this Court, the Court declines to enter a final judgment under Rule 54(b). The Court reserves ruling on Republic's claims for prejudgment and postjudgment interest, attorneys' fees and punitive damages pending the resolution of the remaining claims.

### D. NO FIDUCIARY RELATIONSHIP

Whether the Partnership Agreement, or other contract documents between the parties, created a fiduciary relationship is governed by Massachusetts law. Massachusetts law is clear that a business relationship is not transformed into a fiduciary relationship merely because trust was reposed by one party in the other party. *Davidson v. General Motors Corp.*, 786 N.E.2d 845, 850 (Mass. App. 2003). Instead, a fiduciary relationship is generally found when certain indicia are present, including when one party is in a position of great disparity or inequality relative to the other party, or the disparity in a relationship has been abused to the benefit of the more powerful party. *Industrial General Corp. v. Sequoia Pacific Systems Corp.*, 44 F.3d 40, 44 (1st Cir. 1995).

Here, the parties entered into a complex contractual relationship. Republic, a sophisticated, publicly traded corporation, negotiated multiple comprehensive contracts with the Liberty Companies, including the Partnership Agreement. The Partnership Agreement requires both parties to seek to reduce workers' compensation claims costs. The Court finds no disparity in the sophistication or bargaining powers of the parties. Moreover, there is no evidence that the Liberty Companies had knowledge of or willingly accepted a fiduciary duty to Republic. While the Liberty Companies did have access to Republic's bank account to facilitate its contractual duties, this was merely a banking relationship creating no fiduciary responsibilities. *See In re: Greenberg*, 212 B.R. 422, 428-29 (Bank.D.Mass. 1997). Furthermore, this banking relationship has no relevance to the Partnership Agreement currently before the Court. The Partnership Agreement simply was a

refinement of the duties of the parties relative to their contractual relationship. Accordingly, to the extent that Republic seeks partial summary judgment imposing a fiduciary duty on the Liberty Companies with respect to the Partnership Agreement, its motion will be denied.

### III.  CONCLUSION

Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS:

(1) that plaintiff's motion for partial summary judgment [DE #50] is GRANTED IN PART to the extent that Republic is entitled to refund of the overpayment of the bonus in the amount of $362,162.00;

(2) the Court RESERVES RULING on determination of Republic's entitlement to prejudgment and postjudgment interest, attorney's fees and punitive damages;

(3) the plaintiff's motion for partial summary judgment [DE #50] is DENIED in all other respects consistent with this Opinion and Order;

(4) the defendants' motion for extension of time to complete discovery [DE #56] is DENIED;

(5) the defendants' request for oral argument [DE #56] is DENIED; and

(6) this is not a final and appealable order, and judgment in accordance with this Opinion and Order will be entered only at the conclusion of this action.

This 25th day of September, 2006

KARL S. FORESTER, SENIOR JUDGE

14