Robert E. Maclin, III, Esq.
August 15, 2005
Page 19

In the Audit review, many cases were noted where the claimant was determined to be at Maximum Medical Improvement ("MMI") but no AMA disability rating had been filed by the doctors involved. (MMI is the point at which doctors are clear that the claimant's medical condition will not further improve.) The Liberty Companies made no effort to push these cases to settlement by obtaining an AMA disability rating. Had a rating been sought when the claimant was determined to be MMI, settlement negotiations could have started and the claim brought to resolution much faster. A faster resolution would have avoided continued TTD payments when in fact the claimant was ready to settle or go back to work. If the Liberty Companies had sought to obtain AMA ratings by means of sending claimants for an Independent Medical Examination ("IME") or Independent Required Examination ("IRE"), a hearing could be requested in to push the claim to resolution. Instead, on several occasions, the Liberty Companies were not prepared for hearings when they were forced to participate by the claimant's attorney.

Once the claimant is determined to be MMI and an AMA rating is secured, negotiations should move forward, with either the claimant or the Liberty Companies making an offer to settle the claim. Once these negotiations start, they should proceed at a reasonable speed, with offers or more information being provided to each side within days or weeks. If good faith settlement negotiations take place, settlement occurs in most claims. If the claimant is MMI, this attempt to resolve the claim should only take weeks or a few months, and not several years. Accordingly, the Audit review used the MMI date as a cutoff date as to when there was a rating available, or one should have been available had the Liberty Companies pushed for such a rating. The continued failure to obtain and use MMI findings and AMA ratings prolonged claims life.

EXAMPLES: Failure to adhere to the lost time investigation requirements is illustrated by

- Claim # 608338489 and # 648147482 (details attached as **Appendix H**), the claimant was actually paid twice for the same loss, and no recovery or credit to Republic was noted. It was also noted that the Liberty Companies paid medical invoices twice, because the claimant was treating for one injury under two separate claim files at the same time. The Liberty Companies caught the claimant when he filed a third claim.

- Claim # 555550429 (details attached as **Appendix H**), the Liberty Companies were precluded from using SIF funds, because of improper notification by the Liberty Companies for access to these funds. This forced Republic to pay claim costs which should have come from SIF funds and not Republic funds.

- Claim # 555243410 (details attached in **Appendix H**). The claimant allegedly tried to jump onto the garbage truck, and missed the step. However, within two days, he was arrested and spent over 90 days in jail. The Liberty Companies made no attempt to investigate this claim. No statements were taken from co-workers, no photos were taken of the truck or the accident scene, and no canvass

was made of the area to confirm that the accident did in fact take place. No three-point contact was made. The Liberty Companies had information that the claimant played basketball while in jail in 1993 and hurt his knee. This should have led the Liberty Companies to investigate at the jail during the claimant's 1999 imprisonment, to see if indeed he may have been playing basketball and reinjured the knee. (It was also learned the claimant asked for and was supplied with Viagra as part of his recovery from the 1999 knee injury.) After the claimant was released from jail in 1999, no surveillance was done. In addition, the claimant was not sent for an IME, and was never assigned an AMA rating. As a result of the Liberty Companies' failure to investigate this claim, Republic was forced to pay for this claim as a compensable loss, and incur very substantial expenses on a claim without any proof that the treatment was indeed for injuries suffered while employed with Republic. In fact, it appears that the entire claim should have been denied, with the exception of the initial treatment the day of the loss.

- Claim # 648149079 (details attached in **Appendix H**). The claimant alleges that he fell into a pothole on the back lot of the Republic location, and injured his ankle and back. There were no witnesses to the fall. The claimant was well enough to attend the company Christmas Party the following week, showing no signs of any discomfort or pain at all. He then proceeded to have back surgery based on a referral from his family doctor over the weekend of 12/15/2000. The Liberty Companies never directed or controlled treatment of this claimant, and never investigated the facts surrounding the alleged accident. There was also no effort to investigate a prior back injury disclosed by the claimant to the doctor, an injury that occurred during his previous employment. MRI reports were obtained but never provided to doctors so they could make comparisons and note progression of any injury. No statement was taken from the claimant until two months after the first back surgery. There was no canvass of the work area to confirm that there were no witnesses to the accident, or that a pothole actually existed where this loss allegedly occurred. Compensability was never confirmed. As a result of the failure to investigate this file, Republic was forced to pay for this claim as a compensable loss, and incur very substantial expenses on the claim without any proof the treatment was indeed for injuries suffered while employed with Republic.

