UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
**FILED**

OCT 2 0 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 03-494-KSF

REPUBLIC SERVICES, INC.                                      PLAINTIFF

V.                          **OPINION AND ORDER**

LIBERTY MUTUAL INSURANCE
COMPANY, *et al.*                                            DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is currently before the Court on the defendants' motion to disqualify Craig S. Pynes and the remaining members of Roxborough, Pomerance & Nye from *pro hac vice* representation of the plaintiff. [DE #213] This matter has been fully briefed, and is now ripe for review.

## I.   RELEVANT FACTUAL BACKGROUND

Plaintiff, Republic Services, Inc. ("Republic") asserts that it instituted this lawsuit because the defendants, Liberty Mutual Insurance Company, Liberty Insurance Acquisition Corporation f/k/a Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, LM Insurance Corporation, the First Liberty Insurance Corporation, and Helmsman Management Corporation, Inc. (the "Liberty Companies"), collectively failed to properly handle, administer and manage Republic's self-insured workers' compensation program. Republic alleges that the Liberty Companies made representations and assumed certain common law and contractual duties pertaining to their administration of Republic's workers' compensation program and Republic now seeks to recover from the Liberty

Companies damages sustained as a result of the Liberty Companies' failure to properly administer the workers' compensation program.

This action has been pending in this Court since it was removed from Jessamine Circuit Court on November 12, 2003. [DE #1]  On May 2, 2006, this Court granted Republic's motion for admission *pro hac vice* of Nicholas P. Roxborough, Michael B. Adreani and Craig S. Pynes as co-counsel for Republic in this action. [DE #112]    Thereafter, on August 1, 2006, the Liberty Companies filed this motion to disqualify on the grounds that Craig S. Pynes and another member of Roxborough, Pomerance and Nye ("the Roxborough Firm") have clear conflicts of interest in undertaking representation in this case, and their disqualification should be imputed to the entire firm. [DE #213]

## II.    THE LIBERTY COMPANIES' MOTION TO DISQUALIFY

In support of their motion to disqualify, the Liberty Companies allege that two attorneys in the Roxborough Firm, Karen Gichtin and Craig Pynes, previously represented the Liberty Companies in matters both related and unrelated to the issues in this action.  Before joining the Roxborough Firm, both Gichtin and Pynes practiced law with Kern & Wooley, LLP in Los Angelos, California, where some portion of their practice was dedicated to representation of the Liberty Companies.

The Liberty Companies allege that Gichtin was heavily involved in *RemedyTemp, Inc. v. Liberty Mut. Fire Ins. Co.*, C.D. Cal., 8:04-cv-00385, an action involving similar issues currently before the Court in this action.  During the course of her representation of the Liberty Companies in the *RemedyTemp* matter, the Liberty Companies allege that Gichtin became familiar with the Liberty Companies' internal claims practice, confidential and privileged documents, and overall litigation strategy.  Pynes, the Liberty Companies alleges, also devoted the majority of his time at

-2-

Kern & Wooley to the defense of the Liberty Companies in matters involving bad faith and fraud claims, gaining information about the Liberty Companies' policies and procedures related to employee progression, employee evaluations, and general claims file management and recordkeeping.

The Liberty Companies argue that attorneys Roxborough, Adreani, and Pynes have entered their *pro hac vice* appearances and taken depositions on behalf of Republic without first disclosing their connection to Liberty Mutual by and through Gichtin and Pynes' former employment with Kern & Wooley, and without disclosing that Gichtin is a now an attorney with the Roxborough Firm. The Liberty Companies rely on the affidavit of Lisa Kralik Hansen, a former attorney at Kern & Wooley. Hansen testifies that during her employment at Kern & Wooley, a significant portion of her practice involved "representing the Liberty Mutual group of companies in insurance coverage, insurance 'bad faith' and other related matters." Furthermore, Hansen testifies that Pynes, during his employment at Kern & Wooley,

> worked almost exclusively on matters for the Liberty Mutual group of companies (hereinafter "Liberty") in both litigated and non-litigated matters pertaining to insurance coverage and the defense of insurance "bad faith" actions, based on a number of theories that would have included breach of contract, breach of the implied covenant of good faith and fair dealing and fraud. While representing Liberty, Craig Pynes was involved in the review of Liberty's claims files and/or claims manuals, written discovery, mediation and strategy discussions, document productions (including analyses of privilege materials) and the preparation of legal memoranda. Mr. Pynes also had some client contact with claims personnel with Liberty. Mr. Pynes would have been exposed to confidential information concerning Liberty Mutual's practices and procedures, strategies for handling litigation, claims operation, general claim file management and record keeping.

