UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 03-494-KSF

REPUBLIC SERVICES, INC.                                                    PLAINTIFF

v.                                    **OPINION & ORDER**

LIBERTY MUTUAL INSURANCE
COMPANY, *et al.*                                                          DEFENDANTS

* * * * * * * * * * * *

This matter is before the Court upon several motions of the defendants related to the plaintiff's expert witnesses. [DE ## 256, 258, 260, 262, 263]  These motions are fully briefed and ripe for review.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This suit arises out of a contractual relationship between the plaintiff, Republic Services, Inc. ("Republic"), and the defendants, Liberty Mutual Insurance Company, Liberty Insurance Acquisition Corporation *f/k/a* Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance Corporation and Helmsman Management Services, Inc. (collectively referred to as the "Liberty Companies").  Republic is a holding company for numerous subsidiary corporations, limited liability companies, and limited partnerships that own and operate landfill and waste disposal facilities in Kentucky and approximately twenty-one other states.

Republic and the Liberty Companies entered into a contractual relationship (the "Workers' Compensation Program") beginning on July 1, 1998, whereby the Liberty Companies were to

1

provide "large deductible workers' compensation insurance for the Republic Companies, and claims administration for claims filed under those insurance coverages."  The Workers' Compensation Program was renewed by two subsequent annual policy contracts on July 1, 1999 and July 1, 2000, and ultimately expired on June 30, 2001.  Certain claims under those policies remain open and in run-off to this day.

Republic filed this action in Jessamine Circuit Court on November 10, 2003, and the Liberty Companies removed the action to this Court on November 13, 2003 on the basis of diversity jurisdiction. [DE #1]   In its Complaint, Republic alleges that the Liberty Companies mishandled, poorly administered and mismanaged workers' compensation claims filed by various Republic employees.  Of the approximately 7,740 Claims Files originally at issue, Republic's experts have reviewed 292 Claims Files and found deviations from industry standards, which has been quantified at approximately $27,000,000.00. [DE# 30]   As a result, Republic seeks recovery based on several theories, including breach of contract, breach of fiduciary duty, negligence and fraud.

## II.    CHOICE OF LAW

One issue yet to be resolved in this matter involves the choice of law applicable to the issues before the Court.  Because this Court sits in diversity, it must apply state law to the substantive claims at issue.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  In this case, many of the contracts and agreements at issue are devoid of choice of law provisions.  When determining which state's substantive law should apply, a federal district court sitting in diversity must look to the conflict of laws rules prevailing in the state in which the court sits, in this case, Kentucky.  *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941).

Kentucky courts traditionally have been quite egocentric with regard to conflict of law

2

questions. *Wallace Hardware Co. Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000). While reviewing Kentucky choice of law cases, the Sixth Circuit recently noted that "when a Kentucky court has jurisdiction over the parties, '[the court believes that its] primary responsibility is to follow its own substantive law.  The basic law is the law of the forum, which should not be displaced without valid reasons.'" *Adam v. J.B. Hunt Transport, Inc.*, 130 F.3d 219, 230-31 (6th Cir. 1997) (quoting *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky.1972)). "'If there are significant contacts--not necessarily the most significant contacts--with Kentucky, the Kentucky law should be applied.'" *Id.*

Republic claims in this action that the Liberty Companies tortiously breached the several contracts and agreements between them.  Inasmuch as these claims have both tort and contract elements, the tort and contract choice of law standards are pertinent to this action.[1]

### A.    CHOICE OF LAW:  TORT CLAIMS

The Kentucky tort standard combines a clear predisposition for applying Kentucky law with the rubric of "significant contacts" as outlined in the Restatement (Second) of Conflict of Laws. Section 6 of the Restatement (Second) of Conflict of Laws provides:

(1)    A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2)    Where there is no such directive, the factors relevant to the choice of the applicable rule of law include
    (a)    the needs of the interstate and international systems,
    (b)    the relevant policies of the forum,
    (c)    the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d)    the protection of justified expectations,
    (e)    the basic policies underlying the particular field of law,
    (f)    certainty, predictability and uniformity of result, and

---

[1]Both parties agreed that Kentucky does not have significant contacts to justify application of its own law.