- Claim # 602229821 (details attached in **Appendix H**). No statements were taken, no witnesses were interviewed, and there was no investigation of the accident scene. The file does not indicate that anyone verified injury was work related. There was no three-point contact within the prescribed time limits. This employee had seven (7) prior workers compensation claims. He was examined and the doctor felt he was "Clearly faking his condition". Once he was placed on TTD by another doctor, a functional capacity evaluation ("FCE") test should have been requested, and permanency exams ordered. No surveillance was done until

Robert E. Maclin, III, Esq.
August 15, 2005
Page 21

       2004, at which point the employee was found to be moving with no restrictions, washing a car. As a result of the Liberty Companies failing to investigate this claim to verify compensability, Republic faces payment of this claim which is now over five years old. With many other claims in his past, it would have been possible for Republic to seek contribution from secondary injury funds.

- Claim # 648148569 (details attached in **Appendix H**). The Liberty Companies failed to document a $10,000 advance to the claimant that was to be credited against any future settlement. There was no evidence the credit was taken when the settlement was finalized. The Liberty Companies failed to file the "NOPE" (claimant disclaimer of vocational rehabilitation) form, increasing the cost of the claim to Republic by $3,000.

- Claim # 555243410 (details attached in **Appendix H**). The claimant was sent two advances without any documentation. There was no effort to settle the claim when the advances were paid. No credit taken for the advances in the final settlement of $39,000. Lack of documentation cost Republic the advances made, without any credit against the settlement.

- Claim # 648148611 (details attached in **Appendix H**). In comparing the Paper Claims File to RISKTRAC, it was noted there was no mention in RISKTRAC of prior injury problems, or that the doctor reports note that the present injury could not have occurred as described by the claimant. The Paper Claims File also had medical reports which stated the injury two years prior to the current alleged injury is the probable cause of the current problems. The doctor goes on to say "is not, reasonably, medically, probable that the patient sustained industrially related injuries to his neck or back regions during his employment as a driver, for Republic Services Company, on December 1, 1999." RISKTRAC notes a compensable claim, even though medical reports from medical experts state otherwise. There was also failure to investigate the prior injury. The claimant was sent to a Qualified Medical Examination two years after the loss, and both doctors say the injury could not have happened on 12/1/1999. There was no effort on to get the carrier for the prior injury involved in the claim.

- Claim # 648148935 (details attached in **Appendix H**). The Liberty Companies had assigned a doctor to examine the claimant. An IME report dated 7/11/2003 verifies that the injury is 100% industrial and 100% compensable. Nothing was done with this information for over a year. The case should have been priced and paid at the time the report was obtained. A new case manager challenges liability a week before trial with three different medical reports (the IME report and two reports from the claimant's doctors), further delaying resolution of this claim.

- Claim # 205121614 and claim # 648148613 (details attached in **Appendix H**). In both of these cases, there was no investigation to confirm compensability. The failure to do so resulted in excessive expenses incurred by Republic with no confirmation that the claims were owed.

Robert E. Maclin, III, Esq.
August 15, 2005
Page 22

- Claim # 390063342 (details attached in **Appendix H**). The Liberty Companies' staff Quality Control Manager noted in the file that there was no investigation into this loss at all.

3.  *Chart Item Three: All Open Indemnity Cases on Open Diary*

Effective claims handling requires review of the claim on a regular interval or "diary" basis. The reason for doing this is to ensure a logical and speedy resolution of the claim, including timely payment of indemnity and medical payments, and timely and appropriate responses to all claims correspondence. An open diary also means that the claims handler notes will be updated on a regular basis. Failure to maintain a diary typically result in late payments or missed payments, untimely requests for information (i.e., medical reports, permanency exams), and longer claims life (and greater expense).