[DE #213, Ex A]

Hansen also testifies that during her employment with Kern & Wooley, she worked closely

with Gichtin on a daily basis as one of her immediate supervising attorneys. According to Hansen, Gichtin worked extensively on *RemedyTemp*, which involved Liberty Mutual's claims handling for a national market workers' compensation customer. Hansen testifies that Gichtin, as an active member of Liberty Mutual defense team in the *RemedyTemp* matter, was involved in all aspects of the litigation. Additionally, Hansen claims that Gichtin also worked on several other matters for Liberty involving insurance coverage, "bad faith" claims, claims for equitable relief and contribution, and claims of malicious prosecution. [*Id.*]

In its reply, the Liberty Companies submit, *inter alia*, portions of the depositions of Pynes, Hansen, and Gichtin as further evidence of a conflict requiring disqualification. Based on affidavits, depositions and other evidence, and relying on Rules 1.9 and 1.10 of the Kentucky Rules of Professional Conduct, the Liberty Companies argue that a conflict of interest exists because both Pynes and Gichtin have represented the Liberty Companies in matters "substantially related" to the present litigation, and that Pynes and Gichtin's conflicts of interest must be imputed to the entire Roxborough Firm.

The Liberty Companies' reply also contains a claim that the Roxborough Firm's paralegal engaged in unethical behavior by contacting the Liberty Companies' expert witness. The Liberty Companies argue that this behavior further justifies disqualification of the Roxborough Firm. While Republic has filed a rejoinder brief to address this allegation, the Court declines to consider this allegation in the context of this motion to disqualify.

## III. REPUBLIC'S RESPONSE TO THE LIBERTY COMPANIES' MOTION TO DISQUALIFY

In response to the Liberty Companies' motion to disqualify, Republic first argues that Pynes

-4-

only worked at Kern & Wooley for 8 months, and during that time, never handled any workers' compensation bad faith claim handling cases.[1] Additionally, Pynes' declaration reveals that he never received any training in Liberty's bad faith claim handling practices in the workers' compensation area; that during his employment at Kern & Wooley, he never saw Liberty's workers compensation Best Practices Manual, or any other workers' compensation claim manuals; that none of the Liberty Companies' Rule 30 designees deposed in this case ever dealt with Pynes because they work in Liberty's workers' compensation division - a group with which Pynes never had any involvement. [DE # 230, Ex A] While Pynes may have had access to confidential claims handling materials outside the workers' compensation context, Republic contends that the Liberty Companies have presented no evidence that Pynes actually looked at these materials, or is presently utilizing any knowledge gained from reviewing such materials in this matter.

Turning next to Gichtin's involvement in this action, Republic argues that Gichtin has only worked for the Roxborough firm since March 29, 2006. Upon her hiring, Gichtin testifies that she is "walled off" from participating in any Liberty matters. She is paid an annual salary and will not be apportioned any specific part of the fee involving the Liberty cases. Gichtin testifies that from the date of her hiring by the Roxborough firm, she has

> not worked on any matters involving Liberty. Furthermore, other than with regard to the instant declaration, I have not been involved in any discussions concerning Liberty. I am precluded from using the Firm's only paralegal, as it is my understanding that she works on Liberty matters. Rather, for paralegal type projects, I utilize one of our file clerks.

---

[1]Republic's response, including Pynes' declaration, states that Pynes never handled any workers' compensation cases with the extremely limited exception when Pynes' "assisted another attorney with reviewing claim files for purposes of redacting personal identifying information of claimants, such as their social security numbers and telephone numbers."