3

(g)     ease in the determination and application of the law to be applied.

Restatement (Second) Conflict of Laws § 6.  Section 145 further provides:

(1)     The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2)     Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
    (a)     the place where the injury occurred,
    (b)     the place where the conduct causing the injury occurred,
    (c)     the domicile, residence, nationality, place of incorporation and place of business of the parties, and
    (d)     the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) Conflict of Laws § 145.

Republic argues that Florida law should apply to the tort claims, whereas the Liberty Companies argue that each tort claim must be evaluated under the law of the state in which the claim arose.  Due to the nature of the tort claims, and the fact that workers' compensation claims handling law and practice may differ in the various states in which claims were filed under the Workers' Compensation Program, this Court will apply the law of the state in which each individual claim arose.

## B.     CHOICE OF LAW:  CONTRACTUAL CLAIMS

With regard to its contractual claims, Republic argues that the Court should apply Florida law.[2]  The Liberty Companies, on the other hand, contend that Massachusetts law should apply.  In

_____

[2]Republic, however, has recently filed its Second Motion to Clarify Order with respect to the Court's Opinion and Order of December 1, 2006, granting partial summary judgment to the Liberty Companies on Republic's claim for punitive damages, and dismissing Republic's claim for punitive damages.  In this motion, Republic seeks clarification that the Court's ruling will not

4

*Breeding v. Massachusettes Indemnity and Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982), the

Supreme Court of Kentucky followed the "most significant relationship" test set forth in the

Restatement of Law (Second) Conflict of Laws § 188 to determine which state's law governs the

parties' rights and responsibilities under a contract.  Section 188 provides:

(1)     The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2)     In the absence of an effective choice of law by the parties (see § 187), the contacts be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
   (a)     the place of contracting
   (b)     the place of negotiation of the contract,
   (c)     the place of performance,
   (d)     the location of the subject matter of the contract, and
   (e)     the domicile, residence, nationality, place of incorporation and place of business of the parties.
   These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3)     If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-99 and 203.

Restatement (Second) Conflict of Laws § 188.

Both parties agree that the Commonwealth of Kentucky does not have sufficient contacts to

the contracts at issue to justify applying Kentucky law.  However, Republic argues that Florida law

should apply, while the Liberty Companies argue that Massachusetts law governs.  In its Opinion

& Order of September 25, 2006, the Court determined that Massachusetts law governed the Court's

review of the claims arising under the Partnership Agreement, a separate agreement between the

---

prevent, impair or impede Republic from seeking to recover double or treble damages, attorneys' fees and pre- and post-judgment interest at trial under Massachusetts law. [DE # 347]

parties which applied only to the third policy year of the Workers' Compensation Program. [DE #277]

In support of its argument that Florida law should apply, Republic relies on the following facts.  Although every defendant corporation maintains its principle place of business in Massachusetts, Republic is a Delaware corporation with its principal place of business in Florida. Of the total workers' compensation claims filed by Republic employees during the Workers' Compensation Program, 901 claims were filed in Florida (11.6% of the total), which were adjusted in the Tampa regional claims office.  By contrast, Republic has no operations in Massachusetts, and as a result, there were no claims filed in Massachusetts.  Republic further contends that a number of sales presentations, renewal meetings and claims file audits or reviews or related meetings during the Workers' Compensation Program occurred in Florida, either at Republic's corporate offices in Fort Lauderdale or at the Liberty Companies' national accounts office in Tampa.  As a result, Republic argues that because the contracts were negotiated and entered into in Florida, and a material portion of the performance occurred in Florida, the court should apply Florida law.