The Audit review indicated 271 files did not meet the open diary requirement. Many files have little or no diary activity. Some files had the same entry repeated several months in a row, or lacked any entry at all. I found cases where the Liberty Companies was fined by state workers compensation agencies and paid the resulting fine or penalty from Republic funds, in direct conflict with the agreement between the parties. Documentation of medical invoices (evidencing their relationship to the claim) in a given payment cycle was frequently incomplete. The numerous RISKTRAC entries regarding late-pay or no-pay notices from medical offices indicate that medical invoices were not being paid within 22 days of receipt, as agreed by the Liberty Companies in the Customer Requirements. There are also references in RISKTRAC to an internally generated "late pay report" used by managers to track down late payments and develop some type of code to explain the reason for the late payment. Repeated requests from medical providers for past due or late fees and interest, and requests from regulatory agencies to pay these bills also confirm the lack of timely payments by the Liberty Companies. In some cases, indemnity payments were not paid on time, which sometimes resulted in administrative fines or penalties, for which the Liberty Companies charged Republic in violation of the Customer Requirements. Although 30 day Action Plans ("AP") were prepared, most of those AP's were cut-and-paste entries from the prior AP. Supervisor involvement was well documented in the reviewed files but the claims handlers never appeared to carry out the instructions of their supervisors. Documents not pertaining to the claim were found in many Paper Claims Files reviewed.

EXAMPLES: Failure to adhere to the open diary requirements is illustrated by

- Claim number 648149079 (details attached as **Appendix H**). Liens were filed by the state workers compensation agency due to the Liberty Companies failing to make required medical payments on behalf of the claimant.

Robert E. Maclin, III, Esq.
August 15, 2005
Page 23

- Claim # 390062717 (details attached in **Appendix H**). Liberty Companies' claims personnel are not responsive even to their own management when questions arise in connection with a file. In this case, a team manager asked questions of the claims handler in February and got no response. He then has to ask again on 5/30/2001 for the claims handler to please respond to his earlier request.

- Claim # 648149079 (details attached as **Appendix H**). The Liberty Companies' own attorney wrote to the claims handler indicating that the Liberty Companies' file was missing eight (8) specific and basic documents.

- Claim # 555265663 (details attached in **Appendix H**). The Liberty Companies were not paying the medical bills for the claimant, and the claimant's attorney requested a hearing for the sole purpose of getting the bills paid. The Liberty Companies agreed at the hearing to pay the bills. The result was further delay and expense to Republic.

- Claim # 555539709 (details attached in **Appendix H**). The Liberty Companies did not issue payments in time, and thus a penalty of $1900 was then paid. This increased the cost of the claim to Republic. Another entry dated 1/9/2002 says check was mailed late and a penalty is due. Thus, the payment of $1900.

- Claim # 555243354 (details attached in **Appendix H**). The Liberty Companies "forgot" to pay the employee's attorney fee bill, and were assessed a penalty of $1000 for failing to pay as directed by the court. If the Liberty Companies had paid the bills on time, it would have resulted in a savings of $1000 and Republic would not have this amount charged against it.

- Claim # 555286911 (details attached in **Appendix H**). The Liberty Companies were forced to pay $1497.77 as a penalty for late payment to the claimant. This penalty was a result of not paying benefits on time to the claimant. This amount was charged against Republic.

- Claim # 205154406 (details attached in **Appendix H**). The Liberty Companies paid $342.65 in penalties for not responding to medical requests and to the court. This amount was charged against Republic.

- Claim # 555243447 (details attached in **Appendix H**). In this file, the Liberty Companies were assessed a late penalty for refusing to pay benefits to the claimant in the amount of $432.92. This amount was also charged against Republic. Another error in this file concerns the fact that the claimant was overpaid his TTD benefits by $1470.87, and no effort to recover the funds is documented.

Robert E. Maclin, III, Esq.
August 15, 2005
Page 24

### 4. Chart Item Four: Reserves

A file reserve represents the claims handler's evaluation of the probable ultimate cost of the claim during the life of the file. As a general matter, reserves allow the insurer to set aside the funds necessary to pay any claims under a particular policy of insurance. In the case of a self-insured retention or large deductible, the file reserve has a direct effect on the amount of money the insured (such as Republic) must make available for payments in connection with the claims.

Under the SSI, "Reserves are to be set on probable ultimate cost basis with the first reserve set within ten days of receipt of claim." The Audit review indicated 290 files were found to not meet this requirement. There was no indication in the file that electronic worksheets were used to set reserves. Communication of reserve changes did not always take place in a timely fashion. Although reference was made that Republic or its representative was contacted, only a few acknowledgements for reserve changes from Republic personnel or their representatives were noted. I was not able to confirm actual correspondence between Liberty Companies claims personnel and Republic personnel, finding no evidence in the Claims Files to support or document such communication. This repeated and systematic failure resulted in Republic not having a true and accurate picture of its liabilities at any particular time. Indemnity and medical reserves were also noted to be overbooked.