[DE #230, Ex E]

Republic contends that the Liberty Companies have waived the conflict issue.  Republic alleges that a voice mail message left with Bill Cupelo, Liberty Mutual's Executive Vice President and Senior Corporate Counsel, near the end of April 2006 informed the Liberty Companies that the Roxborough Firm would be entering an appearance as counsel for Republic in this matter. [DE # 230, Ex C].  Then, on May 1, 2006, Republic filed its motion for attorneys Roxborough, Adreani, and Pynes to be admitted *pro hac vice.*  Nevertheless, Republic argues that the Liberty Companies waited until one day after the discovery cutoff - August 1, 2006- to file its motion to disqualify.

Moreover, Republic argues that during the two and one half years Pynes has been associated with the Roxborough Firm and the Roxborough Firm has been involved in the *RemedyTemp,* the Liberty Companies never objected to the Roxborough's Firm's representation in that matter.  As a result, Republic argues that the Liberty Companies' delay in objecting to the Roxborough Firm's representation of Republic in this matter is simply an effort to gain a tactical advantage in this action.

## IV.   ANALYSIS

Motions to disqualify are governed by two sources of authority.   First, all attorneys are bound by the local rules of the court in which they appear.  Joint Local Rule 83.2(a)(4) permits attorneys not admitted to the Eastern District of Kentucky to seek admission *pro hac vice,* provided they abide by the rules of the Kentucky Supreme Court governing professional conduct.  In its Order granting *pro hac vice* admission to Pynes, Adreani and Roxborough, the Court also noted that these attorneys are subject to the rules of the Kentucky Supreme Court governing professional conduct. [DE #112]  The Kentucky Rules of Professional Conduct, and the judicial decisions interpreting those rules and standards, govern the professional conduct of the attorneys appearing in the Eastern

-6-

District of Kentucky.

Additionally, federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of the parties. *See F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995); *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994). A district court has inherent authority to disqualify an attorney as a sanction for professionally unethical conduct. *See Cavender v. U.S. Xpress Enters, Inc.*, 191 F.Supp.2d 962, 965 (E.D.Tenn. 2002) (a court's authority to disqualify an attorney for unethical behavior derives from the local rules of the court and federal law). However, a district court "does not possess unfettered discretion to disqualify counsel." *Kitchen v. Aristech Chemical*, 769 F.Supp. 254, 258 (S.D.Ohio 1991). Such an extreme sanction "should only be utilized when there is a 'reasonable possibility that some specifically identifiable impropriety' actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *SST Castings, Inc. v. Amana Applicances, Inc.*, 250 F.Supp.2d 863, 865 (S.D.Ohio 2002)(*citing* Kitchen, 769 F.Supp. at 257-79). Thus, motions to disqualify "should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982). When confronted with a motion to disqualify, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of its choice. *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988). Resolving these competing interests requires the court to balance the interest of the public in the proper safeguarding of the judicial process together with the interests of each party to the litigation. *General Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 715 (6th Cir. 1982).

-7-

The Kentucky Rules of Professional Conduct, contained in Kentucky Supreme Court Rule

3.130, guide this court's review of the conduct at issue in this matter.  Specifically, Rule 1.9, entitled

**"Conflict of Interest: former client,"**  provides as follows:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) Represent another person in the same of a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client  consents after consultation;

(b) Represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly associated had previously represented a client
(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer had acquired information protected by Rule 1.6 and 1.9(c) that is material to the matter; unless the former client consents after consultation.

(c) A lawyer who has formerly represented a client in a matter of whose present or former firm has formerly represented a client in a matter shall not thereafter:
(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known; or
(2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

SCR  3.130(1.9).    Rule  1.10,  entitled  **"Imputed  disqualification:  general  rule,"**  governs

disqualifications which may be imputed to an entire firm.  This rule provides:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.

(b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
(1) The matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
(2) Any lawyer remaining in the firm has information protected by

-8-

Rules 1.6 and 1.9(b) that is material to the matter.

(c) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7.

(d) A firm is not disqualified from representation of a client if the only basis for disqualification is representation of a former client by a lawyer presently associated with the firm, sufficient to cause that lawyer to be disqualified pursuant to Rule 1.9 and:
> (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no specific part of the fee therefrom; and
> (2) written notice is given to the former client.

SCR 3.130 (1.10).