On the other hand, the Liberty Companies argue that the interests of the Commonwealth of Massachusetts outweigh the interests of any other state.  According to the Liberty Companies, every defendant corporation maintains its principal place of business in Massachusetts.  Certain of the contract documents were executed in Boston, Massachusetts by representatives of the Liberty Companies.  Moreover, certain of the parties' contract documents contain an express choice of law provision whereby the parties expressly agreed to be governed by the laws of Massachusetts.  For example, the contract by and between Defendant Helmsman Management Services, Inc. and Republic includes a choice of law provision requiring application of Massachusetts law. [DE # 282,

Ex. I]  Additionally, each and every one of its insurance policies, constituting the parties' principal contractual agreements, were executed by the defendants and issued out of Liberty's offices in Boston, Massachusetts.  Finally, multiple contracts by and between Republic and the Liberty Companies state that all notices and payments must be sent from Republic to Liberty's offices in Boston, Massachusetts.  [DE # 282, Ex. G]

The Court has already applied Massachusetts law to the Partnership Agreement in its Opinion and Order of September 25, 2006, granting partial summary judgment to Republic on its claim for a refund of the overpayment of the bonus outlined in the Partnership Agreement. [DE # 277] Furthermore, reviewing the contacts as set out above, the Court will apply Massachusetts law to the contract claims at issue in this case since every defendant corporation maintains its principal place of business in Massachusetts, Liberty Mutual Insurance Company is incorporated in Massachusetts, executed the contract in Massachusetts, and reasonably assumed that its conduct would be governed and adjudged by the laws of Massachusetts.  With the choice of law analysis complete, the Court now turns to the Liberty Companies' motions to exclude Republic's experts.

## III.   EXPERT WITNESSES

Recognizing the time and expense that would be required to review and analyze all 7,740 claims, Republic has selected for review all claims having a total incurred cost of $7,500.00 or greater as of November 25, 2003.  This amounts to 746 Claims Files.  Republic has retained Thomas L. Ballard to review "in detail" only 292 of those Claims Files which originated in 20 different states. In order to complete his Claims Files review, Ballard had access to paper copies of all 292 Claims Files, along with unlimited access to RISKTRAC, a software program which includes electronic claims data for all the claims.  Based on his review, Ballard assessed the Liberty Companies'

7

compliance with a defined set of claims handling standards, including:

> (1)    Generally accepted industry standards for the handling of workers' compensation claims;
>
> (2)    A set of guidelines and standards referred to as "Special Service Instructions" (dated 12/14/00);
>
> (3)    A set of guidelines and standards referred to as "Minimum Customer Requirements" (dated 6/26/98); and
>
> (4)    The Liberty Companies' internal guidelines referred to as "Workers' Compensation Lost Time Cases Claims Best Practices/Service Standards" (dated 4/30/01).[3]

Reviewing the Liberty Companies' compliance with these standards, Ballard formulated opinions as to the amount of costs, if any, which should be "disallowed." These disallowances represent "a point in time or . . . an occurrence (specific to each claim) at which the file, if properly handled, administered and managed, would not have resulted in the Liberty Companies incurring any further/inappropriate/unnecessary costs on Republic's behalf." Republic intends to extrapolate, using a statistical sampling model, the disallowances found in the 292 Claims Files examined in detail by Ballard, to the remaining Claims Files currently before the Court. While the Court has already entered its order denying Republic's motion in limine to take judicial notice of the statistical sampling method utilized by its expert, the Court did hold that some form of statistical sampling will be necessary to resolve the issues related to the Liberty Companies' liability and the damages incurred by Republic. [DE # 278]

Republic also retained Judge David W. O'Brien to review and focus exclusively on 27 claims originating in California. O'Brien reviewed the electronic and paper claims files, and had access to

---

[3]Importantly, Ballard did not take into account individual state workers' compensations laws.

RISKTRAC. He assessed the Liberty Companies' compliance with a set of "sound management practices recognized in the workers' compensation insurance industry in California." O'Brien related the Liberty Companies' performance to several standards, including:

    (1)      Liberty's own Special Service Instructions (dated 12/14/00);

    (2)      Liberty's own Minimum Customer Requirements (dated 6/26/98);

    (3)      Liberty's own Best Practices (dated 4/30/01); and

    (4)      Applicable California workers' compensation statutes and regulations.