EXAMPLES: Failure to adhere to the reserve requirements is illustrated by

- Claim # 390077010 (details attached as **Appendix H**). In this case, after the settlement terms had been completed, the Liberty Companies never adjusted reserves to properly reflect future potential cost. In this claim, the court awarded claimant $432.60/week until February, 2010 equaling $100,363.20. A "holiday credit" (in the nature of a setoff) is owed from the third party settlement, which the Liberty Companies were taking by reducing the current indemnity payments to the claimant. The owed PTD amount of $66,909 plus the paid amount of $69,220 equals $136,129, less the incurred of $420,065 leaves an overpayment of $283,936. The medical reserve by the Liberty Companies calculation is $1900 per year for 33 years plus current paid of $142,557 less the incurred of $242,201 leaves an overpayment of $36,944. In this file, the reserves were overbooked by a total of $320,880.

### 5. Chart Item Five: Surveillance

The use of surveillance is important to verify disabilities, injuries, and to uncover fraudulent claims. In order for surveillance to be effective, it must be done timely, discreetly; and the duration of the surveillance must be such that the investigator has a sufficient opportunity to observe the claimant. In addition, a competent and experienced investigator must

Robert E. Maclin, III, Esq.
August 15, 2005
Page 25

be used. As a first step, the investigator must be provided with accurate information enabling him to locate and properly identify the claimant.

The SSI is very specific about the situations in which surveillance is to be used, and that Republic or its designee is to have a significant role in determining the use of surveillance. The Audit review shows that 287 files were found not to be in compliance with the requirements for surveillance. Often, the surveillance, when requested, was three or four years after the accident; the vendor providing the surveillance did not have the description of the claimant or the correct address; and in several instances, only four (4) hours of surveillance was done. In some cases, surveillance was requested by Republic based on third party information that claimant was working or not injured, but the Liberty Companies never initiated surveillance. This repeated and systematic failure to perform surveillance resulted in incomplete investigative files, placing Republic at a disadvantage in the resolution of the claim.

EXAMPLES: Failure to adhere to the surveillance requirements is illustrated by

- Claim # 390077010 (details attached in **Appendix H**). The Liberty Companies ordered surveillance and found the claimant doing strenuous work for over 45 minutes with no apparent discomfort. Nothing was done with this information. It was not taken to the examining doctor for review or used in settling the claim.

- Claim # 390062012 (details attached in **Appendix H**). The Liberty Companies obtained surveillance video of the claimant working in a family business. Nothing was done to further investigate and pursue a closing this claim.

- Claim # 555261054 (details attached in **Appendix H**). The employee was found to have reached MMI and has also been given an AMA rating of 15% to the body as a whole. The Liberty Companies failed to do the requested follow-up surveillance for three years from the request date.

    6.  *Chart Item Six: Medical Management*

Medical management is employed to arrange and control the provision of medical services to the claimant, to monitor the assignment of independent medical management/rehabilitation firms, and to ensure IME's or IRE's are scheduled, and that the provider is supplied with the reasons for the independent medical exam. The primary purposes of employing medical management are ensuring that necessary and appropriate medical care is provided to the injured worker while simultaneously containing the costs of that care.

The Audit review indicates that 287 files were found not to be in compliance with the medical management requirements. (The one file that did not fail involved a fatality and no medical management was required.) I saw very little control being exercised over the medical management services. In several cases where the lost time exceeded two weeks, a medical

Robert E. Maclin, III, Esq.
August 15, 2005
Page 26

management firm was not used and Republic was not notified. I did not see that the claims personnel were sending IME physicians any reports prior to the claimant's scheduled appointment, in order to inform the doctor about the guidelines and job descriptions in order to facilitate the doctor's review of a worker compensation case file. Nor were expenses for managed care being sent to Republic's designee, Suzanne Flynn, for approval. One significant problem noted in these files was the constant rotation of case managers, which interfered with the claims handling process. The repeated and systematic failure to appropriately use medical case management resulted in a substantial loss of file control and supervision which had an impact on the cost of settlement and the expense handling of the file.

    EXAMPLES: Failure to adhere to the medical management requirements is illustrated by

- Claim # 471719193 (details attached in **Appendix H**). In this file, there is a note in RISKTRAC from a team manager citing the facts that the file lacks 30 day updates, a current action plan, nurse assignment information, and a following for return to work. The manager also asks for a medical update to be posted in medical "FF".