In cases on disqualification based on former clients, the Sixth Circuit, following circuits nationwide, developed a three part test in *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990). The *Dana* test analyzes: (1) whether a past attorney/client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) whether the subject matter of those relationships is substantially related; and (3) whether the attorney acquired confidential information from the party seeking disqualification. *Id.* at 889. The party moving for disqualification bears the initial burden of persuasion and proof on its motion. *Bartech Industries, Inc. v. International Baking Co. Inc.*, 910 F.Supp. 388, 392 (E.D.Tenn. 1996). A decision to disqualify counsel must be based on a factual inquiry conducted in a manner which will afford appellate review. *General Mill Supply Co.*, 697 F.2d at 710.

While the three-part test enunciated in *Dana* should guide this court's analysis, it is also important to consider how Kentucky courts have interpreted and applied Rules 1.9 and 1.10. In *Lovell v. Winchester*, 941 S.W.2d 466 (Ky. 1997), the appellants consulted an attorney, Charles King, regarding a claim alleging a shortage of acreage in land purchased from Minnie Kidd. The

appellant's affidavit indicated that on April 17, 2002 "they had visited King at his office, discussed their claim, and left their original documents pertaining to the land transaction with King. Approximately one month later, King returned the documents along with a letter declining representation." *Id.* at 467. In 1994, the appellants subsequently retained another attorney and sued Kidd. Kidd then engaged King to defend her in the same action.

The appellants moved to disqualify King pursuant to Rules 1.7 and 1.9. of the Kentucky Rules of Professional Conduct. In his defense, King argued that he recalled nothing about the consultation with the appellants and was only able to recall their visit to his office by referring to an old office calendar. The circuit court denied the motion to disqualify, and the appellants sought a writ of mandamus in the Court of Appeals. The Court of Appeals denied relief, without comment, and an appeal was taken to the Kentucky Supreme Court.

The Kentucky Supreme Court first held that the appellants were "clients" of King for purposes of Kentucky Rules of Evidence 503(a)(1) and the attorney client privilege attached. Even though King argued that disqualification was unnecessary due to his lack of recall regarding the consultation with the appellants, the Kentucky Supreme Court held:

> we believe that the situation creates a perception of betrayal and disloyalty which cannot be condoned. To sanction this professional conduct merely on the claim that he recalls nothing of the prior contact impairs public confidence in the legal system. Further, there is the potential to prejudice clients in the employ of legal counsel. Maintaining public confidence in the legal system requires that preservation of client confidences should outweigh the interests of individual lawyers and individual clients in freely contracting with each other. Client confidence should prevail among these competing interests. Thus, we are of the opinion that granting the extraordinary relief requested by the Appellants is consistent with the goals of KRE 503 and the policies underlying the Rules of Professional Conduct.

*Id.* at 467-68. The Kentucky Supreme Court went on to note that "[e]ven though the comment to

-10-

Rule 1.9 specifically rejects the 'appearance of impropriety' standard in favor of a fact-based test applied to determine whether the lawyer's duty of loyalty and confidentiality to a former client will likely be compromised by the subsequent representation, the appearance of impropriety standard is still a useful guide for ethical decisions." *Id.* at 468. In reaching this decision, the Kentucky Supreme Court relied on a similar case from Arkansas, where the Arkansas Supreme Court held that even though the "appearance of impropriety standard" was not adopted as part of the Arkansas rules of professional conduct, lawyers must avoid the appearance of impropriety because it is an integral component of the rules of professional conduct. *Id.* (*citing First American Carriers, Inc. v. Kroger Co.*, 787 S.W.2d 669 (Ark. 1990). In the Arkansas case, a law firm was disqualified even though no confidential information was obtained and the contacts were minimal. *First American Carriers, Inc.*, 787 S.W.2d at 673.

The Kentucky Supreme Court again addressed this issue in *Jaggers v. Shake*, 37 S.W.3d 737 (Ky. 2001). In *Jaggers*, the appellants sought to compel the trial judge to disqualify counsel for the appellee based on an alleged conflict of interest. The Kentucky Supreme Court reaffirmed the appearance of impropriety standard, but held that it was not implicated in this case because the affected parties had waived any conflict, and "the mere fact of two attorneys in the same firm representing a party on the one hand and being adverse to that person as a witness in another case on the other hand is too attenuated to create an appearance of impropriety." *Id.* at 740.