After assessing the Liberty Companies' compliance with these standards, he formulated opinions as to the amount of costs that should be either allowed or disallowed in each file.

As a result of the excess costs found by Ballard and O'Brien, Republic alleges a corresponding increase in reserves caused Republic to overstate reserves on its books. Consequently, Republic contends that its capital was impaired and not available for other uses. Republic hired an expert, Edgar Davenport, to calculate the estimated loss of capital. Based on this calculation, Republic also hired Tim Snoddy[4] to assume borrowing costs and letter of credit/security costs and thereafter calculate Republic's total impairment of capital damages.

The Liberty Companies now move the Court to exclude the expert testimony of Ballard, O'Brien, Davenport, and Snoddy pursuant to Rule 702 of the Federal Rules of Evidence, and the standards announced by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). However, in light of the Court's holding that each tort claim must be analyzed with respect to the state law and practice

---

[4]Tim Snoddy, who perished in the crash of Flight 5191 in Lexington, Kentucky on August 27, 2006, has been replaced by Elizabeth Woodward. [DE #332]

in which the claim arose, these motions are now moot.  Republic's experts have not addressed individual state workers' compensation law and practice with respect to Claims Files arising in states other than California.  Because of the complex nature of this case, and the Court's late ruling on the choice of law applicable to Republic's tort claims, Republic will be provided an opportunity to retain additional claims handling experts and any other experts necessary to analyze the Claims Files with respect to the individual workers' compensation state law and practice of the state in which the claim arose, in conjunction with other standards chosen by Republic.  The Liberty Companies will also be given an opportunity to obtain additional experts.  In light of this ruling, the parties are directed, within ten days of the entry of this Opinion and Order, to submit to the Court a written joint discovery plan.  As a result, the Liberty Companies' motions to exclude Ballard, Davenport, and Snoddy under Rule 702, *Daubert* and *Kumho Tire* are moot and will be denied without prejudice to refiling once the parties have had an opportunity to obtain new or additional expert witnesses.

However, with respect to the California claims, Republic's expert, David O'Brien did analyze those Claims Files, in part, based on California workers' compensation law and practice. Accordingly, the Court will address the Liberty Companies' motion to exclude O'Brien under Rule 702, *Daubert* and *Kumho Tire*.

## IV.    RULE 702 AND THE SUPREME COURT'S HOLDINGS IN *DAUBERT* AND *KUMHO TIRE*

As amended in 2000, Rule 702 of the Federal Rules of Evidence states the requirements for admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts

10

or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. Generally, this rule "should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 505, 516 (6th Cir. 1998).

"[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). As the Supreme Court stated in *Daubert*:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue.

*Id*. at 592-93. The proponent of expert testimony must prove by a preponderance of the evidence that the testimony is reliable, not that it is scientifically correct. *Id*. at 593; Fed.R.Evid. 104(a).

In determining whether to admit or exclude proffered expert testimony, the Court must act as a "gatekeeper" to ensure that the expert is duly qualified to render an expert opinion, that his testimony will assist the trier of fact, and that the proffered testimony is reliable. *Id*. However, the court's gatekeeper role under *Daubert* "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir. 1999). *See also United States v. 14.3 Acres of Land Situated in LeFloure County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). (The Court is mindful that its "role as gatekeeper is not intended to serve as a replacement for the adversary system.") Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking

11

[debatable] but admissible evidence." *Daubert*, 509 U.S. at 596.