- Claim # 413199967 (details attached in **Appendix H**). The Liberty Companies did not pursue rehabilitation for the claimant. Doctor's notes say the claimant should begin light duty work but there is no evidence of trying to get him back to work. Also, doctor pushed for rehabilitation five months post-accident and nothing was done to set up rehabilitation for the claimant.

- Claim # 555522583 (details attached as **Appendix H**). The claimant was injured when a tire blew out, causing him to hit his head when the truck overturned. Because of headaches he was taken out of work. It took the Liberty Companies two years to get the medical attention he needed to correct his problem. Monthly reviews are also missing. This delay by the Liberty Companies extended the TTD payment and prolonged the time off for the employee.

- Claim # 390049319 (details attached as **Appendix H**). The Liberty Companies lost the right to secure an IRE because of failing to set the examination up within sixty (60) days after the end of TTD payments. As a result, Republic lost the ability to secure another examination of the claimant and to use the results of that examination in the negotiations and settlement of the claim.

- Claim # 555278137 (details attached as **Appendix H**). The claimant could not get his prescriptions filled because his pharmacy refused to honor the Liberty Companies' coverage since the bills were not being paid by the Liberty Companies in a timely fashion.

- Claim # 390109049 (details attached as **Appendix H**). It was noted the claimant was ready to return to work as of 5/2/2002. The Liberty Companies did not attempt to secure a permanency rating. The claimant's attorney filed a petition in January, 2003 and the Liberty Companies did not respond as of 12/16/2003, when it was assigned to defense counsel to respond. Republic is not allowed to settle the loss since no rating was secured by the Liberty Companies.

- Claim # 390043695 (details attached as **Appendix H**). The Liberty Companies' claims handler forgot to order the MMI examination to determine the TTD start date. This case is before a judge, and he is upset that the Liberty Companies have not resolved the permanency and treatment issues.

7. *Chart Item Seven: Return to Work*

As a general matter, the sooner an injured employee can be returned to work, whether on light duty or otherwise, the lower the cost of the claim during the life of the file. Another benefit is that the employee returns to productivity, rather than becoming dependent on disability benefits as a substitute for wage income. As set forth in the SSI, Republic is committed to a return to work philosophy, in order to get injured claimants back on the job as quickly as is "medically and operationally" possible.

The Audit review indicates that 283 files did not meet the requirements of implementing Republic's return to work philosophy. In several cases, the case manager would not fully investigate the possibility of modified work for injured worker. Action plans were not implemented as required. No file documentation existed to indicate the case handler had any knowledge of the specific job description of the injured worker. In cases where the doctor indicated early in a claimant's treatment that he would never be able to return to his previous job, the Liberty Companies made no effort to qualify the injured worker for another job, which resulted in extended benefit payments to the claimant. The repeated and systematic failure to comply with this requirement resulted in the return to work program not being used to its full capabilities, and thus kept some employees on indemnity payments versus returning to work.

EXAMPLES: Failure to adhere to the return to work requirements is illustrated by

- Claim # 413199967 (details attached as **Appendix H**). The Liberty Companies did not pursue Return To Work or undertake rehabilitation for the claimant. Doctor notes say the claimant should begin light duty work and no evidence of trying to get the claimant back to work. Also, doctor pushed for rehabilitation five months post accident and nothing done to set up rehabilitation for the claimant by the Liberty Companies.

Robert E. Maclin, III, Esq.
August 15, 2005
Page 28

### 8.     *Chart Item Eight: Subrogation*

Subrogation is the collection of monies previously paid under a contractual relationship for damages incurred as the result of wrongdoing on the part of a third party. The subrogation would then occur between the paying carrier (in this case, Republic through its agent, the Liberty Companies), and the wrongdoer. In these worker compensation cases, if the worker's injury was the result of the actions of a third party, such as another driver in an auto not owned by Republic, then some or all of the payments made on behalf of Republic by the Liberty Companies are recoverable and should then be credited back to Republic. However, for this to take place, the accident has to be investigated including obtaining statements and/or police reports, retaining as much physical evidence as possible, and placing proper parties on notice. Proper documentation must also be completed, which varies from one jurisdiction to another.