In an opinion entered this week, the Sixth Circuit addressed the issue of imputed disqualification currently before the Court. In *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Alticor, Inc.*, ___ F.3d ___, 2006 WL 2956522 (6th Cir. October 18, 2006), the court outlined the facts as follows:

-11-

> Attorney John Egan was employed by plaintiff National Union's law firm, Plunkett, from September 2003 until July 11, 2006. During that time, Egan represented this same plaintiff in this very case and in other insurance-related matters involving defendant, Alticor. Specifically, Egan spent forty percent of his billable time representing plaintiff in insurance-coverage disputes against defendant Alticor; he participated in depositions, document production and strategy sessions, and he drafted pleadings, motions briefs, and reports for plaintiff. Indeed, in this very action, Egan drafted plaintiff's complaint for declaratory judgment and the FED. R. CIV. P. 26 initial disclosures. In July 2006, Egan left the employ of Plunkett and, on July 17, 2006, became an associate with defendant's law firm, Wilson Young. The final briefs in this case were filed by the parties on June 1, 2006.

*Id.* at *1. The plaintiff filed its motion to disqualify based on Michigan's Rules of Professional Conduct governing disqualification and imputed disqualification. Michigan's rules at issue in *National Union* are substantially similar to Rules 1.9 and 1.10 of the Kentucky Rules of Professional Conduct. Because of Egan's former representation of National Union, the Sixth Circuit held that Rule 1.9(a) disqualified Egan from representing Alticor. Moreover, the Sixth Circuit held that based on this disqualification and the clear language of Rule 1.10(a), no attorney in Egan's new law firm may represent Alticor or any other defendants-appellants against National Union in this matter. Under the circumstances of the case, the Sixth Circuit determined that Wilson Young cannot "avoid imputed disqualification by 'screening' Egan from this matter, no matter how diligently." *Id.* at *3.

Considering the Kentucky Rules of Professional Conduct and the relevant caselaw set out above, the Court now turns to the specific facts at issue in this case.

## A.   PYNES

Prior to joining the Roxborough Firm on March 24, 2004, Pynes practiced law at Kern & Wooley in Los Angeles, California for approximately 8 or 9 months. [DE #230, Ex A] While at Kern & Wooley, Pynes did not handle any workers' compensation bad faith claim actions for the Liberty Companies or any other insurer, with one limited exception where he reviewed claim files for

-12-

purposes of redacting personal identifying information of claimants. Otherwise, Pynes worked on bad faith litigation and coverage for non-workers' compensation lines of insurance on behalf of Liberty and other insurers.

Under both Rule 1.9 and the *Dana* test articulated by the Sixth Circuit, the court must first determine whether or not Pynes' representation of the Liberty Companies was substantially related to the issues currently before the court. In deciding whether the prior and present matters are substantially related, the district court must examine the precise nature of the relationship between the present and former relationships. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1029 (5th Cir. 1981). The substantial relationship test has only been met "when the moving party delineates with specificity the subject matters, issues, and causes of action presented in former representation." *Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 730 (11th Cir. 1988). The Sixth Circuit has avoided narrow interpretations of whether a representation is substantially related. *See General Electric Co. v. Valeron Corp.*, 608 F.2d 265, 267 (6th Cir. 1979)(holding that preparation of patent applications was substantially related to a later patent infringement case because the attorney had access to confidential files relating to all patents).

While Pynes' representation of the Liberty Companies in non-workers' compensation matters was not substantially related to the issues currently before this Court, he did represent the Liberty Companies in *Tony's Fine Foods, Inc. v. Liberty Mutual Insurance Co.*, case number 2002067108, filed in the Superior Court of the State of California, County of Alameda.[2] A review of the Complaint in *Tony's Fine Foods* reveals claims for breach of contract, breach of the duty of good

---

[2]Such representation is sufficient to create the attorney-client relationship contemplated by the first prong of the *Dana* test requiring a "past attorney-client relationship."