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that this "gatekeeper" function applies to all expert testimony, not just scientific testimony. *Id*. at 147 (explaining that Rule 702 makes "no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge. It makes clear that any such knowledge might become the subject of expert testimony"). The Supreme Court proceeded to provide the district courts with a checklist for assessing the reliability of expert testimony. This list of "specific factors" "neither necessarily nor exclusively applies to all experts or in every case." *Id*. at 141. Listed considerations include whether an expert's theory can be tested, "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," and "general acceptance." *Daubert*, 509 U.S. 593-94. Yet, the "list of factors was meant to be helpful, not definitive" and will vary from case to case. *Kumho Tire*, 526 U.S. at 151. *See also Daubert*, 509 U.S. at 594 ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one.") Thus, the trial court must use its discretion in determining whether reasonable criteria of reliability were used by a proffered expert and whether the proposed testimony meets those criteria. Nevertheless, "[t]he Rules' basic standard of relevance . . . is a liberal one," *Daubert*, 509 U.S. at 587, and the trial court's gatekeeping role does not permit it to reject admissible expert testimony.

In 2000, Rule 702 was amended in response to *Daubert* and cases applying it, such as *Kumho Tire*. It affirms the trial court's role as gatekeeper and provides general standards for the trial court to use to assess the reliability and helpfulness of proffered expert testimony. Advisory Committee Notes to Rule 702. In fact, the advisory comments to the 2000 amendments to Rule 702 noted that "[a] review of the case law after Daubert shows that the rejection of expert testimony is the exception

rather than the rule."  Advisory Committee Comments to the 2000 Amendments to Rule 702.

## V.   O'BRIEN SHOULD NOT BE EXCLUDED AS AN EXPERT WITNESS IN THIS MATTER

### A.   O'BRIEN IS QUALIFIED TO TESTIFY UNDER RULE 702

In support of their motion to exclude O'Brien as an expert witness in this matter, the Liberty Companies first argue that O'Brien is not qualified as a claims handling expert.  A review of O'Brien's curriculum vitae, expert report and deposition testimony reveal that he began working for the State of California Compensation Insurance Fund in 1963 representing insurance carriers before the Workers' Compensation Appeals Board.  Although it is unclear how long he held this position, he has more than 42 years of experience in the field of workers' compensation.  He has served as a Workers' Compensation Administrative Law Judge for the California Workers' Compensation Appeals Board, and as both an attorney for injured workers and as a defense attorney for self-insured employers and insurance companies.  Additionally, he has served as an Arbitrator.  Overall, he has been involved in more than 18,000 workers' compensation cases.

The Liberty Companies contend that because O'Brien has never adjusted or supervised workers' compensation claims from an insurer's perspective, he does not possess the qualifications to criticize the activities of an insurer and its claims handlers.  The Liberty Companies rely on *Farmland Mutual Insurance Co. v. Johnson*, 36 S.W.3d 368, 378 (Ky. 2001), a case involving a disputed fire insurance claim.  In *Farmland*, the Kentucky Supreme Court upheld the trial court's exclusion of an attorney from testifying as an expert witness in support of the plaintiff's claims handling claims on the grounds that he had "no experience working in the insurance industry, no experience adjusting claims from the insurance company's perspective, and no experience

13

supervising the adjustment of insurance claims." *Id*. at 378. Additionally, the trial court found that the expert had no experience investigating fire claims and had practiced only one fire case as an attorney. The Kentucky Supreme Court found that under Rule 702, the trial court did not abuse its discretion in excluding the expert testimony. *Id*.

While O'Brien has never adjusted or supervised claims from an insurer's perspective, his long standing and extensive involvement in the field of workers' compensation in California qualifies him to testify in this matter. He has over 40 years of experience in workers' compensation in California, as an attorney, arbitrator, judge, and expert. He has reviewed over 18,000 claims files, and has been hired by many of California's largest insurance companies to testify on the carrier's behalf regarding the handling, administration, and management of workers' compensation claims. He has authored treatises on workers' compensation, has trained claims professionals, and has given numerous speeches and seminars on the subject of workers' compensation claims handling. Unlike the expert witness in *Farmland*, O'Brien has extensive experience in the relevant field. Accordingly, the Courts find that O'Brien is qualified to testify as an expert witness with respect to Republic's California Claims Files.