The Audit review shows that 21 files had subrogation opportunities that were not pursued to a correct conclusion. Subrogation efforts on some files were not completed and these failures to carry out the subrogation resulted in Republic not recovering monies that would have reduced the net payout to the claimant by Republic. The failure to appropriately handle subrogation claims appears to be an outgrowth of the overall failure to properly investigate claims.

EXAMPLES:  Failure to adhere to the subrogation requirements is illustrated by

- Claims 555258420 and 555258415 (details for both attached in **Appendix H**). These claims concern a motor vehicle accident in which the claimants are the driver of a Republic truck and the helper. In this accident, the third party vehicle turned left in front of the Republic truck causing the accident. The third party was also under the influence of marijuana. Both employees suffered severe injuries and it was determined by the Liberty Companies that the third party had only $1,000,000 in motor vehicle insurance coverage. The Liberty Companies filed a lien against any tort recovery from the third party but decided to drop pursuit of recovering the funds paid out on this claim, saying recovery did not look good. Subsequent investigation determined that the employees were made whole, receiving $1,600,000 in a civil action against the owner of the third party vehicle, with the owner paying the excess judgment amount of $600,000 over and above the policy limits of the motor vehicle coverage. The failure of the Liberty Companies to follow through on the subrogation in this case has resulted in Republic being deprived of recovering significant amounts paid to and on behalf of its employees.

- Claim # 205125800 (details attached in **Appendix H**). This was an auto accident with clear liability, where the third party backed into the employee. Her third party suit was settled for $800,000. The Liberty Companies did collect a portion of the expenses. However, the failure on the part of the Liberty Companies here is that when the Liberty Companies filed to recover the no-fault funds available to

Republic, a copy of the police report was not included and without this information, the claim was denied. The Liberty Companies then had ninety (90) days to appeal and include the report with the appeal. This was not done. When the ninety days expired, the Liberty Companies could not file an appeal and the ability to collect the funds was lost. The failure of the Liberty Companies to file a complete application for the recovery of the no-fault benefits, and then to properly file an appeal within the ninety day limit barred Republic from recovering the monies due to Republic by the wrongdoer.

- Claim # 55525331 (details attached in **Appendix H**). This case involved a Republic employee working to load garbage at a customer site, when a homemade rigged chain broke on a dumpster and allowed the dumpster door to hit the employee in the head, causing severe injuries. The Liberty Companies did nothing on the subrogation investigation and made comments in the file that there are no third party issues. The employee filed a suit against three parties who are presently trying to settle the case with the employee. The Liberty Companies are not involved in the subrogation and is not trying to protect the interest of Republic. As a result of the Liberty Companies' failures in investigating the subrogation potential against the third parties in this case, Republic is not involved in the discussions and settlement of this case thus depriving Republic of recovering funds paid to its employee as an obligation under its worker compensation coverage.

- Claim # 555246606, 555554330, and 555555767. (Details of all of these files are attached in **Appendix H**.) All three of these files concern auto accidents where the actions of the Liberty Companies failed to protect Republic's interests. In the case of claim # 555246606, the Liberty Companies passed the claim to the Central Recovery Unit for recovery of monies paid, but suit was not filed within the statute of limitations and there was no further possibility of recovery. In claim # 555554330, the Liberty Companies did not take the statement of the passenger of the third party vehicle at the time of the accident. Such a statement would have revealed that liability was favorable to Republic's interests, with a $1,000,000 umbrella policy available, in addition to the underlying automobile insurance coverage. In claim # 555555767, the Liberty Companies again allowed the statute of limitations to run without filing suit.

9. *Chart Item Nine: Litigation management*

In instances in which the claimant retains an attorney, litigation management is important in order to ensure that the decisions regarding defense or settlement of the claim is made as soon as reasonably possible. In addition, it is imperative that once defense counsel is retained, good communication is maintained with that counsel, in order to facilitate defense or settlement.

Robert E. Maclin, III, Esq.
August 15, 2005
Page 30

The SSI requires Republic to have an active role in the selection of defense counsel. However, the Audit review indicates that 223 files did not meet the litigation management requirements. In many cases, the Liberty Companies chose defense counsel without input from Republic, or without contacting Republic's Risk Manager. Initial attorney involvement on all claims was always by the Liberty Companies' in-house legal staff. (I was unable to determine if any Liberty Companies' internal policy required such action.) There is very little defense strategy discussion in the files, and assignment to outside counsel was not confirmed. The repeated and systematic failure of Liberty to allow Republic control of its litigation files resulted in loss of supervision and control of the files.