-13-

faith and fair dealing, negligence, unfair business practice (including improper policy and marketing manipulations, misleading and fraudulent advertising and illusory coverage of the employer liability policy), all based upon a contractual relationship between Tony's Fine Foods and Liberty Mutual Insurance Company. Pursuant to their contractual relationship, Liberty Mutual, in return for substantial premiums, sold Tony's Fine Foods annual liability insurance polices which provided insurance coverage for, among other things, workers' compensation and employers' liability. The facts and issues involved in the Liberty Companies defense of the *Tony's Fine Foods* case, while involving different claims files, are substantially the same as the facts and issues currently before this court - the mishandling of the Tony's Fine Foods and Republic's workers' compensation programs. Certainly, the same defenses, strategy and litigation tactics are implicated in both matters.

In *Tony's Fine Foods*, Pynes was directed by a supervising attorney to prepare a privilege log; however, he does not remember the specific case, and testified in his deposition that the project took just a few hours. [DE # 230 Ex A, DE # 233, Ex 1] Rule 1.9, however, does not require that Pynes recall the representation or remember the specifics of the case. The fact that Pynes represented the Liberty Companies in a substantially related matter, and is now adverse to the Liberty Companies, is a conflict of interest under Rule 1.9(a). Since the Liberty Companies have not consented after consultation, Pynes' representation of Republic is in violation of this rule. Additionally, Pynes' representation of the Liberty Companies is analogous to the disqualified attorney's representation at issue in *Lovell*. Based on the Kentucky Supreme Court's holding in *Lovell*, the appearance of impropriety alone is sufficient to disqualify Pynes from representation of Republic against the Liberty Companies in this action.

Even if Pynes' former representation of the Liberty Companies did not rise to the level

-14-

requiring disqualification under 1.9(a) or the appearance of impropriety standard, Pynes would also be disqualifed under Rule 1.9(b) and the third prong of the *Dana* test, both of which require that Pynes "acquired" confidential information. During his employment at Kern & Wooley, other attorneys at that firm represented the Liberty Companies in the *RemedyTemp*. A review of the Complaint in *RemedyTemp* reveals that RemedyTemp asserted claims against Liberty Mutual Fire Insurance Company for tortious breach of the implied covenant of good faith and fair dealing, unfair business practices, and breach of contract based on a contractual relationship between RemedyTemp and Liberty whereby RemedyTemp procured workers' compensation insurance policies from Liberty. [DE #213, Ex 4] Clearly, the *RemedyTemp* matter is substantially related to the present matter in that it contains claims based on the mishandling of workers' compensation insurance policies and implicates the same defenses, strategy and litigation tactics.

Although Pynes denies that he acquired any confidential information about the Liberty Companies, the evidence reveals that during his employment at Kern & Wooley, including his representation of the Liberty Companies in the *Tony's Fine Foods* case, Pynes prepared a privilege log, had access to Liberty Mutual's claim manuals, and was privy to discussions about strategy for a number of matters including but not limited to a mediation and a number of document productions. While Pynes "does not recall ever reviewing Liberty Mutual's practice and procedures, strategies for handling litigation, claims operation, general claim file management and record keeping documents or having any discussion with Liberty personnel on these issues on workers' compensation or non-workers' compensation cases" [DE #230 Ex A], an attorney formerly employed by Kern & Wooley, Lisa Kralik Hansen, states in her affidavit that "Pynes worked almost exclusively on matters for the Liberty Mutual group of companies . . . in both litigated and non-litigated matters pertaining to

-15-

insurance coverage and the defense of insurance 'bad faith' actions. . ." and that Pynes "was involved in the review of Liberty's claims files and/or claims manuals, written discovery, mediation and strategy discussions, document productions (including analysis of privileged materials) and the preparation of legal memoranda." She further testifies that Pynes had client contact with Liberty representatives, and "was exposed to confidential information concerning Liberty Mutual's practices and procedures, strategies for handling litigation, claims operation, general file management and record keeping." [DE #213, Ex 2]

Again, even though Pynes "does not recall" portions of his involvement as counsel for the Liberty Companies in the *Tony's Fine Foods* case, he undoubtedly acquired confidential information during this representation and/or during his representation of the Liberty Companies in other related matters which could be used to Republic's advantage in this action. *See General Electric Co.*, 608 F.2d at 267. Republic's attempts to argue that Pynes was a mere associate with no client contact and no access to confidential information is disingenuous. Rule 1.9(b) simply does not require that Pynes actually remember or "used" the confidential information. While previous versions of Rule 1.9(b) actually required "use" of confidential information, the rule now only requires that confidential information was "acquired." Thus, under Rule 1.9(b) and the *Dana* test, Pynes is disqualified from representing Republic in this matter.