**B.   O'BRIEN'S METHODOLOGY SATISFIES THE STANDARDS SET IN *DAUBERT* AND *KUMHO TIRE***

The Liberty Companies challenge the methodology utilized by O'Brien in his analysis of the 27 California Claims Files. Specifically, the Liberty Companies argue that O'Brien relied on the 4/30/01 Best Practices standards despite the fact that 21 of the 27 California claims were presented prior to implementation of these standards. Similarly, the Liberty Companies argue that O'Brien relied on the 12/14/00 Special Service Instructions despite the fact that 18 of the 27 California claims

were filed prior to implementation of these standards.   However, Republic contends that the Best Practices were merely meant to codify the manner in which claims were purportedly already being handled, and that the SSIs have only undergone ministerial changes over the course of the parties' relationship.   Whether or not O'Brien relied on non-existent or inapplicable standards can be addressed in cross-examination at trial, and should go to the weight of O'Brien's testimony. Accordingly, the Liberty Companies' challenge to O'Brien's use and application of these standards will be denied and reserved for cross-examination at trial.

Additionally, the Liberty Companies contend that O'Brien did not perform an adequate investigation, did not review readily available information, and did not understand portions of the information provided to him.  Specifically, the Liberty Companies argue that O'Brien did not review any written discovery responses, speak with a single case manager, injured worker or supervisor. Nor did O'Brien speak with any attorney defending Republic in any of the 27 California Claims Files.  Finally, the Liberty Companies argue that O'Brien could not identify or apply multiple phrases and notations contained in the Claims Files.

However, the Liberty Companies can point to no case law or requirement that an expert witness must conduct such an investigation prior to reaching an opinion based upon a review of Claims Files.  The fact that O'Brien was unfamiliar with notations in the Claims Files simply goes to the weight of his opinion, and does not justify outright exclusion of his testimony.  Essentially, these challenges to O'Brien's methodology do not necessarily make his opinions inherently unreliable sufficient to exclude his testimony as an expert witness.  For these reasons, the Liberty Companies' motion to exclude O'Brien's testimony as an expert witness on these grounds is denied. The Liberty Companies may challenge O'Brien's opinions, and the evidence he reviewed or failed

15

to review, during cross-examination at trial.

### C.     O'BRIEN DOES NOT HAVE A CONFLICT OF INTEREST

The Liberty Companies argue that O'Brien should be excluded as an expert witness in this matter because he is presently "Of Counsel" with the law firm of Floyd, Skeren & Kelly in Calabasas, California.   According to the Liberty Companies, Floyd, Skeren & Kelly represent Republic in this matter.   Although no member of this law firm has entered an appearance in this matter, the Liberty Companies note that Thomas Skeren attended a deposition in this matter, and O'Brien admits meeting with Skeren and Republic's counsel Rob Maclin for two days to review claims files.   At that meeting Skeren shared documents with O'Brien, and O'Brien assumed that Skeren was providing legal services to Republic in this case.

The Liberty Companies argue that O'Brien's dual roles, both as a lawyer-advocate for Republic and an expert witness, create a conflict of interest which prohibit him from acting as an independent expert witness in this case.  *See Lippe v. Bairnco Corporation*, 288 B.R. 678 (S.D.N.Y. 2003)(excluding an expert witness because the plaintiffs went too far when they sought to call as an expert witness someone who has acted as their attorney) *aff'd Lippe v. Bairnco*, 99 Fed. Appx. 274 (2nd Cir. 2004).   Accordingly, the Liberty Companies argue his testimony should be excluded.

In response, Republic argues that O'Brien has not entered his appearance in this case, nor has he performed any legal work in this case, and the fact that members of the Floyd Skeren & Kelly law firm attended one round of depositions in an advisory capacity should not exclude O'Brien from testifying.  Also, Republic argues that Floyd, Skeren & Kelly have defended workers' compensation matters for Republic in California since 2005, on matters unrelated to this case, and that O'Brien has no role whatsoever in those matters.  Republic has not presented any case law in support of allowing

16

O'Brien to testify despite this conflict, instead calling the Liberty Companies' claim a "monster under the bed."