EXAMPLES: Failure to adhere to the litigation management requirements is illustrated by

- <u>Claim # 648148613</u> (details attached in **Appendix H**). The Liberty Companies' attorney represented Republic in court with no settlement authority. The Liberty Companies did not call Republic's designee, Suzanne Flynn, until three months later asking for authority to settle this case. (details for both attached in **Appendix H**).

- <u>Claim # 205108555</u> (details attached in **Appendix H**). The Liberty Companies' did not answer the complaint, failed to provide proper legal representation to Republic, and did not have a designated strategy to defend the case. A RISKTRAC note from the Liberty Companies' in-house defense counsel states that these failures are not in accord with the SSI.

- <u>Claim # 390109049</u> (details attached as **Appendix H**). It was noted the claimant was ready to return to work as of 5/2/2002. The Liberty Companies did not attempt to secure a permanency rating. The claimant's attorney filed a petition in January, 2003 and the Liberty Companies did not respond as of 12/16/2003, when it was finally assigned to defense counsel to respond. Republic is not allowed to settle the loss since no rating was secured by the Liberty Companies.

    10.    *Chart Item Ten: Settlement*

In the insurance industry, claims must be settled within the settlement authority obtained from the insured or its designee, and initial settlement authority is typically obtained at some point prior to the commencement of settlement negotiations. It is not unusual for the carrier to have the right to settle claims up to an agreed dollar amount without having to obtain further advance approval from the insured. The failure to obtain authority or to settle within the authority granted removes the ultimate decision regarding settlement from the insured.

Under the SSI, the Liberty Companies had the authority to settle claims up to $10,000 without any further approval from Republic or its designee, Suzanne Flynn. For settlements

Robert E. Maclin, III, Esq.
August 15, 2005
Page 31

above $10,000, a series of requirements applied, all of which were intended to keep ultimate decision-making authority regarding settlement in the control of Republic. The Audit review indicates 250 files did not meet these requirements. Some files were settled beyond the authority granted by Republic, and no telephone conversations were noted in the files to indicate an increase in the authority. In some files, with settlements over $10,000, the required discussions and approvals were not found in the files. In some files, authority was granted by Republic and the Liberty Companies then extended a "lowball" offer to the claimant, resulting in litigation and further expense. In other cases, the Liberty Companies had offers to settle from claimant's counsel within the authority granted by Republic, and failed to complete the settlement. This resulted in further medical treatment for the claimant, and his counsel rescinding the offer, filing suit, and Republic paying substantially more in the eventual settlement. It was found that the Liberty Companies in many instances did not respond to settlement demands in a timely manner which resulted in higher claims cost to Republic.

EXAMPLES: Failure to adhere to the litigation management requirements is illustrated by

- Claim # 648148610 (details attached in **Appendix H**). Republic authorized $70,000 to settle this case and the Liberty Companies paid out $108,445, paying $38,445 over the authority granted.

- Claim # 648148569 (details attached in **Appendix H**). Settlement authority was $150,000 but the Liberty Companies settled this case for $450,000.

- Claim # 555261047 (details attached in **Appendix H**). Settlement was for $9000 and within authority of the Liberty Companies. One key element of the settlement was to keep the medicals open for a period of time. When the file closed, it had a total paid of $16,914.59. The Liberty Companies' payment on this file for $16,914.59 while having authority for no more than $10,000. There is no documentation evidencing that Republic authorized this payment.

- Claim # 555297232 (details attached in **Appendix H**). Settlement was for $22,750, upon approval from the Liberty Companies' claims manager. No information in the file indicates that Republic ever agreed to this offer or was even informed.

- Claim # 555265220 (details attached as **Appendix H**). The Liberty Companies offered $20,000 to the claimant without authority from Republic. The Liberty Companies increased their settlement offer an additional $20,000, to $40,000 without any documentation of authority from Republic in excess of $10,000.

- Claim # 555243447 (details attached as **Appendix H**) was settled for $216,000 when Republic had authorized $215,000.

Robert E. Maclin, III, Esq.
August 15, 2005
Page 32

- Claim # 555281624 (details attached as **Appendix H**). The claimant was rated with a 3% impairment rating, and the Liberty Companies paid the claimant $100,000. There is no documentation evidencing any authority from Republic in excess of $10,000.