Since only three months elapsed between the time Roxborough, Adreani and Pynes were admitted *pro hac vice* and the Liberty Companies filed its motion to disqualify, no waiver occurred. The voice mail message advising the attorney for the Liberty Companies in the *RemedyTemp* matter that the Roxborough Firm would be entering an appearance in this case is irrelevant. There is no evidence that the message stated the nature of the case, that the case had been ongoing for over two

-16-

years, that any former Kern & Wooley attorney would be working on the case, or that there was any conflict or even a request for a waiver of conflict. [DE #230 Ex C, DE #233 Ex 4] Before filing its motion to disqualify, the Liberty Companies' attorneys were required to gather sufficient evidence and legal authority before presenting this serious issue to the Court. Three months is not an unreasonable delay. Furthermore, the fact that the Roxborough Firm represented *RemedyTemp* in a substantially related matter against the Liberty Companies for a period of time while Pynes was employed there without objection from the Liberty Companies does not necessarily result in waiver. The *RemedyTemp* matter was litigated in a different jurisdiction with undoubtedly different rules and caselaw on this issue.

## B. GICHTIN

As noted above, a review of the complaint in *RemedyTemp* reveals that the issues involved in that matter are "substantially related" to the issues currently before the court. Because Gichtin formerly represented the Liberty Companies in *RemedyTemp*, a substantially related matter, and because the Liberty Companies do not consent to her representation, she is precluded from representing Republic in this matter under Rule 1.9(a).

## C. IMPUTED DISQUALIFICATION TO THE ROXBOROUGH FIRM

Both Pynes and Gichtin are disqualified from representing Republic in this matter. The court must next consider whether or not their disqualification should be imputed to the entire Roxborough Firm. Rule 1.10(a) provides "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2." Under this rule, based on Pynes' conflict of interest, the disqualification

-17-

must be imputed to the entire Roxborough Firm.[3]

While the Court acknowledges that disqualification of Republic's chosen counsel is indeed harsh, this result serves the useful function of protecting "the reasonable expectations of former and present clients" and "promotes the public's confidence in the integrity of the legal profession." *Lovell*, 941 S.W.2d at 469.  To some extent, this harsh result is mitigated by the fact that Republic may continue to be represented by its local counsel, who have been actively involved in this litigation since its initiation in 2003, while the Roxborough Firm has only been admitted *pro hac vice* in this action since May, 2006.

---

[3]Inasmuch as Pynes' conflict of interest must be imputed to the entire Roxborough Firm, the Court declines to decide whether the screening mechanisms implemented on behalf of Gichtin would be sufficient to avoid imputation of disqualification to the Roxborough Firm or whether the *National Union* case nullifies the screening exception in this case.  Additionally, the court declines to decide whether Republic's failure to provide written notice to the Liberty Companies as required by Rule 1.10(d)(2) justifies imputed disqualification.

-18-

## V.   CONCLUSION

Accordingly, the Court being otherwise fully and sufficiently advised, HEREBY ORDERS

that:

(1)   Republic's motion to file rejoinder brief to address new issues raised in the Liberty Companies' reply [DE #235] is GRANTED;

(2)   the Liberty Companies' motion for leave to file reply memorandum in excess of fifteen pages [DE #234] is GRANTED;

(3)   the Liberty Companies' motion to disqualify Craig S. Pynes and the remaining members of Roxborough, Pomerance & Nye from *pro hac vice* representation of Republic [DE #213] is GRANTED; and

(4)   the Court's Order granting *pro hac vice* status to Nicholas P. Roxborough, Michael B. Adreani, and Craig S. Pynes [DE #112] is VACATED.

This 20 day of October, 2006.

KARL S. FORESTER, SENIOR JUDGE