Clearly, there is an appearance of impropriety problem here, but O'Brien is acting as an expert witness, not an attorney, so the case law is not necessarily applicable.  There is no evidence that O'Brien actually acted as an attorney on behalf of Republic, as in the *Lippe* case.  Consequently, the Liberty Companies' conflict of interest argument is rejected; however, the Liberty Companies may vigorously cross-examine O'Brien on this relationship during trial.

### D.    O'BRIEN'S MARCH 11, 2006 REPORT SHOULD BE EXCLUDED

O'Brien tendered a second expert report on March 11, 2006 [DE #65], reviewing the opinions and conclusions of Republic's expert, Thomas Ballard.  The Liberty Companies argue that this expert report should be excluded on several grounds: (1) O'Brien's observations do not qualify as expert opinions and would not assist the trier of fact as required by Rule 702; (2) O'Brien's observations are inherently unreliable and incomplete; and (3) O'Brien does not possess adequate qualifications to criticize the Liberty Companies' claims handling in states other than California.

In light of the Court's decision to allow new experts in this case, O'Brien's supplemental report addressing Ballard's expert report is moot, and the Liberty Companies' motion to exclude the March 11, 2006 supplemental report should be granted.

### E.    O'BRIEN'S JANUARY 15, 2006 EXPERT REPORT

The Liberty Companies contend that O'Brien's expert report, dated January 15, 2006 [DE #258, Ex. 1] should be excluded under Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure because it refers only to certain items listed on pages 2 and 3, along with various California statutes, on which he relied.  Yet, the Liberty Companies argue that during O'Brien's deposition, he indicated

17

that he reviewed and relied on a wealth of additional information - "a total of five large notebooks and an entire shelf of materials containing seven stacks of books, each stack two feet tall." [DE # 258, p. 17] As a result, the Liberty Companies contend that they were not prepared for cross-examination at O'Brien's deposition.

Additionally, the Liberty Companies note that not only were O'Brien's disclosures incomplete, they were also inaccurate as to the amount of his payment. Specifically, on July 7, 2006, Republic tendered a supplemental disclosure noting that it had paid O'Brien approximately $10,000 to date. However, at his deposition, O'Brien testified that he had actually been paid $30,000.

The Liberty Companies contend that based on the incomplete and inaccurate disclosures, O'Brien's expert report should be excluded. Rule 37(c)(1) of the Federal Rules of Civil Procedure allows a trial court to punish a party for discovery violations in connection with Rule 26, unless the violation was harmless or is substantially justified.

Republic does not specifically address O'Brien's failure to include a recitation of all materials referenced in his expert report. Rather, Republic contends that there was an entire roomful of documents produced at O'Brien's deposition, which included all the documents reviewed by O'Brien and requested in the Liberty Companies' subpoena. Republic argues that the Liberty Companies chose not to question O'Brien on most of these documents.

While O'Brien's report may not fully comply with the requirements of Rule 26(a)(2), due to the complexity of this case and the volume of documents at issue, it is understandable that all documents relied upon may not be listed in an expert report. Excluding O'Brien's expert report on these grounds is simply not warranted, given the fact that the Liberty Companies did have an opportunity to depose O'Brien. Accordingly, the Liberty Companies' motion to exclude the January

18

15, 2006 expert report of O'Brien will be denied.

### F.     ALTERATION AND SPOILATION

As its final ground in support of its motion to exclude O'Brien as an expert witness, the Liberty Companies contend that the claims file information on which O'Brien relied in formulating his opinions is no longer available because it was altered by Republic.  Specifically, the Liberty Companies alleges that O'Brien received claims file material in boxes, which he reviewed in New Hampshire.  After reviewing these claims file materials and formulating his opinions, he returned the file materials to Republic's counsel in Kentucky, again in the form of boxes.

Prior to his deposition, O'Brien received the claims file materials back from Republic's counsel, this time in the form of notebooks, in which material had allegedly been added or subtracted.  O'Brien was unable to tell what had been added or subtracted from the claims file materials which he reviewed to formulate his opinions.  The Liberty Companies argue that there is no way to determine whether O'Brien looked at all the available information, or how much information had been provided to him.