- Claim # 413199967 (details attached as **Appendix H**). Injury was a double amputation above the knee. RISKTRAC states that the Liberty Companies will not enter into settlement negotiations with the claimant's attorney and have no intention of settling this case, because the economic effect of settling the case is too great and it is less expensive to keep paying medical and indemnity payments indefinitely.

- Claims # 555520651 and # 555552105 (details of these files are all attached as **Appendix H**). Both files indicate the claimants have indemnity claims but no settlement was offered. One claimant had knee surgery and no further comments made on possible settlement. The second file indicates the claimant was MMI and had a 4% rating with driving restrictions and no settlement offered.

## V. CONCLUSIONS

Because files continued to be reviewed, the Audit should not be considered to be complete. However, having reviewed 292 Claims Files in depth at this juncture, it is clear that the failures of the Liberty Companies to conform to the SSI Practices and Procedures are pervasive. Based on the two phases of the in depth file review and based on the failures of the Liberty Companies to comply with the SSI, as set forth above, for each claim reviewed I established the point in time or identified an occurrence (specific to each claim) at which the file, if properly handled, administered and managed, would not have resulted in the Liberty Companies incurring any further/inappropriate/unnecessary costs on Republic's behalf. Each of these dates for the files examined is as set forth in **Appendix H**. This information was also provided to Snoddy Consulting, Inc. for purposes of their analysis.

Out of the 292 files reviewed to date, 290 failed, containing 2523 violations. Chief among these were:

- Repeated and systematic instances of failure to conduct timely investigations.

- Repeated and systematic instances of failure to contact the injured employee within the timeframe required and agreed to by the Liberty Companies and Republic. This includes the Liberty Companies' own 24/48/48 hour contact standard, which was routinely not followed.

- Repeated and systematic failure to resolve claims in a timely manner. The Audit review indicated that in many files, months went by without any activity.


Robert E. Maclin, III, Esq.
August 15, 2005
Page 33

> Authority to settle claims, once granted, was not acted on, resulting in claims life being extended and costing Republic additional monies.

- Repeated and systematic failure to respond to claims correspondence in a timely manner. Offers to settle claims went unanswered for months. Delays in medical and/or indemnity payments resulted in orders to pay from state regulatory bodies, and in penalties being assessed against the Liberty Companies and ultimately charged to Republic, in violation of the parties' agreement.

- Repeated and systematic failure to document the claims file as required, regarding how the claim is being managed. Also noted were lack of making settlement offers or denying claims, pushing for board involvement, and timely ultimate resolutions of claims.

- Repeated and systematic failure to handle claims in accordance with policy provisions and applicable standards, statutes, rules, regulations, and the contracts with Republic. The Audit review indicated there were settlement payments made which were considerably in excess of settlement authority, without approval from, or sometimes even notice to, Republic. Claim files were not referred to defense attorneys selected by Republic, in some case even after directives from Republic about counsel to be used. In some cases, advances against settlements or other payments to the claimant were sent with no written agreement. In a number of these cases, the claimant later re-opened the claim, resulting in increased costs by reason of additional payments to the claimant.

- Repeated and systematic failure to reserve losses to reflect Republic's exposure. While files were reserved, in many instances they were under-reserved until the file came close to settlement or review by Liberty Companies' home office management. In many cases, a reserve was set which would have been adequate assuming Republic had exposure, but no determination had been made regarding liability.

- Repeated and systematic failures to collect subrogation funds recoverable based on the liability of a third party, including numerous failures to file suits within the statute of limitations.

- Repeated and systematic overpayment of claims, or duplicate payment of claims.

My conclusions set forth herein are based on my review of RISKTRAC and the Paper Claims Files. While the SSI clearly provide that "All activity must be documented in the file or the computer, If it is not documented it is understood not to have happened", I specifically note that both the RISKTRAC files and the Paper Claims Files are incomplete, and that many documents are clearly missing from each file. Accordingly, should additional information be provided which would impact on my findings and conclusions, I reserve the right to consider any such information and will advise you of any changes to the findings and conclusions in this report.

Robert E. Maclin, III, Esq.
August 15, 2005
Page 34

Respectfully submitted,

*[signature: Thomas L. Ballard]*

Thomas L. Ballard, CIE, FHMI, ALHC
for T. L. Ballard Consulting Service, LLC