Republic does not dispute the fact that the claims file materials originally provided to O'Brien have been altered.  Understandably, the Liberty Companies simply cannot determine what information was provided to O'Brien before he rendered his opinion.  The *Regional Airport Authority of Louisville and Jefferson County v. LFG, LLC*, 460 F.3d 697 (6th Cir. 2006), requires that **all** information provided to the testifying expert be disclosed under Rule 26.  The remedy for failure to comply with this new rule is less clear.  The Liberty Companies have not alleged any evidence that the alteration of the material was willful.  Republic contends that all the material O'Brien relied upon in formulating his expert opinion was available at his deposition, and that the Liberty Companies had

an opportunity to question Judge O'Brien with respect to the information relied upon.  Accordingly, the exclusion of O'Brien on this ground alone is not warranted.  For this and all the above-stated reasons, the Liberty Companies' motion to exclude O'Brien as an expert witness in this matter will be denied.

## VI.   THE LIBERTY COMPANIES' MOTIONS FOR SUMMARY JUDGMENT ON REPUBLIC'S CLAIMS FOR EXCESS CLAIMS COSTS INCURRED INSIDE AND OUTSIDE OF CALIFORNIA

The Liberty Companies have filed a motion for summary judgment on Republic's claims for excess claims costs incurred outside of California. [DE # 263]  In support of this motion, the Liberty Companies argue that if the Court excludes the testimony of Thomas Ballard, then Republic would have no way of proving improper claims mishandling and resulting damages outside of California. Because Republic is being afforded an opportunity to obtain additional experts, the Liberty Companies' motion for summary judgment on Republic's claim for excess claims costs incurred outside of California will be denied without prejudice.

The Liberty Companies have also filed a motion for summary judgment with respect to Republic's claim for excess claims costs incurred in California. [DE # 262]  In support of this motion, the Liberty Companies argue that if the Court excludes the testimony of Thomas Ballard and David O'Brien, then Republic would have no way of proving improper claims handling and resulting damages in California.  Because O'Brien is qualified to testify as to the California Claims Files, the Liberty Companies' motion with respect to Republic's claim for excess claims costs incurred in California will be denied.

20

## VII.    CONCLUSION

Accordingly, the Court, being fully and sufficiently advised, and for the reasons set forth above, HEREBY ORDERS:

(1)    WITHIN TEN DAYS of entry of this Opinion & Order, the parties shall FILE a written joint report advising the Court as to the following information:

      (a)    the length of time counsel reasonably believe will be necessary to obtain new and/or additional experts and to conduct related discovery;

      (b)    the length of time counsel reasonably believe will be necessary to file dispositive motions;

      (c)    the probable length of trial and whether there will be issues to submit to a jury; and

      (d)    the dates that are mutually convenient with counsel to assign this case for trial;

(2)    the Liberty Companies' motion to extend the dispositive motion deadline concerning opinions from Republic's replacement expert [DED # 242] is DENIED as moot;

(3)    the Liberty Companies' motion for partial summary judgment for impairment of capital damages and to exclude testimony [DE # 256] is DENIED WITHOUT PREJUDICE;

(4)    the Liberty Companies' motion in limine to exclude the testimony of Republic's expert David O'Brien [DE # 258] is DENIED;

(5)    the Liberty Companies' motion in limine to exclude the testimony of Republic's expert Thomas Ballard [DE # 260] is DENIED WITHOUT PREJUDICE;

(6)    the Liberty Companies' motion for summary judgment relevant to Republic's claim for excess costs incurred in California [DE # 262] is DENIED; and

(7)    the Liberty Companies' motion for summary judgment relevant to Republic's claim for excess costs incurred outside of California [DE # 263] is DENIED WITHOUT PREJUDICE.

This January 12, 2007.



**Signed By:**

**_Karl S. Forester_**   *KSF*

**United States Senior Judge**

21